IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, ROBERT C. BEVIS, and LAW WEAPONS, INC., d/b/a LAW WEAPONS & SUPPLY, an Illinois corporation;<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF NAPERVILLE, ILLINOIS, a municipal corporation;<br><br>Defendant. | Case No. _____ |

# COMPLAINT

Plaintiffs submit the following Complaint against Defendant City of Naperville, Illinois (the "City").

## I. PARTIES

1. Plaintiff National Association for Gun Rights ("NAGR") is a nonprofit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4). NAGR seeks to defend the right of all law-abiding individuals to keep and bear arms. NAGR has members who reside within the City. NAGR represents the interests of its members who reside in the City. Specifically, NAGR represents the interests of its members whose Second Amendment right to acquire arms is burdened by the City's prohibition on the commercial sale of certain semi-automatic firearms. For purposes of this Complaint, the term "Plaintiffs" is meant to include NAGR in its capacity as a representative of its members.

2. Plaintiff Robert C. Bevis is a business owner in the City and a law-abiding citizen of the United States.

1

3. Plaintiff Law Weapons, Inc. d/b/a Law Weapons & Supply is a duly registered Illinois corporation which operates in the City engaged in the commercial sale of firearms.

4. Defendant City of Naperville, Illinois is a municipal corporation with an address of 400 S. Eagle Street, Naperville, Illinois 60540.

5. Defendant is or will enforce the unconstitutional provisions of the Ordinance against Plaintiffs under color of state law within the meaning of 42 U.S.C. § 1983.

### III. JURISDICTION AND VENUE

6. The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws, ordinances, regulations, customs and usages of the State, of rights, privileges or immunities secured by the United States.

7. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

8. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

### IV. GENERAL ALLEGATIONS

9. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. Amend. II; *see also D.C. v. Heller*, 554 U.S. 570 (2008) ("*Heller*"); *McDonald v. City of Chicago*, 561 U.S. 742 (2010)

("*McDonald*"); and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 2022 WL 2251305 (U.S. June 23, 2022) ("*Bruen*").

10.  The right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment. *McDonald, supra*.

11.  This action challenges the constitutionality of Chapter 19 of Title 3 of the Naperville Municipal Code (the "Ordinance"). A copy of a draft of the Ordinance considered by the Naperville City Council at its meeting on August 16, 2022, is attached hereto as Exhibit A. On information and belief, the text of the Ordinance is identical to this draft.

12.  Section 3-19-1 of the Ordinance defines the term "assault rifle." Section 3-19-2 of the Ordinance states: "The Commercial Sale of Assault Rifles within the City is unlawful and is hereby prohibited." Section 3-19-3 of the Ordinance provides for substantial penalties for any violation of its provisions.

13.  The term "assault rifle" as used in the Ordinance is not a technical term used in the firearms industry or community for firearms commonly available to civilians. Instead, the term is a rhetorically charged political term meant to stir the emotions of the public against those persons who choose to exercise their constitutional right to possess certain semi-automatic firearms that are commonly owned by millions of law-abiding American citizens for lawful purposes. Plaintiffs refuse to adopt the City's politically charged rhetoric in this Complaint. Therefore, for purposes of this Complaint, the term "Banned Firearm" shall have the same meaning as the term "assault rifle" in Section 3-19-1 of the Ordinance.

14.  Plaintiffs and/or their members and/or customers desire to exercise their Second Amendment right to acquire the Banned Firearms within the City for lawful purposes, including, but not limited to, the defense of their homes. When the Ordinance becomes

effective on January 1, 2023, Plaintiffs and/or their members and/or customers will be prohibited from exercising their Second Amendment rights in this fashion. The outright ban on commercial sale of the Banned Firearms set forth in the Ordinance is unconstitutional on its face.

15. The Second Amendment protects the right of law-abiding citizens to own weapons in common use by law-abiding citizens for lawful purposes. *Heller*, *supra*, at 627.

16. "The right to possess firearms for protection implies a **corresponding right to acquire** and maintain proficiency in their use . . . ." *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) (emphasis added).

17. There is a venerable tradition in this country of lawful private ownership of semiautomatic rifles such as those the commercial sale of which is banned by the Ordinance. The Supreme Court has held as much. In *Staples v. United States*, 511 U.S. 600 (1994), the Court noted that semiautomatics, unlike machine guns, "traditionally have been widely accepted as lawful possessions. " *Id.*, 511 U.S. 611-12 (identifying the AR-15 – the archetypal "assault weapon" – as a traditionally lawful firearm). The vast majority of States do not ban this type of semiautomatic rifles deemed "assault rifles" in the Ordinance.

