Exhibit A

# ORDINANCE NO. 22 - _____

# AN ORDINANCE
# ADDING CHAPTER 19
# (REGULATION OF THE COMMERCIAL SALE OF ASSAULT RIFLES)
# OF TITLE 3 (BUSINESS AND LICENSE REGULATIONS) OF
# <u>THE NAPERVILLE MUNICIPAL CODE</u>

## RECITALS

1. **WHEREAS,** on July 4, 2022, 7 people were murdered, and 46 others were injured during a mass shooting that took place during an Independence Day parade in Highland Park, Illinois. The shooter used an AR-15-style semi-automatic rifle with three 30-round magazines to fire 83 shots into the parade crowd from the rooftop of a local store. A 22-year-old suspect has been arrested and charged.

2. **WHEREAS**, on May 24, 2022, 21 people were murdered (19 children and 2 staff members), and 18 others were injured during a mass shooting that took place at Robb Elementary School in Uvalde, Texas. The 18-year-old shooter used an AR-15-style semi-automatic rifle.

3. **WHEREAS**, on May 14, 2022, 10 people were murdered, and 3 others were injured during a mass shooting that took place in a grocery store in Buffalo, New York. The shooter used an AR-15-style semi-automatic rifle. An 18-year-old suspect has been arrested and charged.

4. **WHEREAS**, on August 3, 2019, 23 people were murdered, and 23 others were injured during a mass shooting at a Walmart store in El Paso, Texas. The shooter used an AK-47–style semi-automatic rifle. A 21-year-old suspect has been arrested and charged.

5. **WHEREAS,** on October 27, 2018, 11 people were murdered, and 6 others were injured during a mass shooting that took place at the Tree of Life synagogue in Pittsburgh, Pennsylvania. The shooter used an AR-15-style semi-automatic rifle. A 46-year-old suspect has been arrested and charged.

6. **WHEREAS**, on February 14, 2018, 17 people were murdered (14 students and 3 staff members), and 17 others were injured during a mass shooting that took place at Stoneman Douglas High School in Parkland, Florida. The 19-year-old shooter used an AR-15-style semi-automatic rifle.

7. **WHEREAS,** on November 5, 2017, 26 people were murdered, and 22 others were injured during a mass shooting that took place at the Sutherland Springs church in Sutherland Springs, Texas. The 26-year-old shooter used an AR-15-style semi-automatic rifle.

8. **WHEREAS**, on October 1, 2017, 60 people were murdered, and approximately 867 were injured during a mass shooting that took place at a music festival in Las Vegas, Nevada. The 64-year-old shooter used 24 firearms, including AR-15-style and AR-10-style semi-automatic rifles to fire more than 1,000 bullets.

9. **WHEREAS**, on June 12, 2016, 49 people were murdered, and 58 others were injured during a mass shooting that took place at the Pulse Nightclub in Orlando, Florida. The 29-year-old shooter used an MCX-style semi-automatic rifle.

10. **WHEREAS,** on December 2, 2015, 14 people were murdered, and 24 others were injured during a mass shooting that took place at the Inland Regional Center in San Bernardino, California. The 28-year-old and 29-year-old shooters used AR-15-style semi-automatic rifles.

11. **WHEREAS**, on December 14, 2012, 27 people were murdered (20 children and 6 staff members), and 2 others were injured during a mass shooting that took place at the Sandy Hook Elementary School in Newtown, Connecticut. The 20-year-old shooter used an AR-15-style semi-automatic rifle.

12. **WHEREAS**, there have been many other mass shootings during the last decade, and it has become an unacceptable fact of life that no municipality is exempt from the reality that its citizens are at risk.

13. **WHEREAS**, commonplace in mass shootings are the use of lawfully purchased assault rifles. The U.S. Department of Justice describes assault weapons as "semiautomatic firearms with a large magazine of ammunition that were designed and configured for rapid fire and combat use." Assault rifles are exceptionally deadly firearms and have immense killing power.

