**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT C. BEVIS, et al.; <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF NAPERVILLE, ILLINOIS, a municipal corporation; <br><br> Defendant. | **Case No. 1:22-cv-04775** <br><br> **Hon. Virginia M. Kendall** |

**CITY OF NAPERVILLE'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs' Motion should be denied. Controlling precedent of the Seventh Circuit establishes that assault weapons like those addressed by the City of Naperville's Ordinance are not protect by the Second Amendment. *Friedman v. City of Highland Park, Illinois*, 784 F.3d 406 (7th Cir. 2015), *cert. denied.* 577 U.S. 1039 (2015). Neither the holding nor the logic of the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2012)—which addressed the constitutionality of state's firearms licensing procedures—provides a basis for overturning the Seventh Circuit's decision in *Friedman*. Plaintiffs cannot demonstrate any likelihood of success on the merits of their Second Amendment challenge to Naperville's ban on the commercial sale of assault weapons.

Beyond this, Plaintiffs cannot meet any of the other elements needed for emergency injunctive relief. Plaintiffs allege no irreparable harm that would provide this Court a basis to immediately enjoin a law that has not taken effect. And their claims that the Court should presume they will somehow be irreparably injured and that their legal remedies are inadequate are unfounded.

-1-

A consideration of the balance of hardships also weighs heavily in Naperville's favor. Naperville has a compelling interest in protecting the public within its jurisdictional limits from the horrible risk of assault rifles. The Ordinance was passed by a public body and is a legitimate exercise of Naperville's inherent power as home-rule municipality to protect the public's health, safety, and welfare. Plaintiffs allege no harm that would justify, in the absence of a fully-developed record in this case, upending a democratically-enacted law before it takes effect. The balance of hardships favors Naperville. Plaintiffs' Motion should be denied.[1]

## FACTUAL BACKGROUND

On August 16, 2022, after the mass shooting at the Fourth of July parade in Highland Park, Illinois, and in response to concerns raised by citizens, Naperville's City Council took action to protect the public within its jurisdictional limits. The democratically-elected body adopted the Ordinance to prohibit the commercial sale of assault rifles within the city. In doing so, Naperville joined states such as California, Connecticut, Hawaii, Maryland, Massachusetts, New Jersey and New York, and municipalities including Boston, Denver, Washington, D.C., Gary, Indiana, Chicago, Cook County, and the cities of Highland Park, Deerfield, and Evanston, Illinois, to name only a few, with similar bans. In fact, as the full record will establish, these states and municipalities enforce prohibitions broader than Naperville's, typically outlawing the sale, transfer, manufacture, and ownership of assault rifles. In all, more than a quarter of the United States' population lives under the safety of bans on these highly dangerous weapons and accessories.

Naperville's Ordinance is attached as Exhibit A. Under the Ordinance, a "commercial sale"

---

[1] Naperville has not yet answered the Complaint or otherwise responded to Plaintiffs' initial pleading. Naperville is responding to this Motion by all Plaintiffs on an expedited basis as instructed by the Court. Accordingly, Naperville does not waive any standing arguments that may apply to any individual Plaintiff.

is a sale that requires the seller to have a valid certificate of license issued pursuant to the Illinois

Firearm Dealer Certification Act. *See* Ex. A at 8. The Ordinance defines "assault rifle" in detail.

Under Section 3-19-1, an "assault rifle" means:

> "(1) A semiautomatic rifle that has a magazine that is not a fixed magazine and
> has any of the following:
>> (A) A pistol grip.
>> (B) A forward grip.
>> (C) A folding, telescoping, or detachable stock, or is otherwise foldable or
>> adjustable in a manner that operates to reduce the length, size, or any other
>> dimension, or otherwise enhances the concealability, of the weapon.
>> (D) A grenade launcher.
>> (E) A barrel shroud.
>> (F) A threaded barrel.
> (2) A semiautomatic rifle that has a fixed magazine with the capacity to accept
> more than 10 rounds, except for an attached tubular device designed to accept,
> and capable of operating only with, .22 caliber rimfire ammunition.
> (3) Any part, combination of parts, component, device, attachment, or accessory
> that is designed or functions to accelerate the rate of fire of a semiautomatic rifle
> but not convert the semiautomatic rifle into a machinegun."

