NAPERIN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, ROBERT C. BEVIS, and LAW WEAPONS, INC., d/b/a LAW WEAPONS & SUPPLY, an Illinois corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF NAPERVILLE, ILLINOIS, a municipal corporation,<br><br>    Defendant. | Case No. 1:22-CV-04775<br><br>Hon. Virginia M. Kendall |

**DEFENDANT CITY OF NAPERVILLE, ILLINOIS'S
PARTIAL ANSWER AND AFFIRMATIVE DEFENSES TO THE COMPLAINT**

Defendant City of Naperville, Illinois, ("Naperville") by its undersigned counsel, submits the following Partial Answer to the Complaint ("Partial Answer") in the above captioned matter.

This Partial Answer responds to the Complaint's allegations only with respect to Plaintiffs Robert C. Bevis and Law Weapons, Inc., d/b/a Law Weapons & Supply. It does not respond to allegations with respect to National Association for Gun Rights ("NAGR"), because Naperville is concurrently moving to dismiss NAGR's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. As such, its deadline to answer NAGR's allegations is tolled under Rule 12(a)(4). Accordingly, Naperville states as follows.

**I. PARTIES**

1.    Plaintiff National Association for Gun Rights ("NAGR") is a nonprofit membership and donor-supported organization qualified as tax-exempt under 26 U.S.C. § 501(c)(4). NAGR seeks to defend the right of all law-abiding individuals to keep and bear arms. NAGR has members who reside within the City. NAGR represents the interests of its

PARTIAL ANSWER TO COMPLAINT

members who reside in the City. Specifically, NAGR represents the interests of its members whose Second Amendment right to acquire arms is burdened by the City's prohibition on the commercial sale of certain semi-automatic firearms. For purposes of this Complaint, the term "Plaintiffs" is meant to include NAGR in its capacity as a representative of its members.

**ANSWER:** Naperville has moved to dismiss NAGR's claims for lack of standing. An answer to the allegations in Paragraph 1 is therefore neither appropriate nor required at this time.

2. Plaintiff Robert C. Bevis is a business owner in the City and a law-abiding citizen of the United States.

**ANSWER:** Naperville lacks knowledge or information sufficient to admit or deny the truth of the allegations in Paragraph 2 and, therefore, denies them.

3. Plaintiff Law Weapons, Inc. d/b/a Law Weapons & Supply is a duly registered Illinois corporation which operates in the City engaged in the commercial sale of firearms.

**ANSWER:** Naperville lacks knowledge or information sufficient to admit or deny the truth of the allegations in Paragraph 3 and, therefore, denies them.

4. Defendant City of Naperville, Illinois is a municipal corporation with an address of 400 S. Eagle Street, Naperville, Illinois 60540.

**ANSWER:** Naperville admits the allegations in Paragraph 4.

5. Defendant is or will enforce the unconstitutional provisions of the Ordinance against Plaintiffs under color of state law within the meaning of 42 U.S.C. § 1983.

**ANSWER:** Naperville has moved to dismiss NAGR's claims for lack of standing. An answer to the allegations in Paragraph 5 is therefore neither appropriate nor required at this time with respect to NAGR. As to the remaining Plaintiffs, Paragraph 5 of the Complaint consists of legal conclusions and arguments to which no response is required. To the extent a response is

required, Naperville admits that it will enforce Ordinance No. 22-099. Naperville denies the Ordinance contains unconstitutional provisions. Naperville denies any remaining allegations in Paragraph 5.

### III. JURISDICTION AND VENUE[1]

6. The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983 since this action seeks to redress the deprivation, under color of the laws, ordinances, regulations, customs and usages of the State, of rights, privileges or immunities secured by the United States.

**ANSWER:** Paragraph 6 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Naperville admits that jurisdiction is proper under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 42 U.S.C. § 1983. Naperville denies any remaining allegations in Paragraph 6 of the Complaint.

7. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, and their claim for attorneys' fees is authorized by 42 U.S.C. § 1988.