18. Millions of law-abiding citizens choose to possess firearms such as the Banned Firearms. *Duncan v. Becerra ("Duncan IV)"*, 970 F.3d 1133, 1147 (9th Cir. 2020) [1] ("Commonality is determined largely by statistics."); *Ass 'n of N.J Rifle & Pistol Clubs, Inc. v. Atty. Gen. N.J.*, 910 F.3d 106, 116 (3d Cir. 2018) (finding an "arm" is commonly owned because "[t]he record shows that millions . . . are owned"); *New York State Rifle & Pistol Ass*

---

[1] , *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), and *on reh'g en banc sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

*'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) ("Even accepting the most conservative estimates cited by the parties and by amici, the assault weapons . . . at issue are 'in common use' as that term was used in *Heller*."); *Heller v. D.C. ("Heller II")*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common use.' "). This is demonstrated by the AR-15 and other modem semiautomatic rifles, which epitomize the firearms that the City bans.

19. The AR-15, as just one example among many of a Banned Firearm, is America's "most popular semi-automatic rifle," *Heller II*, 670 F.3d at 1287 (Kavanaugh, J., dissenting), and in recent years it has been "the best-selling rifle type in the United States," Nicholas J. Johnson, *Supply Restrictions at the Margins of Heller and the Abortion Analogue*, 60 HASTINGS L.J. 1285, 1296 (2009). Already in early 2013, sources estimated that there were five million AR-15s in private hands. Dan Haar, *America's Rifle: Rise of the AR-15*, HARTFORD COURANT (Mar. 9, 2013), https://bit.ly/3whtDTj (last visited August 25, 2022); *see also Duncan v. Becerra ("Duncan III")*, 366 F. Supp. 3d 1131, 1145 (S.D. Cal. 2019).[2]

20. The government may impose "conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. 626; *Ezell*, 651 F.3d at 701, *quoting Heller*. Nevertheless, an ordinance flatly prohibiting the commercial sale of firearms "would be untenable under *Heller*." *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010).

---

[2] *aff'd*, 970 F.3d 1133 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 988 F.3d 1209 (9th Cir. 2021), and on *reh'g en banc sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022), and *rev'd and remanded sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), and *cert. granted, judgment vacated*, 142 S. Ct. 2895 (2022)

21. In *Bruen*, the Court held that when the Second Amendment covers an individual's conduct, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation in order for it to be valid. *Bruen*, 142 S. Ct. at 2126.

22. In this regard, this Court has already held that flat prohibitions on the sale of firearms are not supported by this nation' history and traditions. In *Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928 (N.D. Ill. 2014), this Court invalidated an ordinance banning the commercial sale of firearms. It stated:

> Although the City argues that 'state bans of the sale of even popular and common arms stretch back nearly 200 years,' [] the only historical support that it musters are three statutes from Georgia, Tennessee, and South Carolina banning the sale, manufacture, and transfer of firearms within their borders. *See* [] Georgia Act of Dec. 25, 1837, ch. 367, § I; [] Tennessee Act of Mar. 17, 1879, ch. 96, § 1 [], South Carolina Act of Feb. 20, 1901, ch. 435, § 1. But these isolated statutes were enacted 50 to 110 years after 1791, which is 'the critical year for determining the amendment's historical meaning.' *Moore*, 702 F.3d at 935. These statutes are thus not very compelling historical evidence for how the Second Amendment was historically understood. And citation to a few isolated statutes – even to those from the appropriate time period – 'fall[ ] far short' of establishing that gun sales and transfers were historically unprotected by the Second Amendment. *Ezell*, 651 F.3d at 706. **The City's proffered historical evidence fails to establish that governments banned gun sales and transfers at the time of the Second Amendment's enactment**, so the Court must move on to the second step of the inquiry.

*Id.*, 961 F. Supp. 2d at 937 (emphasis added). Accordingly, the Court entered an injunction against enforcement of the prohibition on commercial sales.