14. **WHEREAS,** like many of the municipalities that have encountered mass shootings involving assault rifles, Naperville has a vibrant commercial area, public parks, restaurants, movie theaters, music venues, parades, elementary, middle and high schools both public and private, colleges and universities, houses of worship of many denominations, and other places where members of the public gather with an expectation of safety.

15. **WHEREAS,** the Second Amendment to the United States Constitution provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed". However, no fundamental right is set forth in the United States Constitution for persons or entities to engage in the commercial sale of assault rifles.

16. **WHEREAS**, in 1994, the U.S. Congress passed the Federal Assault Weapons Ban ("AWB"), a United States federal law which prohibited the possession and sale of assault weapons and large-capacity magazines (limiting magazines to ten rounds).

Several constitutional challenges were filed against provisions of the ban, but all were rejected by the courts. The AWB expired in 2004, in accordance with its sunset provision, and attempts to renew or replace the AWB have been unsuccessful.

17. **WHEREAS**, currently, seven states and Washington, D.C. prohibit assault weapons. Federal appellate courts have decided four cases concerning the Second Amendment and assault weapons, each time reaching the same conclusion that assault weapon bans are constitutional (the D.C. Circuit upheld the District of Columbia's ban in 2011, the Second Circuit upheld New York and Connecticut laws in 2015, the Seventh Circuit upheld Highland Park's local ordinance in 2015, and the Fourth Circuit upheld Maryland's ban in 2017).

18. **WHEREAS**, assault rifles did not exist when the United States Congress ratified the Second Amendment in 1791. Civilian-owned assault refiles were rare prior to 2004. The proliferation of civilian-owned assault rifles began within only the last 18 of the 231 years since the ratification of the Second Amendment. That recency of assault rifles combined with the recent proliferation of mass shootings and the common use of assault rifles in said mass shootings indicates that assault rifles are uncommon and unacceptably dangerous.

19. **WHEREAS,** the Illinois legislature has limited the ability of public bodies to enact laws to protect the public from assault weapons that are used in mass shootings that have devastated many communities and countless individuals.

20. **WHEREAS,** in 2013, the Illinois General Assembly enacted legislation amending the Firearm Owners Identification Card Act ("FOID Act"). As part of the 2013 amendment of the FOID Act, the state legislature granted municipalities only ten (10) calendar days to enact local ordinances regulating the possession or ownership of assault weapons.

21. **WHEREAS**, if a municipality could not, or did not, pass a local ordinance within the ten-day window, the legislature provided that a municipality could not thereafter pass an ordinance pertaining to the possession or ownership of assault weapons:

> Any ordinance or regulation, or portion of that ordinance or regulation, that purports to regulate the possession or ownership of assault weapons in a manner that is inconsistent with this Act, shall be invalid unless the ordinance or regulation is enacted on, before, or within 10 days after the effective date of this amendatory Act of the 98th General Assembly. [430 ILCS 65/13.1(c)]

**23. WHEREAS,** the City of Naperville did not pass an assault weapon ordinance regulating the possession or ownership of assault weapons within the ten days allotted by the state legislature.

**24. WHEREAS,** the City of Naperville is a home rule unit of local government under the laws and Constitution of the State of Illinois.

**25. WHEREAS,** under the Constitution of the State of Illinois, home rule units of government have broad authority to pass ordinances and promulgate rules and regulations that protect the public health, safety, and welfare of their residents unless the state legislature specifically states that state legislation preempts home rule authority.

**26. WHEREAS,** the 2013 FOID Act preempts home rule municipalities relative to *regulation of the possession or ownership* of assault weapons in a manner that is inconsistent with that Act. However, the FOID Act does not preempt home rule municipalities from regulating the Commercial Sale of Assault Rifles within their jurisdiction. Therefore, the City retains its broad home rule authority to legislate with respect to commercial sales.

**27. WHEREAS,** in an effort to protect the public health, safety, and welfare, the City of Naperville has a clear and compelling interest in exercising its home rule authority as set forth herein.