The Ordinance also bans the sale of specific assault rifles, named by make and model,

along with replicas and duplicates of the same. *See* Ex. A at 5–7. The City scheduled the Ordinance

to take effect January 1, 2023, to allow gun sellers and others time to comply. Any licensed seller

who sells an assault rifle to a legal purchaser before that time is allowed to deliver the assault rifle

for up to 60 days after the Ordinance becomes operative.

The Ordinance's definition of "assault rifle" closely mirrors the definition of

"semiautomatic assault weapon" in what was commonly known as the Federal Assault Weapons

Ban. *See* Public Safety and Recreational Firearms Use Protection Act, Pub. L. No. 103-322, tit.

XI, subtit. A, 108 Stat. 1796, 1996–2010 (1994). The Ban, which lasted a decade and survived

multiple constitutional challenges, expired in 2004 and has not been renewed by Congress.

Retrospective data show the Ban and laws like it reduce the share of gun crimes involving assault

rifles like those contemplated by the Ordinance. *See Friedman v. City of Highland Park, Illinois*,

-3-

784 F.3d 406, 411 (7th Cir. 2015), cert. denied, 577 U.S. 1039 (2015) (citing Christopher S. Koper, et al., *An Updated Assessment of the Federal Assault Weapons Ban: Impacts on Gun Markets and Gun Violence, 1994–2003* 39–60 (2004)). Notably, the federal Ban restricted the manufacture, sale, and possession of certain semiautomatic assault weapons across the United States. Naperville's Ordinance only prohibits the commercial sale of assault rifles in Naperville; it does not outlaw ownership of such weapons.

Naperville exercised its home-rule authority under Illinois law to adopt the Ordinance. *See* Ex. A at 4. The City Council recognized "it has become an unacceptable fact of life that no municipality is exempt from the reality that its citizens are at risk" from mass shootings. *Id.* at 2. "Commonplace in these mass shootings are the use of lawfully purchased assault rifles." *Id.* The Ordinance names the devastating events in Highland Park and other recent mass shootings in Uvalde, Texas; Buffalo, New York; El Paso, Texas; Pittsburgh, Pennsylvania; Parkland, Florida; Sutherland Springs, Texas; Las Vegas, Nevada; San Bernadino, California; Orlando, Florida; and Newtown, Connecticut. *Id.* at 1–2. As the full record will establish, in each of these mass shootings, the gunman used an assault rifle covered by the Ordinance to kill multiple people. Like many of these places, Naperville has "a vibrant commercial area, public parks, restaurants, movie theaters, music venues, parades, elementary, middle and high schools both public and private, colleges and universities, houses of worship of many denominations, and other places where members of the public gather with an expectation of safety." *Id.* at 2. Naperville therefore has a "clear and compelling interest" in protecting the "public health, safety, and welfare" of its citizens. *Id.* at 4.

Plaintiffs filed this lawsuit on September 7, 2022, seeking a declaratory judgment that the Ordinance was unconstitutional, among other relief. *See* Dkt. 1. At that time, Plaintiffs were fully aware the Ordinance would take effect January 1, 2023. *Id.* at 3–4. Under the current schedule,

Naperville has until November 21, 2022 to answer or otherwise respond. On November 18, 2022, more than two months after filing this lawsuit, and with no apparent change in circumstances that would justify emergency relief, Plaintiffs moved for a TRO and a preliminary injunction. Dkt. 10.