**ANSWER:** Paragraph 7 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Naperville admits that claims for declaratory and injunctive relief are properly brought pursuant to 28 U.S.C. §§ 2201 and 2202 but denies that Plaintiffs are entitled to such relief. Naperville also admits that a claim for attorneys' fees is authorized by 42 U.S.C. § 1988 but denies that Plaintiffs are entitled to such relief. Naperville denies any remaining allegations in Paragraph 7 of the Complaint.

---

[1] Plaintiffs mislabeled this section number "III" instead of "II." For ease of reviewing, Defendant has maintained their incorrect numbering.

PARTIAL ANSWER TO COMPLAINT

-3-

158882256.3

8. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

**ANSWER:** Naperville admits the allegations in Paragraph 8.

### IV. GENERAL ALLEGATIONS

9. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. Amend. II; *see also D.C. v. Heller*, 554 U.S. 570 (2008) ("*Heller*"); *McDonald v. City of Chicago*, 561 U.S. 742 (2010) ("*McDonald*"); and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 2022 WL 2251305 (U.S. June 23, 2022) ("*Bruen*").

**ANSWER:** Naperville admits that Paragraph 9 correctly quotes the U.S. Constitution. Naperville denies any remaining allegations in Paragraph 9.

10. The right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment. *McDonald, supra*.

**ANSWER:** Naperville admits that the Second Amendment is made applicable to the states by the Fourteenth Amendment. Naperville denies any remaining allegations in Paragraph 10.

11. This action challenges the constitutionality of Chapter 19 of Title 3 of the Naperville Municipal Code (the "Ordinance"). A copy of a draft of the Ordinance considered by the Naperville City Council at its meeting on August 16, 2022, is attached hereto as Exhibit A. On information and belief, the text of the Ordinance is identical to this draft.

**ANSWER:** Naperville denies the validity of a constitutional challenge to the Ordinance. Naperville admits that Exhibit A of Plaintiffs' complaint is a copy of a draft of the

Ordinance considered by the Naperville City Council at its meeting on August 16, 2022 and that the Ordinance is identical to Exhibit A. Naperville denies any remaining allegations in Paragraph 11.

12. Section 3-19-1 of the Ordinance defines the term "assault rifle." Section 3-19-2 of the Ordinance states: "The Commercial Sale of Assault Rifles within the City is unlawful and is hereby prohibited." Section 3-19-3 of the Ordinance provides for substantial penalties for any violation of its provisions.

**ANSWER:** Naperville admits the allegations contained in Paragraph 12, except that Naperville denies the Plaintiffs' characterization of the penalties for violation of the Ordinance as "substantial."

13. The term "assault rifle" as used in the Ordinance is not a technical term used in the firearms industry or community for firearms commonly available to civilians. Instead, the term is a rhetorically charged political term meant to stir the emotions of the public against those persons who choose to exercise their constitutional right to possess certain semi-automatic firearms that are commonly owned by millions of law-abiding American citizens for lawful purposes. Plaintiffs refuse to adopt the City's politically charged rhetoric in this Complaint. Therefore, for purposes of this Complaint, the term "Banned Firearm" shall have the same meaning as the term "assault rifle" in Section 3-19-1 of the Ordinance.

**ANSWER:** Paragraph 13 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Naperville admits that Plaintiffs give the same definition to the term "Banned Firearm" in the Complaint as the term "assault rifle" in Section 3-19-1 of the Ordinance but denies the implication that "Banned Firearm" should be substituted for "assault rifle" generally. Naperville denies that "assault rifle" is a politically

PARTIAL ANSWER TO COMPLAINT

-5-

charged term and denies the implication that this language was intended to stir the emotions of the public. Naperville denies that persons have a constitutional right to possess assault rifles. Naperville denies any remaining allegations in Paragraph 13.