23. It does no good for the City to argue that its residents could acquire the Banned Firearms in other cities. This Court rejected this argument in *Illinois Ass'n of Firearms Retailers*. It stated:

> The City argues in response that these ordinances do not ban acquisition, but merely regulate where acquisition may occur. [] It is true that some living on the outskirts of the City might very well currently live closer to gun stores now than they would absent these ordinances. But *Ezell* makes clear that this type of

argument 'assumes that the harm to a constitutional right is measured by the extent to which it can be exercised in another jurisdiction. That's a profoundly mistaken assumption.' 651 F.3d at 697. It was no answer there that plenty of gun ranges were located in the neighboring suburbs, or even right on the border of Chicago and the suburbs. Instead, the Seventh Circuit drew on First Amendment jurisprudence to reason that Second Amendment rights must be guaranteed within a specified geographic unit – be it a city or a State. *See id*. ('In the First Amendment context, the Supreme Court long ago made it clear that 'one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.'' (quoting *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 76–77, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981)).

*Id*., 961 F. Supp. 2d 928, 938–39.

24. This Court's holding in *Illinois Ass'n of Firearms Retailers* consistent with the Supreme Court's analysis in *Bruen*. In *Bruen* the Court cited with approval the case of *Drummond v. Robinson*, 9 F.4th 217, 226 (3rd Cir. 2021). *Id*. 142 S. Ct. at 2133. In *Drummond* the Third Circuit held that a city's ordinance prohibiting the operation of a commercial gun club was an "outlier" thus not supported by the nation's history or tradition of firearms regulation. 9 F.4th at 232.

25. Millions of law-abiding citizens own and use for lawful purposes semi-automatic firearms such as the Banned Firearms Plaintiffs wish to acquire. The Ordinance's prohibition on the sale of the Banned Firearms is an historical outlier. Therefore, by definition, the Ordinance is not consistent with the nation's history and tradition of firearm regulation. Accordingly, the Ordinance violates the Second Amendment.

26. There is an actual and present controversy between the parties. The Ordinance infringes on Plaintiffs' right to keep and bear arms under the Second Amendment. Defendant denies these contentions. Plaintiffs desire a judicial declaration that the Ordinance, facially and/or as applied to them, violates their constitutional rights. Plaintiffs should not be forced to choose between risking criminal prosecution and exercising their constitutional rights. The risk of

criminal prosecution on account of exercising a constitutionally protected right unlawfully chills the exercise of that right and thus violates the Constitution even if the criminal defendant ultimately prevails.

27. Plaintiffs are or will be injured by Defendant's enforcement of the Ordinance insofar as those provisions violate Plaintiffs' rights under the Second Amendment. If not enjoined by this Court, Defendant will enforce the Ordinance in derogation of Plaintiffs' constitutional rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to Defendant's present or contemplated enforcement of these provisions.

## V. FIRST CLAIM FOR RELIEF
### Right to Keep and Bear Arms
### U.S. Const., amends. II and XIV

28. Paragraphs 1-29 are realleged and incorporated by reference.

29. The Ordinance burdens Plaintiff's Second Amendment rights by prohibiting their acquisition of the Banned Firearms at commercial firearms stores in the City. The City's regulation is not consistent with the nation's history and tradition of firearm regulation. There are significant penalties for violations of the Ordinance.

30. These restrictions infringe on the right of the people of the City, including Plaintiffs, to keep and bear arms as guaranteed by the Second Amendment and made applicable to the states and its political subdivisions by the Fourteenth Amendment.

31. The Ordinance's prohibitions extend into Plaintiff Bevis' and his store's customers' homes, where Second Amendment protections are at their zenith, as it burdens their right to acquire arms for the defense of their homes.

32. Defendant cannot satisfy its burden of justifying these restrictions on the Second Amendment right of the People.

## VI. PRAYER FOR RELIEF

Plaintiffs pray that the Court:

33. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 that the Ordinance is unconstitutional on its face or as applied;

34. Enter preliminary and permanent injunctive relief enjoining Defendant and its officers, agents, and employees from enforcing the Ordinance;

35. Award remedies available under 42 U.S.C. § 1983 and all reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988, or any other applicable law;

36. Award actual compensatory and/or nominal damages; and

37. Grant any such other and further relief as the Court may deem proper.

Respectfully submitted this 7th day of September 2022.

/s/ Jason R. Craddock
Jason R. Craddock
Attorney at Law
2021 Midwest Rd., Ste. 200
Oak Brook, IL 60523
(708) 964-4973
cradlaw1970@gmail.com
or craddocklaw@icloud.com

Barry K. Arrington*
Arrington Law Firm
3801 East Florida Avenue, Suite 830
Denver, Colorado 80210
(303) 205-7870
barry@arringtonpc.com
*Admission Pro Hac Vice Pending
Attorneys for Plaintiffs