**NOW THEREFORE, BE IT ORDAINED BY THE MAYOR AND CITY COUNCIL OF THE CITY OF NAPERVILLE, DUPAGE AND WILL COUNTIES, ILLINOIS, in exercise of its home rule authority that:**

<u>**SECTION 1**</u>: **Recitals incorporated.** The foregoing Recitals are hereby incorporated in this Section 1 as though fully set forth herein.

<u>**SECTION 2**</u>: **Amendment adding Title 3, Chapter 19 to the Naperville Municipal Code.** Title 3 (Business and License Regulations) of the Naperville Municipal Code is hereby amended by adding the Chapter and language as follows:

### TITLE 3 -BUSINESS AND LICENSE REGULATIONS

### CHAPTER 19 – REGULATION OF THE COMMERCIAL SALE OF ASSAULT RIFLES

**SECTION:**

**3-19-1: - DEFINITIONS**

The following words and phrases shall, for the purposes of this Chapter, have the meaning ascribed to them by this Section, as follows:

| ASSAULT RIFLE: | Means any of the following, regardless of country of manufacture or caliber of ammunition accepted:<br><br>(1) A semiautomatic rifle that has a magazine that is not a fixed magazine and has any of the following:<br>    (A) A pistol grip.<br>    (B) A forward grip.<br>    (C) A folding, telescoping, or detachable stock, or is otherwise foldable or adjustable in a manner that operates to reduce the length, size, or any other dimension, or otherwise enhances the concealability, of the weapon.<br>    (D) A grenade launcher.<br>    (E) A barrel shroud.<br>    (F) A threaded barrel.<br><br>(2) A semiautomatic rifle that has a fixed magazine with the capacity to accept more than 10 rounds, except for an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition.<br><br>(3) Any part, combination of parts, component, device, attachment, or accessory that is designed or functions to accelerate the rate of fire of a semiautomatic rifle but not convert the semiautomatic rifle into a machinegun.<br><br>(4) All of the following rifles, copies, duplicates, variants, or altered facsimiles with the capability of any such weapon thereof:<br>    (A) All AK types, including, but not limited to, the following:<br>      (i) AK, AK47, AK47S, AK–74, AKM, AKS, ARM, MAK90, MISR, NHM90, NHM91, Rock River Arms LAR–47, SA85, SA93, Vector Arms AK–47, VEPR, WASR–10, and WUM.<br>      (ii) IZHMASH Saiga AK.<br>      (iii) MAADI AK47 and ARM.<br>      (iv) Norinco 56S, 56S2, 84S, and 86S.<br>      (v) Poly Technologies AK47 and AKS.<br>      (vi) SKS with a detachable magazine.<br>    (B) All AR types, including, but not limited to, the following:<br>      (i) AR–10.<br>      (ii) AR–15.<br>      (iii) Alexander Arms Overmatch Plus 16.<br>      (iv) Armalite M15 22LR Carbine.<br>      (v) Armalite M15–T.<br>      (vi) Barrett REC7. |

(vii) Beretta AR–70.
(viii) Black Rain Ordnance Recon Scout.
(ix) Bushmaster ACR.
(x) Bushmaster Carbon 15.
(xi) Bushmaster MOE series.
(xii) Bushmaster XM15.
(xiii) Chiappa Firearms MFour rifles.
(xiv) Colt Match Target rifles.
(xv) CORE Rifle Systems CORE15 rifles.
(xvi) Daniel Defense M4A1 rifles.
(xvii) Devil Dog Arms 15 Series rifles.
(xviii) Diamondback DB15 rifles.
(xix) DoubleStar AR rifles.
(xx) DPMS Tactical rifles.
(xxi) DSA Inc. ZM–4 Carbine.
(xxii) Heckler & Koch MR556.
(xxiii) High Standard HSA–15 rifles.
(xxiv) Jesse James Nomad AR–15 rifle.
(xxv) Knight's Armament SR–15.
(xxvi) Lancer L15 rifles.
(xxvii) MGI Hydra Series rifles.
(xxviii) Mossberg MMR Tactical rifles.
(xxix) Noreen Firearms BN 36 rifle.
(xxx) Olympic Arms.
(xxxi) POF USA P415.
(xxxii) Precision Firearms AR rifles.
(xxxiii) Remington R–15 rifles.
(xxxiv) Rhino Arms AR rifles.
(xxxv) Rock River Arms LAR–15.
(xxxvi) Sig Sauer SIG516 rifles and MCX rifles.
(xxxvii) Smith & Wesson M&P15 rifles.
(xxxviii) Stag Arms AR rifles.
(xxxix) Sturm, Ruger & Co. SR556 and AR–556 rifles.
(xl) Uselton Arms Air-Lite M–4 rifles.
(xli) Windham Weaponry AR rifles.
(xlii) WMD Guns Big Beast.
(xliii) Yankee Hill Machine Company, Inc. YHM–15 rifles.
(C) Barrett M107A1.
(D) Barrett M82A1.
(E) Beretta CX4 Storm.
(F) Calico Liberty Series.
(G) CETME Sporter.
(H) Daewoo K–1, K–2, Max 1, Max 2, AR 100, and AR 110C.
(I) Fabrique Nationale/FN Herstal FAL, LAR, 22 FNC, 308 Match, L1A1 Sporter, PS90, SCAR, and FS2000.
(J) Feather Industries AT–9.