## ARGUMENT

Temporary restraining orders and preliminary injunctions are "extraordinary and drastic" remedies. *See, e.g., Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) ("The granting of a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it."); *Pozo v. Hompe*, No. 02-C-12-C, 2002 WL 32357081, at *2 (W.D. Wis. July 30, 2002) ("In general, temporary restraining orders are disfavored because they deprive the opposing parties of the opportunity to respond to the movant's allegations."). ¡Courts must, therefore, carefully scrutinize any request for either form of relief. ¡

Under controlling law, movants must demonstrate, "*by a clear showing,*" the following four elements: "(1) they have a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *E.g.*, *Goodman v. Illinois Dep't of Fin. & Pro. Regul.*, 430 F.3d 432, 437 (7th Cir. 2005) (emphasis in original). Plaintiffs, however, ask this Court to ignore clear, binding authority and fashion a new standard under which the "the analysis begins and ends with the likelihood of success on the merits" in cases relating to firearms regulations. *See* Dkt. 10 at 4–6. In other words, they manufacture a standard that excises three of the four elements they are required to prove.

But even under their own proffered test, Plaintiffs' Motion fails because they cannot establish a likelihood of success on the merits. For this reason alone, the Court should deny

Plaintiffs' Motion.

**A.      Plaintiffs Do Not Have a Likelihood of Success on the Merits.**

The Seventh Circuit has explicitly ruled that a ban on the commercial sale of assault weapons does not violate the Second Amendment. In *Friedman v. City of Highland Park*, the Seventh Circuit upheld a prohibition that banned the sale, transfer, manufacture, and ownership of assault weapons—a measure far more expansive than the Ordinance, which only bans sales. Plaintiffs make no effort to explain why the Ordinance—a narrower ban than the one upheld in *Friedman*—should be treated differently. Plaintiffs' reliance on the recent Supreme Court decision in *Bruen* does not affect the analysis. *Bruen* did not concern the sale of assault rifles and, like *Friedman*, relied on *Heller*. Plaintiffs cite no case that confers a constitutional right to sell or even own assault rifles like those contemplated in the Ordinance. Plaintiffs cannot succeed on the merits and their Motion should be denied.

**1.      Naperville's Ordinance Comports with the Second Amendment.**

Plaintiffs flatly ignore controlling law that prohibitions like the Ordinance on the commercial sales of assault rifles are constitutional. While the Supreme Court in *Heller* recognized a limited constitutional right to possess handguns for self-defense in the home, it made clear that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *D.C. v. Heller*, 554 U.S. 570, 626–27 (2008). The Court left open the ability for municipalities to regulate the commercial sales of arms. *Id*. ("Nothing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms.").

In *Friedman,* the Seventh Circuit relied on *Heller* to uphold Highland Park's ban on the sale, transfer, manufacture, or ownership of assault weapons and large capacity magazines. *Friedman v. City of Highland Park, Illinois*, 784 F.3d 406 (7th Cir. 2015). Similar to Naperville, Highland Park passed its ordinance to "address the potential threat of mass shooting involving

semi-automatic weapons." *Friedman v. City of Highland Park,* 68 F. Supp. 3d 895, 898 (N.D. Ill. 2014), *aff'd.* 784 F.3d 406 (7th Cir. 2015). The ordinance's definition of "assault weapon" is materially identical to the definition of "assault rifle" in Naperville's Ordinance at issue in this case. *Compare id.* at 898–99, *with* Ex. A at 5–7. After establishing a full record, the District Court granted Highland Park summary judgment and ruled the ordinance should remain in full force. *Friedman,* 68 F. Supp. 3d at 909. The Seventh Circuit affirmed, and the Supreme Court denied certiorari. *See Friedman,* 784 F.3d at 406, *cert. denied.* 577 U.S. 1039, 136 S. Ct. 447 (2015).