14. Plaintiffs and/or their members and/or customers desire to exercise their Second Amendment right to acquire the Banned Firearms within the City for lawful purposes, including, but not limited to, the defense of their homes. When the Ordinance becomes effective on January 1, 2023, Plaintiffs and/or their members and/or customers will be prohibited from exercising their Second Amendment rights in this fashion. The outright ban on commercial sale of the Banned Firearms set forth in the Ordinance is unconstitutional on its face.

**ANSWER:** Naperville has moved to dismiss NAGR's claims for lack of standing. An answer to the allegations in Paragraph 14 is therefore neither appropriate nor required at this time with respect to NAGR. As to the remaining Plaintiffs, Paragraph 14 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Naperville denies that the Ordinance is unconstitutional. Naperville further denies that Plaintiffs and/or their members and/or customers have a Second Amendment right to sell assault rifles. Naperville lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14, and therefore, denies them.

15. The Second Amendment protects the right of law-abiding citizens to own weapons in common use by law-abiding citizens for lawful purposes. *Heller, supra*, at 627.

**ANSWER:** Paragraph 15 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Naperville denies the allegations in Paragraph 15.

16. "The right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use . . ." *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011) (emphasis added).

**ANSWER:** Paragraph 16 does not state factual allegations which are subject to admission or denial. To the extent Paragraph 16 can be interpreted to contain factual allegations, Naperville admits that Plaintiffs correctly quote the cited caselaw. Naperville denies any remaining allegations in Paragraph 16.

17. There is a venerable tradition in this country of lawful private ownership of semiautomatic rifles such as those the commercial sale of which is banned by the Ordinance. The Supreme Court has held as much. In *Staples v. United States*, 511 U.S. 600 (1994), the Court noted that semiautomatics, unlike machine guns, "traditionally have been widely accepted as lawful possessions." *Id.*, 511 U.S. 611-12 (identifying the AR-15 – the archetypal "assault weapon" – as a traditionally lawful firearm). The vast majority of States do not ban this type of semiautomatic rifles deemed "assault rifles" in the Ordinance.

**ANSWER:** Paragraph 17 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Naperville denies the allegations in Paragraph 17.

18. Millions of law-abiding citizens choose to possess firearms such as the Banned Firearms. *Duncan v. Becerra ("Duncan IV)"*, 970 F.3d 1133, 1147 (9th Cir. 2020) ("Commonality is determined largely by statistics."); *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Atty. Gen. N.J.*, 910 F.3d 106, 116 (3d Cir. 2018) (finding an "arm" is commonly owned because "[t]he record shows that millions . . . are owned"); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) ("Even accepting the most conservative estimates cited

PARTIAL ANSWER TO COMPLAINT

-7-

158882256.3

by the parties and by amici, the assault weapons . . . at issue are 'in common use' as that term was used in *Heller*."); *Heller v. D.C. ("Heller II")*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common use.'"). This is demonstrated by the AR-15 and other modem semiautomatic rifles, which epitomize the firearms that the City bans.

**ANSWER:** Naperville admits that the cited cases speak for themselves. To the extent further response is required, Naperville denies the remaining allegations in Paragraph 18.

19. The AR-15, as just one example among many of a Banned Firearm, is America's "most popular semi-automatic rifle," *Heller II*, 670 F.3d at 1287 (Kavanaugh, J., dissenting), and in recent years it has been "the best-selling rifle type in the United States," Nicholas J. Johnson, *Supply Restrictions at the Margins of Heller and the Abortion Analogue*, 60 HASTINGS L.J. 1285, 1296 (2009). Already in early 2013, sources estimated that there were five million AR- 15s in private hands. Dan Haar, *America's Rifle: Rise of the AR-15*, HARTFORD COURANT (Mar. 9, 2013), https://bit.ly/3whtDTj (last visited August 25, 2022); *see also Duncan v. Becerra ("Duncan III")*, 366 F. Supp. 3d 1131, 1145 (S.D. Cal. 2019).

**ANSWER:** Naperville admits that the Ordinance banned certain defined weapons, including but not limited to the AR-15. Naperville denies the remaining allegations of Paragraph 19.