(K) Galil Model AR and Model ARM.
(L) Hi-Point Carbine.
(M) HK–91, HK–93, HK–94, HK–PSG–1, and HK USC.
(N) IWI TAVOR, Galil ACE rifle.
(O) Kel-Tec Sub-2000, SU–16, and RFB.
(P) SIG AMT, SIG PE–57, Sig Sauer SG 550, Sig Sauer SG 551, and SIG MCX.
(Q) Springfield Armory SAR–48.
(R) Steyr AUG.
(S) Sturm, Ruger & Co. Mini-14 Tactical Rifle M–14/20CF.
(T) All Thompson rifles, including, but not limited to, the following:
    (i) Thompson M1SB.
    (ii) Thompson T1100D.
    (iii) Thompson T150D.
    (iv) Thompson T1B.
    (v) Thompson T1B100D.
    (vi) Thompson T1B50D.
    (vii) Thompson T1BSB.
    (viii) Thompson T1–C.
    (ix) Thompson T1D.
    (x) Thompson T1SB.
    (xi) Thompson T5.
    (xii) Thompson T5100D.
    (xiii) Thompson TM1.
    (xiv) Thompson TM1C.
(U) UMAREX UZI rifle.
(V) UZI Mini Carbine, UZI Model A Carbine, and UZI Model B Carbine.
(W) Valmet M62S, M71S, and M78.
(X) Vector Arms UZI Type.
(Y) Weaver Arms Nighthawk.
(Z) Wilkinson Arms Linda Carbine.

(8) All belt-fed semiautomatic firearms, including TNW M2HB and FN M2495.

(9) Any combination of parts from which a firearm described in subparagraphs (1) through (8) can be assembled.

(10) The frame or receiver of a rifle described in subparagraphs (1) through (9).

Assault Rifles as defined herein do not include firearms that: (i) are manually operated by a bolt, pump, lever or slide action; or (ii) have been rendered permanently inoperable.

| | |
|---|---|
| BARREL SHROUD: | A shroud that is attached to, or partially or completely encircles, the barrel of a firearm so that the shroud protects the user of the firearm from heat generated by the barrel but excluding a slide that encloses the barrel. |
| COMMERCIAL SALE OF ASSAULT RIFLES: | The sale or offer for sale of an Assault Rifle when the sale requires the seller to have a valid certificate of license issued pursuant to the Illinois Firearm Dealer License Certification Act (430 ILCS 68/5-1 et seq.). |
| DETACHABLE MAGAZINE: | An ammunition feeding device that can be removed from a firearm without disassembly of the firearm. |
| FIXED MAGAZINE: | An ammunition feeding device that is contained in and not removable from or permanently fixed to the firearm. |
| FOLDING, TELESCOPING, OR DETACHABLE STOCK: | A stock that folds, telescopes, detaches or otherwise operates to reduce the length, size, or any other dimension, or otherwise enhances the concealability, of a firearm. |
| FORWARD GRIP: | A grip located forward of the trigger that functions as a pistol grip. |
| LAW ENFORCEMENT OFFICER: | A person who can provide verification that they are currently employed by a local government agency, state government agency, or federal government agency as a sworn police officer or as a sworn federal law enforcement officer or agent. |
| PISTOL GRIP: | A grip, a thumbhole stock or Thordsen-type grip or stock, or any other characteristic that can function as a grip. |
| THREADED BARREL: | A feature or characteristic that is designed in such a manner to allow for the attachment of a device such as a firearm silencer or a flash suppressor. |