The *Friedman* holding is fatal for Plaintiffs' claim here. If the Seventh Circuit permitted Highland Park's broad ban on the sale, transfer, manufacture, or ownership of assault weapons, Naperville's more limited prohibition on commercial sales must similarly survive a constitutional challenge. Faced with this, Plaintiffs do not even attempt to explain why Naperville's Ordinance should be treated differently than the result in *Friedman.*[2]

Plaintiffs also do not confront that the *Friedman* Court conducted a similar historical analysis as the one Plaintiffs claim is necessary here but reached the opposite conclusion. *See* Mot. at 6. Applying *Heller*, the Seventh Circuit queried whether (1) the banned weapons were "common at the time of ratification [of the Second Amendment] or those that have 'some reasonable relationship to the preservation or efficiency of a well regulated militia,'" and (2) whether "law-abiding citizens retain adequate means of self-defense." *Id.* at 410 (quoting *Heller*, 554 U.S. at 622–25).[3] The Seventh Circuit's answers to those questions sink Plaintiffs' claims for multiple

---

[2] Plaintiffs' Motion cites the dissenting opinion in *Friedman* and the underlying district court case as support for unrelated points (Dkt. 10 at 5, 14), but never addresses the majority's opinion that the City of Highland Park's ban on the sale, transfer, manufacture, or ownership of assault weapons does not violate the Second Amendment.

[3] In their Motion, Plaintiffs apply a similar *Heller* analysis, which they claim the Supreme Court "reaffirmed" in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). *See* Mot. at 6–

reasons. First, the appellate court held that semi-automatic weapons and large-capacity magazines "were not common in 1791" when the Second Amendment was ratified. *Friedman*, 784 F. 3d at 410. And even if assault weapons somehow relate to the effectiveness of state militias, a city government in Illinois (like Naperville) likely has "the power to determine what kinds of weapons citizens should have available." *See id.* at 410–11. Second, the Seventh Circuit noted that the Highland Park ordinance left residents "with many self-defense options," including other weapons not covered by the ban. *Id.* at 411. In this case, the Naperville public retains *even more adequate options* for self-defense than *Friedman* because the Ordinance does not restrict the possession of assault rifles, only the sale.

*Friedman* remains good law and controls in this case. Under *Friedman*, Naperville's Ordinance does not violate the Second Amendment. Plaintiffs' claim is not likely to succeed.

## 2. Selling an Assault Rifle Is Not Protected by the Second Amendment.

Plaintiffs cite no case establishing a constitutional right to sell an assault rifle as defined in the Ordinance.[4] In a conclusory fashion, Plaintiffs claim that under the Supreme Court's recent decision in *Bruen,* local laws banning sales of assault rifles now violate the Second Amendment. (Mot. at 10–11). The *Bruen* decision, however, says nothing of the sort, nor can it be read broadly to impose such a new rule. In *Bruen,* the Supreme Court narrowly held that "an individual's right to carry a handgun for self-defense outside the home" is presumptively protected by the Second Amendment. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022). Yet, the opinion obviously never discusses the type of semiautomatic firearms at issue here.

---

8 (asking the Court to apply a test "based on historical practice and the historical understanding of the scope of the right, but with reference to modern realities of firearm ownership").

[4] Courts considering the question have found no such right. *See, e.g., U.S. v. Chafin*, 423 Fed. Appx. 342, 244 (4th Cir. 2011) (noting absence of authority supporting proposition that Second Amendment protects the right to sell firearms).

Plaintiffs read *Bruen* as eliminating the two-part test Courts of Appeals sometimes used to analyze Second Amendment issues and return to *Heller's* "historical approach." *See* Mot. at 6 (citing *Bruen*, 142 S. Ct. at 2126). Notably, however, *Bruen* does not overturn (or even mention) *Friedman*, which expressly relies on the same *Heller* historical test and remains good law. *Friedman*, 784 F. 3d at 410.[5]

Plaintiffs also claim an isolated statement in *Illinois Ass'n of Firearms Retailers* demonstrates the Ordinance falls under *Bruen* (and is presumably therefore unconstitutional). *See* Mot. at 17. But *Retailers* was decided at the summary judgment stage, with a full evidentiary record, and involved a much broader ban on "virtually all sales and transfers of firearms inside [Chicago] city limits" no matter the type of firearm. *See Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 930–31. Moreover, the Seventh Circuit's issued its decision in *Friedman* more than a year **after** the District Court's decision in *Retailers*. *Friedman*, 784 F.3d at 413.