20. The government may impose "conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. 626; Ezell, 651 F.3d at 701, quoting *Heller*. Nevertheless, an ordinance flatly prohibiting the commercial sale of firearms "would be untenable under *Heller*." *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010).

**ANSWER:** Paragraph 20 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Naperville agrees that *Heller* provides for restrictions on certain firearms. Naperville denies the remaining allegations in Paragraph 20.

21. In *Bruen*, the Court held that when the Second Amendment covers an individual's conduct, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation in order for it to be valid. *Bruen*, 142 S. Ct. at 2126.

**ANSWER:** Paragraph 21 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Naperville denies the remaining allegations of Paragraph 21.

22. In this regard, this Court has already held that flat prohibitions on the sale of firearms are not supported by this nation'[sic] history and traditions. In *Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928 (N.D. Ill. 2014), this Court invalidated an ordinance banning the commercial sale of firearms. It stated:

> Although the City argues that 'state bans of the sale of even popular and common arms stretch back nearly 200 years,' [] the only historical support that it musters are three statutes from Georgia, Tennessee, and South Carolina banning the sale, manufacture, and transfer of firearms within their borders. See [] Georgia Act of Dec. 25, 1837, ch. 367, § I; [] Tennessee Act of Mar. 17, 1879, ch. 96, § 1 [], South Carolina Act of Feb. 20, 1901, ch. 435, § 1. But these isolated statutes were enacted 50 to 110 years after 1791, which is 'the critical year for determining the amendment's historical meaning.' *Moore*, 702 F.3d at 935. These statutes are thus not very compelling historical evidence for how the Second Amendment was historically understood. And citation to a few isolated statutes – even to those from the appropriate time period – 'fall[ ] far short' of establishing that gun sales and transfers were historically unprotected by the Second Amendment. *Ezell*, 651 F.3d at 706. **The City's proffered historical evidence fails to establish that governments banned gun sales and transfers at the time of the Second Amendment's enactment**, so the Court must move on to the second step of the inquiry.

*Id.*, 961 F. Supp. 2d at 937 (emphasis added). Accordingly, the Court entered an injunction against enforcement of the prohibition on commercial sales.

PARTIAL ANSWER TO COMPLAINT

-9-

158882256.3

**ANSWER:** Paragraph 22 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Naperville admits that it correctly quotes the cited caselaw. Naperville denies any remaining allegations in Paragraph 22.

23. It does no good for the City to argue that its residents could acquire the Banned Firearms in other cities. This Court rejected this argument in *Illinois Ass'n of Firearms Retailers*. It stated:

> The City argues in response that these ordinances do not ban acquisition, but merely regulate where acquisition may occur. [] It is true that some living on the outskirts of the City might very well currently live closer to gun stores now than they would absent these ordinances. But *Ezell* makes clear that this type of argument 'assumes that the harm to a constitutional right is measured by the extent to which it can be exercised in another jurisdiction. That's a profoundly mistaken assumption.' 651 F.3d at 697. It was no answer there that plenty of gun ranges were located in the neighboring suburbs, or even right on the border of Chicago and the suburbs. Instead, the Seventh Circuit drew on First Amendment jurisprudence to reason that Second Amendment rights must be guaranteed within a specified geographic unit – be it a city or a State. *See id.* ('In the First Amendment context, the Supreme Court long ago made it clear that 'one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.'' (quoting *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 76–77, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981)).

*Id.*, 961 F. Supp. 2d 928, 938–39.

**ANSWER:** Paragraph 23 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Naperville admits that it correctly quotes the cited caselaw. Naperville denies any remaining allegations in Paragraph 23.

24. This Court's holding in *Illinois Ass'n of Firearms Retailers* consistent with the Supreme Court's analysis in *Bruen*. In *Bruen* the Court cited with approval the case of *Drummond v. Robinson*, 9 F.4th 217, 226 (3rd Cir. 2021). *Id.* 142 S. Ct. at 2133. In *Drummond* the Third Circuit held that a city's ordinance prohibiting the operation of a commercial gun club was an "outlier" thus not supported by the nation's history or tradition of firearms regulation. 9 F.4th at 232.