### 3-19-2: - PROHIBITION OF THE COMMERCIAL SALE OF ASSAULT RIFLES

1. The Commercial Sale of Assault Rifles within the City is unlawful and is hereby prohibited.

2. The provisions of this Chapter shall not apply to the Commercial Sale of Assault Rifles to:

    2.1. Any federal, state, local law enforcement agency;

    2.2. The United States Armed Forces or department or agency of the United States;

    2.3. Illinois National Guard, or a department, agency, or political subdivision of a state; or

    2.4. A Law Enforcement Officer.

### 3-19-3: - ENFORCEMENT

Any person or entity who violates any of the provisions set forth or referenced in this Chapter shall be subject to the following:

1. A fine of one thousand dollars ($1,000.00) for a first offense within a 12-month period, and a fine of two thousand five hundred dollars ($2,500.00) for a second or subsequent offense within a 12-month period.

    1.1. Each day that a violation of this Chapter continues shall be considered a separate and distinct offense and a fine shall be assessed for each day a provision of this Chapter is found to have been violated. Notwithstanding the forgoing, the escalation of fines as set forth above shall not occur until a prior adjudication of a violation against the same person or entity has been entered.

2. Any violation of the provisions of this Chapter may be deemed a public nuisance and abated pursuant to all available remedies, including but not limited to injunctive relief. In addition to the penalties provided for in Section 3-19-3:1 above, the City shall be entitled to reimbursement for the cost of the City's reasonable attorney's fees and all costs and expenses incurred by the City to abate any entity operating as a public nuisance. Said attorney's fees and said costs and expenses shall be paid to the City within sixty (60) days of issuance of a bill therefor unless an alternate timeframe is agreed to in writing by the City Manager.

    **SECTION 3**: **Savings clause**. If any provisions of this Ordinance or their application to any person or circumstance are held invalid or unenforceable by any court of competent jurisdiction, the invalidity or unenforceability thereof shall not affect any of the remaining provisions or application of this Ordinance which can be given effect without

the invalid or unenforceable provisions or application. To achieve this purpose, the provisions of the Ordinance are declared to be severable.

**SECTION 4**: **Effective date and Pre-existing purchasers.** This Ordinance shall take effect on January 1, 2023, (the "Effective Date"), except as follows:

> Any person that can demonstrate to the satisfaction of the City Attorney that the Commercial Sale of an Assault Rifle was completed prior to the Effective Date of January 1, 2023, which means that prior to January 1, 2023, the purchaser completed an application, passed a background check, and has a receipt or purchase order for said purchase, without regard to whether the purchaser has actual physical possession of the Assault Rifle, shall be considered a pre-existing purchaser. For said pre-existing purchaser, the delivery of physical possession of the Assault Rifle may be completed, even if such activity would otherwise be in violation of the new provisions of Chapter 19 (Regulation of the Commercial Sale of Assault Rifles) of Title 3 (Business and License Regulations). Notwithstanding the foregoing, if physical possession of the Assault Rifle will not occur until more than sixty (60) days following the Effective Date of this Ordinance, that person is not a pre-existing purchaser and said purchase shall constitute a violation of the provisions of this Chapter.

PASSED this _____day of_____, 2022.

    AYES:

    NAYS:

    ABSENT:

    APPROVAL this _____day of_____, 2022.

_____
Steve Chirico
Mayor

ATTEST:

_____
Pam Gallahue, Ph.D.
City Clerk