*Ezell v. City of Chicago* was likewise decided before *Friedman* and is similarly unavailing. Plaintiffs claim *Ezell* "makes clear commercial activity related to the right to keep and bear arms" is protected by the Second Amendment. Mot. at 5. But *Ezell* involved the limited question of whether a Chicago ordinance mandating firing-range training as a prerequisite to gun ownership was unconstitutional when firing ranges were prohibited in city limits. *Ezell v. City of Chicago*, 651 F.3d 684, 689–90 (7th Cir. 2011). It did not concern a ban on assault weapons (much less the sale of such weapons) and the Seventh Circuit has subsequently held that *Friedman* fits

---

[5] To the extent Plaintiffs attempt to use this case to challenge *Friedman* in light of *Bruen*, the Court should afford the parties the opportunity to establish a full record and presentation of evidence. *See Illinois Ass'n of Firearms Retailers v. City of Chicago* , 961 F. Supp. 2d at 931–32 (reviewing cross-motions for summary judgment); *Second Amend. Arms v. City of Chicago*, 135 F. Supp. 3d 743, 761 (N.D. Ill. 2015) (noting "whether the Second Amendment protects the sale of firearms" is "an issue more suited for the summary-judgment stage").

comfortably with *Ezell. See Wilson v. Cook Cnty.*, 937 F.3d 1028, 1036 (7th Cir. 2019) (holding

that Cook County's ban on the sale and possession of assault rifles is constitutional). Ultimately,

Plaintiffs cite no case that supports a Second Amendment right to selling assault weapons. Their

claim is unlikely to succeed.

    3.  **Owning an Assault Rifle Is Not Protected by the Second Amendment.**

    Despite Plaintiffs' claims, the Ordinance does not "ban[] semi-automatic firearms." *See,*

*e.g.,* Mot. at 12 (discussing the history around firearm bans). As Plaintiffs are aware, the Ordinance

merely restricts the commercial sale of a certain subset of assault rifles. But even if the Ordinance

banned the ownership of such weapons, such a measure would be constitutional. *Heller* carefully

explained that the Second Amendment does not guarantee "a right to keep and carry any weapon

whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. Rather,

"the Second Amendment right . . . extends only to certain types of weapons." *Id.* at 623. Since

*Heller* was decided, Courts of Appeals have uniformly rejected claims that state and local bans on

ownership of assault weapons violate the Second Amendment. *See Wilson v. Cook Cnty.*, 937 F.3d

1028 (7th Cir. 2019) (upholding Cook County's ban); *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir.

2017) (possession or sales of assault weapons and large-capacity magazines not protected by the

Second Amendment); *Worman v. Healey*, 922 F.3d 26 (1st Cir. 2019) (same); *Fyock v. City of*

*Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) (same); *Heller v. District of Columbia*, 670 F.3d 1244

(D.C. Cir. 2011). Thus, even if the Ordinance involved a complete ban on the ownership of assault

weapons (it does not), Plaintiffs' claim would still fail. Plaintiffs are not likely to succeed on the

merits and their Motion should be denied.

**B.    Plaintiffs Will Not Suffer Irreparable Harm if the Ordinance Goes into Effect.**

    Plaintiffs' claim that the Ordinance "will cause irreparable harm to LWI and the citizens

of Naperville," *see* Dkt. 10 at 19, is equally defective. As established above, LWI does not have a

protected right to sell assault weapons. *Heller*, 554 U.S. at 626–27. And the Ordinance does not restrict the right of the people who live and work in Naperville to keep or bear arms. Plaintiffs will not suffer a constitutional injury from its enforcement.[6] Recognizing this, Plaintiffs instead ask the Court to adopt a standard for evaluating requests for emergency injunctive relief that would contravene binding precedent; the Court should decline to do so. Finally, Plaintiffs' request for emergency relief is weakened by their 72-day delay in seeking it.

### 1. The Court Should Not Presume that Plaintiffs Will Be Irreparably Harmed by Enforcement of the Ordinance Merely Because It Relates to Firearms.