**ANSWER:** Paragraph 24 of the Complaint consists of legal conclusions to which no response is required. To the extent a response is required, Naperville denies the remaining allegations in Paragraph 24.

25. Millions of law-abiding citizens own and use for lawful purposes semi-automatic firearms such as the Banned Firearms Plaintiffs wish to acquire. The Ordinance's prohibition on the sale of the Banned Firearms is an historical outlier. Therefore, by definition, the Ordinance is not consistent with the nation's history and tradition of firearm regulation. Accordingly, the Ordinance violates the Second Amendment.

**ANSWER:** Naperville has moved to dismiss NAGR's claims for lack of standing. An answer to the allegations in Paragraph 25 is therefore neither appropriate nor required at this time with respect to NAGR. As to the remaining Plaintiffs, Naperville denies that assault rifles can be owned and operated for a lawful purpose. Naperville lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25 of the Complaint and, therefore, denies them.

26. There is an actual and present controversy between the parties. The Ordinance infringes on Plaintiffs' right to keep and bear arms under the Second Amendment. Defendant denies these contentions. Plaintiffs desire a judicial declaration that the Ordinance, facially and/or as applied to them, violates their constitutional rights. Plaintiffs should not be forced to choose between risking criminal prosecution and exercising their constitutional rights. The risk of criminal prosecution on account of exercising a constitutionally protected right unlawfully chills the exercise of that right and thus violates the Constitution even if the criminal defendant ultimately prevails.

**ANSWER:** Naperville has moved to dismiss NAGR's claims for lack of standing. An answer to the allegations in Paragraph 26 is therefore neither appropriate nor required at this time with respect to NAGR. As to the remaining Plaintiffs, Naperville admits that there is an actual and present controversy between itself and Plaintiffs. Naperville denies that the Ordinance prohibits constitutional activity. Naperville denies the remaining allegations in Paragraph 26.

27. Plaintiffs are or will be injured by Defendant's enforcement of the Ordinance insofar as those provisions violate Plaintiffs' rights under the Second Amendment. If not enjoined by this Court, Defendant will enforce the Ordinance in derogation of Plaintiffs' constitutional rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to Defendant's present or contemplated enforcement of these provisions.

**ANSWER:** Naperville has moved to dismiss NAGR's claims for lack of standing. An answer to the allegations in Paragraph 27 is therefore neither appropriate nor required at this time with respect to NAGR. As to the remaining Plaintiffs, Naperville denies that the Ordinance violates Plaintiffs' constitutional rights. Naperville denies the remaining allegations in Paragraph 27.

### V. FIRST CLAIM FOR RELIEF
### Right to Keep and Bear Arms
### U.S. Const., amends. II and XIV

28. Paragraphs 1-29 are realleged and incorporated by reference.

**ANSWER:** Paragraph 28 does not state factual allegations which are subject to admission or denial. To the extent Paragraph 28 can be interpreted to contain factual allegations,

Naperville denies such allegations and incorporates the previous responses to the paragraphs cited therein.

29. The Ordinance burdens Plaintiff's Second Amendment rights by prohibiting their acquisition of the Banned Firearms at commercial firearms stores in the City. The City's regulation is not consistent with the nation's history and tradition of firearm regulation. There are significant penalties for violations of the Ordinance.

**ANSWER:** Naperville has moved to dismiss NAGR's claims for lack of standing. An answer to the allegations in Paragraph 29 is therefore neither appropriate nor required at this time with respect to NAGR. As to the remaining Plaintiffs, Naperville admits that violating the Ordinance results in penalties but denies that the penalties are significant. Naperville denies the remaining allegations in Paragraph 29.

30. These restrictions infringe on the right of the people of the City, including Plaintiffs, to keep and bear arms as guaranteed by the Second Amendment and made applicable to the states and its political subdivisions by the Fourteenth Amendment.