Plaintiffs ask the Court to ignore the controlling standard for evaluating requests for emergency relief and presume that they will be injured when the Ordinance goes into effect. But in support of this request, they lean heavily on cases that have nothing to do with firearms. *See* Mot. at 4–6. And *Ezell* and *Bruen*, the two firearms-related cases Plaintiffs cite, are distinguishable. Neither support Plaintiffs' proposed standard, which the Court should reject.

In *Ezell*, the Seventh Circuit held that Plaintiffs (individuals, a firing range operator, and two advocacy organizations) were irreparably harmed by an ordinance limiting "the right to *possess* firearms for protection."[7] *Ezell*, 651 F.3d at 699–700 (emphasis added). The holding was expressly limited to "the form of the claim and the substance of the Second Amendment right," namely possession of firearms for self-protection. *Id.* at 700. As mentioned *supra*, it did not, as Plaintiffs' claim, create a general rule of law instructing courts to presume any regulation of "commercial activity" involving firearms irreparably harms gun stores or even gun owners. Mot.

---

[6] LWI's conclusory statement that it will "go out of business," Decl. of Robert Bevis, at ¶ 5, if the Ordinance is enforced does not justify granting preliminary injunctive relief either. The company offers no information about potential lost sales or profits, which precludes it from making a "*clear showing*" that it will be irreparably harmed or that its potentially available legal remedies will be inadequate.

[7] The *Ezell* Court did not consider the portion of the ordinance regulating the sale of firearms in the City of Chicago.

at 5.

*Bruen* does not help Plaintiffs either. First, the regulation at issue limited the right to "right to carry handguns publicly for . . . self-defense." *Bruen*, 142 S. Ct. at 2122. Since the Second Amendment's plain text protects "the right of the people to keep and bear arms" and "the definition of 'bear' naturally encompasses public carry," the Court held that the Constitution presumptively protects the right to possess firearms outside the home for self-defense. *Id.* at 2134. But as explained, *Bruen* never discusses the type of semiautomatic firearms at issue here, does not address *Friedman*, and says nothing about the standard for evaluating an application for emergency injunctive relief. Plaintiffs offer no other support for their contention that a presumption of irreparable harm should apply in cases involving regulations of commercial sales of assault weapons. Their Motion should be denied.

### 2. No Change in Circumstances Justifies Plaintiffs' Application for Emergency Relief.

Plaintiffs also identify no change in circumstances since filing their Complaint in September that would justify emergency relief. Mot. at 2. The status quo has not changed since the Complaint was filed—the ordinance still has not gone into effect and LWI has continued to sell assault weapons. The fact that Plaintiffs waited 72 days to file this Motion shows that this is a crisis of their own making and undermines any argument that they will be irreparably harmed in the absence of emergency relief. *E.g.*, *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) ("Delay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm . . . ."); *Crawford & Co. Med. Ben. Tr. v. Repp*, No. 11 C 50155, 2011 WL 2531844, at *7 (N.D. Ill. June 24, 2011) ("[A] significant delay in filing a motion for preliminary injunction undermines the moving party's argument that it will suffer irreparable harm without an injunction.").

Since Plaintiffs offer no meaningful support for their claim that the Court should presume they will be irreparably injured by enforcement of the Ordinance, and their conduct belies any such claim, their Motion must fail.

**C.     The Balance of Hardships Favors Naperville.**

Finally, Plaintiffs' Motion should be denied because an injunction would harm Naperville's (and the public's) interest in safety within the City's limits. Plaintiffs' alleged harm is that LWI will go out of business and that "the citizens of Naperville . . . will be unable to purchase Banned Firearms in Naperville." Decl. of Robert Bevis, at ¶ 5; Mot. at 19. Naperville's aim to ensure public safety and protect its citizens from mass shootings strongly outweighs such illusory and unsupported claims. The balance of hardships heavily favors Naperville.