**ANSWER:** Naperville has moved to dismiss NAGR's claims for lack of standing. An answer to the allegations in Paragraph 30 is therefore neither appropriate nor required at this time with respect to NAGR. As to the remaining Plaintiffs, Naperville admits that the Second Amendment is applicable to the states and its political subdivisions through the Fourteenth Amendment. Naperville denies the remaining allegations in Paragraph 30.

31. The Ordinance's prohibitions extend into Plaintiff Bevis' and his store's customers' homes, where Second Amendment protections are at their zenith, as it burdens their right to acquire arms for the defense of their homes.

**ANSWER:** Naperville denies the allegations in Paragraph 31.

32. Defendant cannot satisfy its burden of justifying these restrictions on the Second Amendment right of the People.

**ANSWER:** Naperville denies the allegations in Paragraph 32.

### VI. PRAYER FOR RELIEF

The remainder of the Complaint contains Plaintiffs' prayer for relief, to which no response is required. If a response is deemed necessary, Naperville denies the allegations contained in Plaintiffs' prayer for relief.

### AFFIRMATIVE DEFENSES

Based on the knowledge and information available to date, Naperville asserts the following defenses and reserves the right to assert other defenses or claims when and if they become appropriate and/or available in this action. Naperville does not admit that it has the burden of proof on any of the defenses alleged herein. Naperville designates all denials to the Complaint set forth above as defenses if necessary for its full defense of this matter.

1. The Ordinance does not violate the Second Amendment.

2. The Complaint, and each and every cause of action therein, fails to state facts sufficient to constitute a cause of action against Naperville, or to give Naperville sufficient facts from which to respond.

3. Certain Plaintiffs lack standing under Article III of the United States Constitution, so this Court is without jurisdiction to adjudicate Plaintiffs' claims.

4. To the extent Naperville has undertaken any conduct with respect to the subjects and events underlying the Complaint, such conduct was at all times undertaken in good faith and in reasonable reliance on existing law.

5. Plaintiffs' request for injunctive relief is inappropriate as Plaintiffs have an adequate remedy at law and are unlikely to succeed on the merits.

6. Plaintiffs are not entitled to any damages, costs, fees, or other relief of any kind.

**WHEREFORE**, Defendant City of Naperville, Illinois prays relief as follows:

1. That judgment be entered in its favor, and that the action be dismissed with prejudice;

2. That no injunctive, declaratory, or other relief be entered in Plaintiffs' favor;

3. For costs of suit, including reasonable attorneys' fees; and

4. For such other relief as the Court deems just and appropriate.

Date: November 28, 2022

*s/ Christopher B. Wilson*
Christopher B. Wilson (No. 06202139)
Micaela Snashall (No. 6339703)
PERKINS COIE LLP
110 North Wacker Drive, Suite 3400
Chicago, Illinois 60606-1511
Phone: +1.312.324.8400
Fax: +1.312.324.9400
CWilson@perkinscoie.com
MSnashall@perkinscoie.com

*Attorneys for Defendant CITY OF NAPERVILLE, ILLINOIS, a municipal corporation*

# **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that in accordance with Federal Rule of Civil Procedure 5 and Local Rule 5.5, the following document was served on November 28, 2022 through the district court's ECF system to the following counsel of record:

Jason Craddock
Attorney at Law
2021 Midwest Rd., Ste 200
Oak Brook, IL 60523
craddocklaw@icloud.com

Barry K. Arrington
Arrington Law Firm
3801 East Florida Avenue, Suite 830
Denver, Colorado 80210
barry@arringtonpc.com

                                    *s/ Micaela M. Snashall*
                                    Micaela Snashall
                                    PERKINS COIE LLP
                                    110 North Wacker Drive, Suite 3400
                                    Chicago, Illinois 60606-1511
                                    Phone: +1.312.324.8423
                                    MSnashall@perkinscoie.com

                                    Attorneys for Defendant CITY OF NAPERVILLE, ILLINOIS, a municipal corporation

PARTIAL ANSWER TO COMPLAINT

158882256.3