Naperville has a compelling interest in regulating assault rifles to protect its citizens. Weapons like those contemplated by the Ordinance have accounted for four of the five deadliest mass shootings in U.S. history, killing 164 people in total: the Las Vegas Strip massacre; Orlando nightclub massacre; Sandy Hook Elementary massacre; and the Texas First Baptist Church massacre.[8] When an assault weapon is used in a mass shooting, nearly 14 times as many people are injured, and twice as many people are killed.[9] Courts of Appeals across the country repeatedly have observed the danger . *See, e.g.*, *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 262 (2d Cir. 2015) ("When used, [assault rifles] tend to result in more numerous wounds, more serious wounds, and more victims."); *Kolbe*, 849 F.3d at 139 ("[A]ssault weapons . . . [are] particularly attractive to mass shooters and other criminals, including those targeting police");

---

[8] *Weapon Types Used in Mass Shootings in the United States Between 1982 and October 2022, by Number of Weapons and Incidents*, STATISA (Oct. 18, 2022), https://www.statista.com/statistics/476409/mass-shootings-in-the-us-by-weapon-types-used/.

[9] *The Effects of Bans on the Sale of Assault Weapons and High-Capacity Magazines*, RAND CORP. (Apr. 22, 2020), https://www.rand.org/research/gun-policy/analysis/ban-assault-weapons.html.

*Friedman*, 784 F.3d at 411 ("[A]ssault weapons with large-capacity magazines can fire more shots, faster, and thus can be more dangerous in aggregate. Why else are they the weapons of choice in mass shootings?").

Because of the unique threats assault rifles pose to public safety, state and local governments are afforded great deference to regulate them. In Illinois, home rule municipalities like Naperville are statutorily authorized to regulate the possession or ownership of assault weapons. 430 ILCS 65/13.1; *Easterday v. Vill. of Deerfield*, 176 N.E.3d 187, 203 (Ill. App. Ct. 2020) (holding that a home rule unit had the power under 430 ILCS 65/13.1 to impose a complete civilian ban on assault weapons and large capacity magazines); *see also Friedman*, 784 F.3d at 410 ("[S]tates, which are in charge of militias, should be allowed to decide when civilians can possess military-grade firearms . . . .").

Plaintiffs' alleged harm, on the other hand, is severely outweighed by Naperville's and the public's interest in regulating the sale of these dangerous weapons under the City's inherent home-rule authority. As explained *supra*, Plaintiffs have no constitutional right to sell (or own) assault rifles, and therefore no constitutional injury. The Ordinance also does not restrict the right of people who live and work in Naperville to keep or bear arms. To the extent Plaintiffs allege citizens will be unable to buy assault rifles from licensed sellers within city limits, they will still be able to travel to acquire such weapons. And LWI's conclusory statement that it will "go out of business," with no information about potential lost sales or profits, does not make a "clear showing" that it will be harmed in a manner that outweighs the public's clear interest in safety and protection. The balancing of harms strongly favors Naperville, and Plaintiffs' request for injunctive relief should be denied.

## **CONCLUSION**

For the reasons stated above, the Court should deny Plaintiffs' Motion.

-14-

Dated: November 21, 2022                 Respectfully submitted,

                                         */s/ Christopher B. Wilson*

Christopher B. Wilson, Bar No. 06202139
CWilson@perkinscoie.com
PERKINS COIE LLP
110 North Wacker Dr., Suite 3400
Chicago, Illinois 60606-1511
Tel: 312.324.8400

Attorney for City of Naperville

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that in accordance with Federal Rule of Civil Procedure 5 and Local Rule 5.5, the following document was served on November 21, 2022 through the district court's ECF system to the following counsel of record:


Jason Craddock
Attorney at Law
2021 Midwest Rd., Ste 200
Oak Brook, IL 60523
craddocklaw@icloud.com

Barry K. Arrington
Arrington Law Firm
3801 East Florida Avenue, Suite 830
Denver, Colorado 80210
barry@arringtonpc.com



*/s/ Christopher B. Wilson*
Christopher B. Wilson