# Exhibit C

HB5471 Enrolled                    LRB102 24372 BMS 33606 b

1      AN ACT concerning regulation.

2      **Be it enacted by the People of the State of Illinois,**
3      **represented in the General Assembly:**

4      Section 1. This Act may be referred to as the Protect
5      Illinois Communities Act.

6      Section 3. The Illinois Administrative Procedure Act is
7      amended by adding Section 5-45.35 as follows:

8      (5 ILCS 100/5-45.35 new)
9      Sec. 5-45.35. Emergency rulemaking. To provide for the
10     expeditious and timely implementation of this amendatory Act
11     of the 102nd General Assembly, emergency rules implementing
12     this amendatory Act of the 102nd General Assembly may be
13     adopted in accordance with Section 5-45 by the Illinois State
14     Police. The adoption of emergency rules authorized by Section
15     5-45 and this Section is deemed to be necessary for the public
16     interest, safety, and welfare.
17     This Section is repealed one year after the effective date
18     of this amendatory Act of the 102nd General Assembly.

19     Section 4. The Freedom of Information Act is amended by
20     changing Section 7.5 as follows:

HB5471 Enrolled          - 2 -        LRB102 24372 BMS 33606 b

1      (5 ILCS 140/7.5)
2      Sec. 7.5. Statutory exemptions. To the extent provided for
3      by the statutes referenced below, the following shall be
4      exempt from inspection and copying:
5          (a) All information determined to be confidential
6          under Section 4002 of the Technology Advancement and
7          Development Act.
8          (b) Library circulation and order records identifying

9   library users with specific materials under the Library

10  Records Confidentiality Act.

11      (c) Applications, related documents, and medical

12  records received by the Experimental Organ Transplantation

13  Procedures Board and any and all documents or other

14  records prepared by the Experimental Organ Transplantation

15  Procedures Board or its staff relating to applications it

16  has received.

17      (d) Information and records held by the Department of

18  Public Health and its authorized representatives relating

19  to known or suspected cases of sexually transmissible

20  disease or any information the disclosure of which is

21  restricted under the Illinois Sexually Transmissible

22  Disease Control Act.

23      (e) Information the disclosure of which is exempted

24  under Section 30 of the Radon Industry Licensing Act.

25      (f) Firm performance evaluations under Section 55 of

26  the Architectural, Engineering, and Land Surveying


HB5471 Enrolled          - 3 -          LRB102 24372 BMS 33606 b


1   Qualifications Based Selection Act.

2       (g) Information the disclosure of which is restricted

3   and exempted under Section 50 of the Illinois Prepaid

4   Tuition Act.

5       (h) Information the disclosure of which is exempted

6   under the State Officials and Employees Ethics Act, and

7   records of any lawfully created State or local inspector

8   general's office that would be exempt if created or

9   obtained by an Executive Inspector General's office under

10  that Act.

11      (i) Information contained in a local emergency energy

12  plan submitted to a municipality in accordance with a

13  local emergency energy plan ordinance that is adopted

14  under Section 11-21.5-5 of the Illinois Municipal Code.

15      (j) Information and data concerning the distribution

16  of surcharge moneys collected and remitted by carriers

17  under the Emergency Telephone System Act.

18      (k) Law enforcement officer identification information

19  or driver identification information compiled by a law

20      enforcement agency or the Department of Transportation

21      under Section 11-212 of the Illinois Vehicle Code.

22          (l) Records and information provided to a residential

23      health care facility resident sexual assault and death

24      review team or the Executive Council under the Abuse

25      Prevention Review Team Act.

26          (m) Information provided to the predatory lending

HB5471 Enrolled          - 4 -          LRB102 24372 BMS 33606 b

1       database created pursuant to Article 3 of the Residential

2       Real Property Disclosure Act, except to the extent

3       authorized under that Article.

4           (n) Defense budgets and petitions for certification of

5       compensation and expenses for court appointed trial

6       counsel as provided under Sections 10 and 15 of the

7       Capital Crimes Litigation Act. This subsection (n) shall

8       apply until the conclusion of the trial of the case, even

9       if the prosecution chooses not to pursue the death penalty

10      prior to trial or sentencing.

11          (o) Information that is prohibited from being

12      disclosed under Section 4 of the Illinois Health and

13      Hazardous Substances Registry Act.

14          (p) Security portions of system safety program plans,

15      investigation reports, surveys, schedules, lists, data, or

16      information compiled, collected, or prepared by or for the

17      Department of Transportation under Sections 2705-300 and

18      2705-616 of the Department of Transportation Law of the

19      Civil Administrative Code of Illinois, the Regional

20      Transportation Authority under Section 2.11 of the

21      Regional Transportation Authority Act, or the St. Clair

22      County Transit District under the Bi-State Transit Safety

23      Act.

24          (q) Information prohibited from being disclosed by the

25      Personnel Record Review Act.

26          (r) Information prohibited from being disclosed by the

HB5471 Enrolled          - 5 -          LRB102 24372 BMS 33606 b

Illinois School Student Records Act.

(s) Information the disclosure of which is restricted under Section 5-108 of the Public Utilities Act.

(t) All identified or deidentified health information in the form of health data or medical records contained in, stored in, submitted to, transferred by, or released from the Illinois Health Information Exchange, and identified or deidentified health information in the form of health data and medical records of the Illinois Health Information Exchange in the possession of the Illinois Health Information Exchange Office due to its administration of the Illinois Health Information Exchange. The terms "identified" and "deidentified" shall be given the same meaning as in the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191, or any subsequent amendments thereto, and any regulations promulgated thereunder.

(u) Records and information provided to an independent team of experts under the Developmental Disability and Mental Health Safety Act (also known as Brian's Law).

(v) Names and information of people who have applied for or received Firearm Owner's Identification Cards under the Firearm Owners Identification Card Act or applied for or received a concealed carry license under the Firearm Concealed Carry Act, unless otherwise authorized by the Firearm Concealed Carry Act; and databases under the

HB5471 Enrolled           - 6 -        LRB102 24372 BMS 33606 b

Firearm Concealed Carry Act, records of the Concealed Carry Licensing Review Board under the Firearm Concealed Carry Act, and law enforcement agency objections under the Firearm Concealed Carry Act.

(v-5) Records of the Firearm Owner's Identification Card Review Board that are exempted from disclosure under Section 10 of the Firearm Owners Identification Card Act.

(w) Personally identifiable information which is exempted from disclosure under subsection (g) of Section

10    19.1 of the Toll Highway Act.

11        (x) Information which is exempted from disclosure

12    under Section 5-1014.3 of the Counties Code or Section

13    8-11-21 of the Illinois Municipal Code.

14        (y) Confidential information under the Adult

15    Protective Services Act and its predecessor enabling

16    statute, the Elder Abuse and Neglect Act, including

17    information about the identity and administrative finding

18    against any caregiver of a verified and substantiated

19    decision of abuse, neglect, or financial exploitation of

20    an eligible adult maintained in the Registry established

21    under Section 7.5 of the Adult Protective Services Act.

22        (z) Records and information provided to a fatality

23    review team or the Illinois Fatality Review Team Advisory

24    Council under Section 15 of the Adult Protective Services

25    Act.

26        (aa) Information which is exempted from disclosure

HB5471 Enrolled           - 7 -          LRB102 24372 BMS 33606 b

1     under Section 2.37 of the Wildlife Code.

2         (bb) Information which is or was prohibited from

3     disclosure by the Juvenile Court Act of 1987.

4         (cc) Recordings made under the Law Enforcement

5     Officer-Worn Body Camera Act, except to the extent

6     authorized under that Act.

7         (dd) Information that is prohibited from being

8     disclosed under Section 45 of the Condominium and Common

9     Interest Community Ombudsperson Act.

10        (ee) Information that is exempted from disclosure

11    under Section 30.1 of the Pharmacy Practice Act.

12        (ff) Information that is exempted from disclosure

13    under the Revised Uniform Unclaimed Property Act.

14        (gg) Information that is prohibited from being

15    disclosed under Section 7-603.5 of the Illinois Vehicle

16    Code.

17        (hh) Records that are exempt from disclosure under

18    Section 1A-16.7 of the Election Code.

19        (ii) Information which is exempted from disclosure

20    under Section 2505-800 of the Department of Revenue Law of

21    the Civil Administrative Code of Illinois.
22        (jj) Information and reports that are required to be
23    submitted to the Department of Labor by registering day
24    and temporary labor service agencies but are exempt from
25    disclosure under subsection (a-1) of Section 45 of the Day
26    and Temporary Labor Services Act.


HB5471 Enrolled          - 8 -          LRB102 24372 BMS 33606 b


1         (kk) Information prohibited from disclosure under the
2    Seizure and Forfeiture Reporting Act.
3         (ll) Information the disclosure of which is restricted
4    and exempted under Section 5-30.8 of the Illinois Public
5    Aid Code.
6         (mm) Records that are exempt from disclosure under
7    Section 4.2 of the Crime Victims Compensation Act.
8         (nn) Information that is exempt from disclosure under
9    Section 70 of the Higher Education Student Assistance Act.
10        (oo) Communications, notes, records, and reports
11    arising out of a peer support counseling session
12    prohibited from disclosure under the First Responders
13    Suicide Prevention Act.
14        (pp) Names and all identifying information relating to
15    an employee of an emergency services provider or law
16    enforcement agency under the First Responders Suicide
17    Prevention Act.
18        (qq) Information and records held by the Department of
19    Public Health and its authorized representatives collected
20    under the Reproductive Health Act.
21        (rr) Information that is exempt from disclosure under
22    the Cannabis Regulation and Tax Act.
23        (ss) Data reported by an employer to the Department of
24    Human Rights pursuant to Section 2-108 of the Illinois
25    Human Rights Act.
26        (tt) Recordings made under the Children's Advocacy


HB5471 Enrolled          - 9 -          LRB102 24372 BMS 33606 b


1         Center Act, except to the extent authorized under that

2  Act.

3      (uu) Information that is exempt from disclosure under

4  Section 50 of the Sexual Assault Evidence Submission Act.

5      (vv) Information that is exempt from disclosure under

6  subsections (f) and (j) of Section 5-36 of the Illinois

7  Public Aid Code.

8      (ww) Information that is exempt from disclosure under

9  Section 16.8 of the State Treasurer Act.

10      (xx) Information that is exempt from disclosure or

11  information that shall not be made public under the

12  Illinois Insurance Code.

13      (yy) Information prohibited from being disclosed under

14  the Illinois Educational Labor Relations Act.

15      (zz) Information prohibited from being disclosed under

16  the Illinois Public Labor Relations Act.

17      (aaa) Information prohibited from being disclosed

18  under Section 1-167 of the Illinois Pension Code.

19      (bbb) Information that is prohibited from disclosure

20  by the Illinois Police Training Act and the Illinois State

21  Police Act.

22      (ccc) Records exempt from disclosure under Section

23  2605-304 of the Illinois State Police Law of the Civil

24  Administrative Code of Illinois.

25      (ddd) Information prohibited from being disclosed

26  under Section 35 of the Address Confidentiality for

HB5471 Enrolled          - 10 -        LRB102 24372 BMS 33606 b

1  Victims of Domestic Violence, Sexual Assault, Human

2  Trafficking, or Stalking Act.

3      (eee) Information prohibited from being disclosed

4  under subsection (b) of Section 75 of the Domestic

5  Violence Fatality Review Act.

6      (fff) Images from cameras under the Expressway Camera

7  Act. This subsection (fff) is inoperative on and after

8  July 1, 2023.

9      (ggg) (fff) Information prohibited from disclosure

10  under paragraph (3) of subsection (a) of Section 14 of the

11  Nurse Agency Licensing Act.

12      (hhh) Information submitted to the Department of State

13    Police in an affidavit or application for an assault
14    weapon endorsement, assault weapon attachment endorsement,
15    .50 caliber rifle endorsement, or .50 caliber cartridge
16    endorsement under the Firearm Owners Identification Card
17    Act.
18    (Source: P.A. 101-13, eff. 6-12-19; 101-27, eff. 6-25-19;
19    101-81, eff. 7-12-19; 101-221, eff. 1-1-20; 101-236, eff.
20    1-1-20; 101-375, eff. 8-16-19; 101-377, eff. 8-16-19; 101-452,
21    eff. 1-1-20; 101-466, eff. 1-1-20; 101-600, eff. 12-6-19;
22    101-620, eff 12-20-19; 101-649, eff. 7-7-20; 101-652, eff.
23    1-1-22; 101-656, eff. 3-23-21; 102-36, eff. 6-25-21; 102-237,
24    eff. 1-1-22; 102-292, eff. 1-1-22; 102-520, eff. 8-20-21;
25    102-559, eff. 8-20-21; 102-813, eff. 5-13-22; 102-946, eff.
26    7-1-22; 102-1042, eff. 6-3-22; revised 8-1-22.)

HB5471 Enrolled          - 11 -          LRB102 24372 BMS 33606 b

1      Section 5. The Illinois State Police Law of the Civil
2    Administrative Code of Illinois is amended by changing
3    Sections 2605-35 and 2605-51.1 as follows:

4      (20 ILCS 2605/2605-35)  (was 20 ILCS 2605/55a-3)
5      Sec. 2605-35. Division of Criminal Investigation.
6      (a) The Division of Criminal Investigation shall exercise
7    the following functions and those in Section 2605-30:
8          (1) Exercise the rights, powers, and duties vested by
9        law in the Illinois State Police by the Illinois Horse
10       Racing Act of 1975, including those set forth in Section
11       2605-215.
12          (2) Investigate the origins, activities, personnel,
13       and incidents of crime and enforce the criminal laws of
14       this State related thereto.
15          (3) Enforce all laws regulating the production, sale,
16       prescribing, manufacturing, administering, transporting,
17       having in possession, dispensing, delivering,
18       distributing, or use of controlled substances and
19       cannabis.
20          (4) Cooperate with the police of cities, villages, and
21       incorporated towns and with the police officers of any
22       county in enforcing the laws of the State and in making

23    arrests and recovering property.

24         (5) Apprehend and deliver up any person charged in

HB5471 Enrolled          - 12 -          LRB102 24372 BMS 33606 b

1    this State or any other state with treason or a felony or

2    other crime who has fled from justice and is found in this

3    State.

4         (6) Investigate recipients and providers under the

5    Illinois Public Aid Code and any personnel involved in the

6    administration of the Code who are suspected of any

7    violation of the Code pertaining to fraud in the

8    administration, receipt, or provision of assistance and

9    pertaining to any violation of criminal law; and exercise

10   the functions required under Section 2605-220 in the

11   conduct of those investigations.

12        (7) Conduct other investigations as provided by law,

13   including, but not limited to, investigations of human

14   trafficking, illegal drug trafficking, and illegal

15   firearms trafficking.

16        (8) Investigate public corruption.

17        (9) Exercise other duties that may be assigned by the

18   Director in order to fulfill the responsibilities and

19   achieve the purposes of the Illinois State Police, which

20   may include the coordination of gang, terrorist, and

21   organized crime prevention, control activities, and

22   assisting local law enforcement in their crime control

23   activities.

24        (10) Conduct investigations (and cooperate with

25   federal law enforcement agencies in the investigation) of

26   any property-related crimes, such as money laundering,

HB5471 Enrolled          - 13 -          LRB102 24372 BMS 33606 b

1    involving individuals or entities listed on the sanctions

2    list maintained by the U.S. Department of Treasury's

3    Office of Foreign Asset Control.

4    (b) (Blank).

5     (c) The Division of Criminal Investigation shall provide

6 statewide coordination and strategy pertaining to

7 firearm-related intelligence, firearms trafficking

8 interdiction, and investigations reaching across all divisions

9 of the Illinois State Police, including providing crime gun

10 intelligence support for suspects and firearms involved in

11 firearms trafficking or the commission of a crime involving

12 firearms that is investigated by the Illinois State Police and

13 other federal, State, and local law enforcement agencies, with

14 the objective of reducing and preventing illegal possession

15 and use of firearms, firearms trafficking, firearm-related

16 homicides, and other firearm-related violent crimes in

17 Illinois.

18 (Source: P.A. 102-538, eff. 8-20-21; 102-813, eff. 5-13-22;

19 102-1108, eff. 12-21-22.)


20     (20 ILCS 2605/2605-51.1)

21     (Section scheduled to be repealed on June 1, 2026)

22     Sec. 2605-51.1. Commission on Implementing the Firearms

23 Restraining Order Act.

24     (a) There is created the Commission on Implementing the

25 Firearms Restraining Order Act composed of at least 12 members


HB5471 Enrolled     - 14 -     LRB102 24372 BMS 33606 b


1 to advise on the strategies of education and implementation of

2 the Firearms Restraining Order Act. The Commission shall be

3 appointed by the Director of the Illinois State Police or his

4 or her designee and shall include a liaison or representative

5 nominated from the following:

6     (1) the Office of the Attorney General, appointed by

7     the Attorney General;

8     (2) the Director of the Illinois State Police or his

9     or her designee;

10     (3) at least 3 State's Attorneys, nominated by the

11     Director of the Office of the State's Attorneys Appellate

12     Prosecutor;

13     (4) at least 2 municipal police department

14     representatives, nominated by the Illinois Association of

15     Chiefs of Police;

16     (5) an Illinois sheriff, nominated by the Illinois

17  Sheriffs' Association;
18     (6) the Director of Public Health or his or her
19  designee;
20     (7) the Illinois Law Enforcement Training Standards
21  Board, nominated by the Executive Director of the Board;
22     (8) a representative from a public defender's office,
23  nominated by the State Appellate Defender;
24     (9) a circuit court judge, nominated by the Chief
25  Justice of the Supreme Court;
26     (10) a prosecutor with experience managing or

HB5471 Enrolled          - 15 -          LRB102 24372 BMS 33606 b

1   directing a program in another state where the
2   implementation of that state's extreme risk protection
3   order law has achieved high rates of petition filings
4   nominated by the National District Attorneys Association;
5   ~~and~~
6      (11) an expert from law enforcement who has experience
7   managing or directing a program in another state where the
8   implementation of that state's extreme risk protection
9   order law has achieved high rates of petition filings
10  nominated by the Director of the Illinois State Police;
11  and
12     (12) a circuit court clerk, nominated by the President
13  of the Illinois Association of Court Clerks.
14  (b) The Commission shall be chaired by the Director of the
15  Illinois State Police or his or her designee. The Commission
16  shall meet, either virtually or in person, to discuss the
17  implementation of the Firearms Restraining Order Act as
18  determined by the Commission while the strategies are being
19  established.
20  (c) The members of the Commission shall serve without
21  compensation and shall serve 3-year terms.
22  (d) An annual report shall be submitted to the General
23  Assembly by the Commission that may include summary
24  information about firearms restraining order use by county,
25  challenges to Firearms Restraining Order Act implementation,
26  and recommendations for increasing and improving

1   implementation.

2       (e) The Commission shall develop a model policy with an

3   overall framework for the timely relinquishment of firearms

4   whenever a firearms restraining order is issued. The model

5   policy shall be finalized within the first 4 months of

6   convening. In formulating the model policy, the Commission

7   shall consult counties in Illinois and other states with

8   extreme risk protection order laws which have achieved a high

9   rate of petition filings. Once approved, the Illinois State

10  Police shall work with their local law enforcement agencies

11  within their county to design a comprehensive strategy for the

12  timely relinquishment of firearms, using the model policy as

13  an overall framework. Each individual agency may make small

14  modifications as needed to the model policy and must approve

15  and adopt a policy that aligns with the model policy. The

16  Illinois State Police shall convene local police chiefs and

17  sheriffs within their county as needed to discuss the

18  relinquishment of firearms.

19      (f) The Commission shall be dissolved June 1, 2025 (3

20  years after the effective date of Public Act 102-345).

21      (g) This Section is repealed June 1, 2026 (4 years after

22  the effective date of Public Act 102-345).

23  (Source: P.A. 102-345, eff. 6-1-22; 102-813, eff. 5-13-22.)

24      Section 7. The Illinois Procurement Code is amended by

25  changing Section 1-10 as follows:

1       (30 ILCS 500/1-10)

2       Sec. 1-10. Application.

3       (a) This Code applies only to procurements for which

4   bidders, offerors, potential contractors, or contractors were

5   first solicited on or after July 1, 1998. This Code shall not

6   be construed to affect or impair any contract, or any

7   provision of a contract, entered into based on a solicitation

8   prior to the implementation date of this Code as described in

```
 9    Article 99, including, but not limited to, any covenant
10    entered into with respect to any revenue bonds or similar
11    instruments. All procurements for which contracts are
12    solicited between the effective date of Articles 50 and 99 and
13    July 1, 1998 shall be substantially in accordance with this
14    Code and its intent.
15        (b) This Code shall apply regardless of the source of the
16    funds with which the contracts are paid, including federal
17    assistance moneys. This Code shall not apply to:
18            (1) Contracts between the State and its political
19        subdivisions or other governments, or between State
20        governmental bodies, except as specifically provided in
21        this Code.
22            (2) Grants, except for the filing requirements of
23        Section 20-80.
24            (3) Purchase of care, except as provided in Section
25        5-30.6 of the Illinois Public Aid Code and this Section.
```

```
      HB5471 Enrolled          - 18 -         LRB102 24372 BMS 33606 b
```

```
 1            (4) Hiring of an individual as an employee and not as
 2        an independent contractor, whether pursuant to an
 3        employment code or policy or by contract directly with
 4        that individual.
 5            (5) Collective bargaining contracts.
 6            (6) Purchase of real estate, except that notice of
 7        this type of contract with a value of more than $25,000
 8        must be published in the Procurement Bulletin within 10
 9        calendar days after the deed is recorded in the county of
10        jurisdiction. The notice shall identify the real estate
11        purchased, the names of all parties to the contract, the
12        value of the contract, and the effective date of the
13        contract.
14            (7) Contracts necessary to prepare for anticipated
15        litigation, enforcement actions, or investigations,
16        provided that the chief legal counsel to the Governor
17        shall give his or her prior approval when the procuring
18        agency is one subject to the jurisdiction of the Governor,
19        and provided that the chief legal counsel of any other
20        procuring entity subject to this Code shall give his or
```

21  her prior approval when the procuring entity is not one
22  subject to the jurisdiction of the Governor.
23      (8) (Blank).
24      (9) Procurement expenditures by the Illinois
25  Conservation Foundation when only private funds are used.
26      (10) (Blank).

HB5471 Enrolled          - 19 -        LRB102 24372 BMS 33606 b

1       (11) Public-private agreements entered into according
2   to the procurement requirements of Section 20 of the
3   Public-Private Partnerships for Transportation Act and
4   design-build agreements entered into according to the
5   procurement requirements of Section 25 of the
6   Public-Private Partnerships for Transportation Act.
7       (12) (A) Contracts for legal, financial, and other
8   professional and artistic services entered into by the
9   Illinois Finance Authority in which the State of Illinois
10  is not obligated. Such contracts shall be awarded through
11  a competitive process authorized by the members of the
12  Illinois Finance Authority and are subject to Sections
13  5-30, 20-160, 50-13, 50-20, 50-35, and 50-37 of this Code,
14  as well as the final approval by the members of the
15  Illinois Finance Authority of the terms of the contract.
16      (B) Contracts for legal and financial services entered
17  into by the Illinois Housing Development Authority in
18  connection with the issuance of bonds in which the State
19  of Illinois is not obligated. Such contracts shall be
20  awarded through a competitive process authorized by the
21  members of the Illinois Housing Development Authority and
22  are subject to Sections 5-30, 20-160, 50-13, 50-20, 50-35,
23  and 50-37 of this Code, as well as the final approval by
24  the members of the Illinois Housing Development Authority
25  of the terms of the contract.
26      (13) Contracts for services, commodities, and

HB5471 Enrolled          - 20 -        LRB102 24372 BMS 33606 b

1    equipment to support the delivery of timely forensic
2    science services in consultation with and subject to the
3    approval of the Chief Procurement Officer as provided in
4    subsection (d) of Section 5-4-3a of the Unified Code of
5    Corrections, except for the requirements of Sections
6    20-60, 20-65, 20-70, and 20-160 and Article 50 of this
7    Code; however, the Chief Procurement Officer may, in
8    writing with justification, waive any certification
9    required under Article 50 of this Code. For any contracts
10   for services which are currently provided by members of a
11   collective bargaining agreement, the applicable terms of
12   the collective bargaining agreement concerning
13   subcontracting shall be followed.
14       On and after January 1, 2019, this paragraph (13),
15   except for this sentence, is inoperative.
16       (14) Contracts for participation expenditures required
17   by a domestic or international trade show or exhibition of
18   an exhibitor, member, or sponsor.
19       (15) Contracts with a railroad or utility that
20   requires the State to reimburse the railroad or utilities
21   for the relocation of utilities for construction or other
22   public purpose. Contracts included within this paragraph
23   (15) shall include, but not be limited to, those
24   associated with: relocations, crossings, installations,
25   and maintenance. For the purposes of this paragraph (15),
26   "railroad" means any form of non-highway ground

HB5471 Enrolled          - 21 -          LRB102 24372 BMS 33606 b

1    transportation that runs on rails or electromagnetic
2    guideways and "utility" means: (1) public utilities as
3    defined in Section 3-105 of the Public Utilities Act, (2)
4    telecommunications carriers as defined in Section 13-202
5    of the Public Utilities Act, (3) electric cooperatives as
6    defined in Section 3.4 of the Electric Supplier Act, (4)
7    telephone or telecommunications cooperatives as defined in
8    Section 13-212 of the Public Utilities Act, (5) rural
9    water or waste water systems with 10,000 connections or
10   less, (6) a holder as defined in Section 21-201 of the

11    Public Utilities Act, and (7) municipalities owning or
12    operating utility systems consisting of public utilities
13    as that term is defined in Section 11-117-2 of the
14    Illinois Municipal Code.
15        (16) Procurement expenditures necessary for the
16    Department of Public Health to provide the delivery of
17    timely newborn screening services in accordance with the
18    Newborn Metabolic Screening Act.
19        (17) Procurement expenditures necessary for the
20    Department of Agriculture, the Department of Financial and
21    Professional Regulation, the Department of Human Services,
22    and the Department of Public Health to implement the
23    Compassionate Use of Medical Cannabis Program and Opioid
24    Alternative Pilot Program requirements and ensure access
25    to medical cannabis for patients with debilitating medical
26    conditions in accordance with the Compassionate Use of

HB5471 Enrolled          - 22 -          LRB102 24372 BMS 33606 b

1     Medical Cannabis Program Act.
2         (18) This Code does not apply to any procurements
3     necessary for the Department of Agriculture, the
4     Department of Financial and Professional Regulation, the
5     Department of Human Services, the Department of Commerce
6     and Economic Opportunity, and the Department of Public
7     Health to implement the Cannabis Regulation and Tax Act if
8     the applicable agency has made a good faith determination
9     that it is necessary and appropriate for the expenditure
10    to fall within this exemption and if the process is
11    conducted in a manner substantially in accordance with the
12    requirements of Sections 20-160, 25-60, 30-22, 50-5,
13    50-10, 50-10.5, 50-12, 50-13, 50-15, 50-20, 50-21, 50-35,
14    50-36, 50-37, 50-38, and 50-50 of this Code; however, for
15    Section 50-35, compliance applies only to contracts or
16    subcontracts over $100,000. Notice of each contract
17    entered into under this paragraph (18) that is related to
18    the procurement of goods and services identified in
19    paragraph (1) through (9) of this subsection shall be
20    published in the Procurement Bulletin within 14 calendar

21     days after contract execution. The Chief Procurement

22     Officer shall prescribe the form and content of the

23     notice. Each agency shall provide the Chief Procurement

24     Officer, on a monthly basis, in the form and content

25     prescribed by the Chief Procurement Officer, a report of

26     contracts that are related to the procurement of goods and

HB5471 Enrolled      - 23 -      LRB102 24372 BMS 33606 b

1     services identified in this subsection. At a minimum, this

2     report shall include the name of the contractor, a

3     description of the supply or service provided, the total

4     amount of the contract, the term of the contract, and the

5     exception to this Code utilized. A copy of any or all of

6     these contracts shall be made available to the Chief

7     Procurement Officer immediately upon request. The Chief

8     Procurement Officer shall submit a report to the Governor

9     and General Assembly no later than November 1 of each year

10     that includes, at a minimum, an annual summary of the

11     monthly information reported to the Chief Procurement

12     Officer. This exemption becomes inoperative 5 years after

13     June 25, 2019 (the effective date of Public Act 101-27).

14     (19) Acquisition of modifications or adjustments,

15     limited to assistive technology devices and assistive

16     technology services, adaptive equipment, repairs, and

17     replacement parts to provide reasonable accommodations (i)

18     that enable a qualified applicant with a disability to

19     complete the job application process and be considered for

20     the position such qualified applicant desires, (ii) that

21     modify or adjust the work environment to enable a

22     qualified current employee with a disability to perform

23     the essential functions of the position held by that

24     employee, (iii) to enable a qualified current employee

25     with a disability to enjoy equal benefits and privileges

26     of employment as are enjoyed by other similarly situated

HB5471 Enrolled      - 24 -      LRB102 24372 BMS 33606 b

1 employees without disabilities, and (iv) that allow a

2 customer, client, claimant, or member of the public

3 seeking State services full use and enjoyment of and

4 access to its programs, services, or benefits.

5     For purposes of this paragraph (19):

6     "Assistive technology devices" means any item, piece

7 of equipment, or product system, whether acquired

8 commercially off the shelf, modified, or customized, that

9 is used to increase, maintain, or improve functional

10 capabilities of individuals with disabilities.

11     "Assistive technology services" means any service that

12 directly assists an individual with a disability in

13 selection, acquisition, or use of an assistive technology

14 device.

15     "Qualified" has the same meaning and use as provided

16 under the federal Americans with Disabilities Act when

17 describing an individual with a disability.

18     (20) Procurement expenditures necessary for the

19 Illinois Commerce Commission to hire third-party

20 facilitators pursuant to Sections 16-105.17 and 16-108.18

21 of the Public Utilities Act or an ombudsman pursuant to

22 Section 16-107.5 of the Public Utilities Act, a

23 facilitator pursuant to Section 16-105.17 of the Public

24 Utilities Act, or a grid auditor pursuant to Section

25 16-105.10 of the Public Utilities Act.

26     (21) Procurement expenditures for the purchase,

HB5471 Enrolled        - 25 -      LRB102 24372 BMS 33606 b

1 renewal, and expansion of software, software licenses, or

2 software maintenance agreements that support the efforts

3 of the Illinois State Police to enforce, regulate, and

4 administer the Firearm Owners Identification Card Act, the

5 Firearm Concealed Carry Act, the Firearms Restraining

6 Order Act, the Firearm Dealer License Certification Act,

7 the Law Enforcement Agencies Data System (LEADS), the

8 Uniform Crime Reporting Act, the Criminal Identification

9 Act, the Uniform Conviction Information Act, and the Gun

10 Trafficking Information Act, or establish or maintain

11  record management systems necessary to conduct human

12  trafficking investigations or gun trafficking or other

13  stolen firearm investigations. This paragraph (21) applies

14  to contracts entered into on or after the effective date

15  of this amendatory Act of the 102nd General Assembly and

16  the renewal of contracts that are in effect on the

17  effective date of this amendatory Act of the 102nd General

18  Assembly.

19      Notwithstanding any other provision of law, for contracts

20  with an annual value of more than $100,000 entered into on or

21  after October 1, 2017 under an exemption provided in any

22  paragraph of this subsection (b), except paragraph (1), (2),

23  or (5), each State agency shall post to the appropriate

24  procurement bulletin the name of the contractor, a description

25  of the supply or service provided, the total amount of the

26  contract, the term of the contract, and the exception to the


HB5471 Enrolled          - 26 -          LRB102 24372 BMS 33606 b


1   Code utilized. The chief procurement officer shall submit a

2   report to the Governor and General Assembly no later than

3   November 1 of each year that shall include, at a minimum, an

4   annual summary of the monthly information reported to the

5   chief procurement officer.

6       (c) This Code does not apply to the electric power

7   procurement process provided for under Section 1-75 of the

8   Illinois Power Agency Act and Section 16-111.5 of the Public

9   Utilities Act.

10      (d) Except for Section 20-160 and Article 50 of this Code,

11  and as expressly required by Section 9.1 of the Illinois

12  Lottery Law, the provisions of this Code do not apply to the

13  procurement process provided for under Section 9.1 of the

14  Illinois Lottery Law.

15      (e) This Code does not apply to the process used by the

16  Capital Development Board to retain a person or entity to

17  assist the Capital Development Board with its duties related

18  to the determination of costs of a clean coal SNG brownfield

19  facility, as defined by Section 1-10 of the Illinois Power

20  Agency Act, as required in subsection (h-3) of Section 9-220

21  of the Public Utilities Act, including calculating the range

22  of capital costs, the range of operating and maintenance
23  costs, or the sequestration costs or monitoring the
24  construction of clean coal SNG brownfield facility for the
25  full duration of construction.
26      (f) (Blank).

HB5471 Enrolled          - 27 -         LRB102 24372 BMS 33606 b

1      (g) (Blank).
2      (h) This Code does not apply to the process to procure or
3  contracts entered into in accordance with Sections 11-5.2 and
4  11-5.3 of the Illinois Public Aid Code.
5      (i) Each chief procurement officer may access records
6  necessary to review whether a contract, purchase, or other
7  expenditure is or is not subject to the provisions of this
8  Code, unless such records would be subject to attorney-client
9  privilege.
10      (j) This Code does not apply to the process used by the
11  Capital Development Board to retain an artist or work or works
12  of art as required in Section 14 of the Capital Development
13  Board Act.
14      (k) This Code does not apply to the process to procure
15  contracts, or contracts entered into, by the State Board of
16  Elections or the State Electoral Board for hearing officers
17  appointed pursuant to the Election Code.
18      (l) This Code does not apply to the processes used by the
19  Illinois Student Assistance Commission to procure supplies and
20  services paid for from the private funds of the Illinois
21  Prepaid Tuition Fund. As used in this subsection (l), "private
22  funds" means funds derived from deposits paid into the
23  Illinois Prepaid Tuition Trust Fund and the earnings thereon.
24      (m) This Code shall apply regardless of the source of
25  funds with which contracts are paid, including federal
26  assistance moneys. Except as specifically provided in this

HB5471 Enrolled          - 28 -         LRB102 24372 BMS 33606 b

1  Code, this Code shall not apply to procurement expenditures
2  necessary for the Department of Public Health to conduct the

3    Healthy Illinois Survey in accordance with Section 2310-431 of
4    the Department of Public Health Powers and Duties Law of the
5    Civil Administrative Code of Illinois.
6    (Source: P.A. 101-27, eff. 6-25-19; 101-81, eff. 7-12-19;
7    101-363, eff. 8-9-19; 102-175, eff. 7-29-21; 102-483, eff
8    1-1-22; 102-558, eff. 8-20-21; 102-600, eff. 8-27-21; 102-662,
9    eff. 9-15-21; 102-721, eff. 1-1-23; 102-813, eff. 5-13-22.)

10       Section 10. The Firearm Owners Identification Card Act is
11   amended by changing Sections 2, 3, 4, and 8 and by adding
12   Section 4.1 as follows:

13       (430 ILCS 65/2)  (from Ch. 38, par. 83-2)
14       Sec. 2. Firearm Owner's Identification Card required;
15   exceptions.
16       (a) (1) No person may acquire or possess any firearm, stun
17   gun, or taser within this State without having in his or her
18   possession a Firearm Owner's Identification Card previously
19   issued in his or her name by the Illinois State Police under
20   the provisions of this Act.
21       (2) No person may acquire or possess firearm ammunition
22   within this State without having in his or her possession a
23   Firearm Owner's Identification Card previously issued in his
24   or her name by the Illinois State Police under the provisions

HB5471 Enrolled          - 29 -          LRB102 24372 BMS 33606 b

1    of this Act.
2        (b) The provisions of this Section regarding the
3    possession of firearms, firearm ammunition, stun guns, and
4    tasers do not apply to:
5            (1) United States Marshals, while engaged in the
6        operation of their official duties;
7            (2) Members of the Armed Forces of the United States
8        or the National Guard, while engaged in the operation of
9        their official duties;
10           (3) Federal officials required to carry firearms,
11       while engaged in the operation of their official duties;
12           (4) Members of bona fide veterans organizations which
13       receive firearms directly from the armed forces of the
14       United States, while using the firearms for ceremonial

15    purposes with blank ammunition;
16        (5) Nonresident hunters during hunting season, with
17    valid nonresident hunting licenses and while in an area
18    where hunting is permitted; however, at all other times
19    and in all other places these persons must have their
20    firearms unloaded and enclosed in a case;
21        (6) Those hunters exempt from obtaining a hunting
22    license who are required to submit their Firearm Owner's
23    Identification Card when hunting on Department of Natural
24    Resources owned or managed sites;
25        (7) Nonresidents while on a firing or shooting range
26    recognized by the Illinois State Police; however, these

HB5471 Enrolled          - 30 -          LRB102 24372 BMS 33606 b

1    persons must at all other times and in all other places
2    have their firearms unloaded and enclosed in a case;
3        (8) Nonresidents while at a firearm showing or display
4    recognized by the Illinois State Police; however, at all
5    other times and in all other places these persons must
6    have their firearms unloaded and enclosed in a case;
7        (9) Nonresidents whose firearms are unloaded and
8    enclosed in a case;
9        (10) Nonresidents who are currently licensed or
10   registered to possess a firearm in their resident state;
11       (11) Unemancipated minors while in the custody and
12   immediate control of their parent or legal guardian or
13   other person in loco parentis to the minor if the parent or
14   legal guardian or other person in loco parentis to the
15   minor has a currently valid Firearm Owner's Identification
16   Card;
17       (12) Color guards of bona fide veterans organizations
18   or members of bona fide American Legion bands while using
19   firearms for ceremonial purposes with blank ammunition;
20       (13) Nonresident hunters whose state of residence does
21   not require them to be licensed or registered to possess a
22   firearm and only during hunting season, with valid hunting
23   licenses, while accompanied by, and using a firearm owned
24   by, a person who possesses a valid Firearm Owner's
25   Identification Card and while in an area within a

26 commercial club licensed under the Wildlife Code where

HB5471 Enrolled          - 31 -          LRB102 24372 BMS 33606 b

1   hunting is permitted and controlled, but in no instance
2   upon sites owned or managed by the Department of Natural
3   Resources;
4       (14) Resident hunters who are properly authorized to
5   hunt and, while accompanied by a person who possesses a
6   valid Firearm Owner's Identification Card, hunt in an area
7   within a commercial club licensed under the Wildlife Code
8   where hunting is permitted and controlled; and
9       (15) A person who is otherwise eligible to obtain a
10  Firearm Owner's Identification Card under this Act and is
11  under the direct supervision of a holder of a Firearm
12  Owner's Identification Card who is 21 years of age or
13  older while the person is on a firing or shooting range or
14  is a participant in a firearms safety and training course
15  recognized by a law enforcement agency or a national,
16  statewide shooting sports organization; and
17      (16) Competitive shooting athletes whose competition
18  firearms are sanctioned by the International Olympic
19  Committee, the International Paralympic Committee, the
20  International Shooting Sport Federation, or USA Shooting
21  in connection with such athletes' training for and
22  participation in shooting competitions at the 2016 Olympic
23  and Paralympic Games and sanctioned test events leading up
24  to the 2016 Olympic and Paralympic Games.
25  (c) The provisions of this Section regarding the
26  acquisition and possession of firearms, firearm ammunition,

HB5471 Enrolled          - 32 -          LRB102 24372 BMS 33606 b

1   stun guns, and tasers do not apply to law enforcement
2   officials of this or any other jurisdiction, while engaged in
3   the operation of their official duties.
4       (c-5) The provisions of paragraphs (1) and (2) of
5   subsection (a) of this Section regarding the possession of
6   firearms and firearm ammunition do not apply to the holder of a

7     valid concealed carry license issued under the Firearm
8     Concealed Carry Act who is in physical possession of the
9     concealed carry license.
10        (d) Any person who becomes a resident of this State, who is
11    not otherwise prohibited from obtaining, possessing, or using
12    a firearm or firearm ammunition, shall not be required to have
13    a Firearm Owner's Identification Card to possess firearms or
14    firearms ammunition until 60 calendar days after he or she
15    obtains an Illinois driver's license or Illinois
16    Identification Card.
17    (Source: P.A. 102-538, eff. 8-20-21.)

18        (430 ILCS 65/3)  (from Ch. 38, par. 83-3)
19        (Text of Section before amendment by P.A. 102-237)
20        Sec. 3. (a) Except as provided in Section 3a, no person may
21    knowingly transfer, or cause to be transferred, any firearm,
22    firearm ammunition, stun gun, or taser to any person within
23    this State unless the transferee with whom he deals displays
24    either: (1) a currently valid Firearm Owner's Identification
25    Card which has previously been issued in his or her name by the


HB5471 Enrolled          - 33 -          LRB102 24372 BMS 33606 b


1     Illinois State Police under the provisions of this Act; or (2)
2     a currently valid license to carry a concealed firearm which
3     has previously been issued in his or her name by the Illinois
4     State Police under the Firearm Concealed Carry Act. In
5     addition, all firearm, stun gun, and taser transfers by
6     federally licensed firearm dealers are subject to Section 3.1.
7         (a-5) Any person who is not a federally licensed firearm
8     dealer and who desires to transfer or sell a firearm while that
9     person is on the grounds of a gun show must, before selling or
10    transferring the firearm, request the Illinois State Police to
11    conduct a background check on the prospective recipient of the
12    firearm in accordance with Section 3.1.
13        (a-10) Notwithstanding item (2) of subsection (a) of this
14    Section, any person who is not a federally licensed firearm
15    dealer and who desires to transfer or sell a firearm or
16    firearms to any person who is not a federally licensed firearm
17    dealer shall, before selling or transferring the firearms,
18    contact a federal firearm license dealer under paragraph (1)

19  of subsection (a-15) of this Section to conduct the transfer
20  or the Illinois State Police with the transferee's or
21  purchaser's Firearm Owner's Identification Card number to
22  determine the validity of the transferee's or purchaser's
23  Firearm Owner's Identification Card under State and federal
24  law including the National Instant Criminal Background Check
25  System. This subsection shall not be effective until July 1,
26  2023. Until that date the transferor shall contact the

HB5471 Enrolled           - 34 -        LRB102 24372 BMS 33606 b

1   Illinois State Police with the transferee's or purchaser's
2   Firearm Owner's Identification Card number to determine the
3   validity of the card January 1, 2014. The Illinois State
4   Police may adopt rules concerning the implementation of this
5   subsection. The Illinois State Police shall provide the seller
6   or transferor an approval number if the purchaser's Firearm
7   Owner's Identification Card is valid. Approvals issued by the
8   Illinois State Police for the purchase of a firearm pursuant
9   to this subsection are valid for 30 days from the date of
10  issue.
11      (a-15) The provisions of subsection (a-10) of this Section
12  do not apply to:
13          (1) transfers that occur at the place of business of a
14      federally licensed firearm dealer, if the federally
15      licensed firearm dealer conducts a background check on the
16      prospective recipient of the firearm in accordance with
17      Section 3.1 of this Act and follows all other applicable
18      federal, State, and local laws as if he or she were the
19      seller or transferor of the firearm, although the dealer
20      is not required to accept the firearm into his or her
21      inventory. The purchaser or transferee may be required by
22      the federally licensed firearm dealer to pay a fee not to
23      exceed $25 $10 per firearm, which the dealer may retain as
24      compensation for performing the functions required under
25      this paragraph, plus the applicable fees authorized by
26      Section 3.1;

HB5471 Enrolled           - 35 -        LRB102 24372 BMS 33606 b

1    (2) transfers as a bona fide gift to the transferor's
2    husband, wife, son, daughter, stepson, stepdaughter,
3    father, mother, stepfather, stepmother, brother, sister,
4    nephew, niece, uncle, aunt, grandfather, grandmother,
5    grandson, granddaughter, father-in-law, mother-in-law,
6    son-in-law, or daughter-in-law;
7    (3) transfers by persons acting pursuant to operation
8    of law or a court order;
9    (4) transfers on the grounds of a gun show under
10   subsection (a-5) of this Section;
11   (5) the delivery of a firearm by its owner to a
12   gunsmith for service or repair, the return of the firearm
13   to its owner by the gunsmith, or the delivery of a firearm
14   by a gunsmith to a federally licensed firearms dealer for
15   service or repair and the return of the firearm to the
16   gunsmith;
17   (6) temporary transfers that occur while in the home
18   of the unlicensed transferee, if the unlicensed transferee
19   is not otherwise prohibited from possessing firearms and
20   the unlicensed transferee reasonably believes that
21   possession of the firearm is necessary to prevent imminent
22   death or great bodily harm to the unlicensed transferee;
23   (7) transfers to a law enforcement or corrections
24   agency or a law enforcement or corrections officer acting
25   within the course and scope of his or her official duties;
26   (8) transfers of firearms that have been rendered

HB5471 Enrolled          - 36 -          LRB102 24372 BMS 33606 b

1    permanently inoperable to a nonprofit historical society,
2    museum, or institutional collection; and
3    (9) transfers to a person who is exempt from the
4    requirement of possessing a Firearm Owner's Identification
5    Card under Section 2 of this Act.
6    (a-20) The Illinois State Police shall develop an
7    Internet-based system for individuals to determine the
8    validity of a Firearm Owner's Identification Card prior to the
9    sale or transfer of a firearm. The Illinois State Police shall
10   have the Internet-based system updated ~~completed~~ and available

11    for use by <u>January 1, 2024</u> <s>July 1, 2015</s>. The Illinois State
12    Police shall adopt rules not inconsistent with this Section to
13    implement this system<u>, but no rule shall allow the Illinois</u>
14    <u>State Police to retain records in contravention of State and</u>
15    <u>federal law</u>.
16        <u>(a-25) On or before January 1, 2022, the Illinois State</u>
17    <u>Police shall develop an Internet-based system upon which the</u>
18    <u>serial numbers of firearms that have been reported stolen are</u>
19    <u>available for public access for individuals to ensure any</u>
20    <u>firearms are not reported stolen prior to the sale or transfer</u>
21    <u>of a firearm under this Section. The Illinois State Police</u>
22    <u>shall have the Internet-based system completed and available</u>
23    <u>for use by July 1, 2022. The Illinois State Police shall adopt</u>
24    <u>rules not inconsistent with this Section to implement this</u>
25    <u>system.</u>
26        (b) Any person within this State who transfers or causes


HB5471 Enrolled          - 37 -        LRB102 24372 BMS 33606 b


1     to be transferred any firearm, stun gun, or taser shall keep a
2     record of such transfer for a period of 10 years from the date
3     of transfer. <u>Any person within this State who receives any</u>
4     <u>firearm, stun gun, or taser pursuant to subsection (a-10)</u>
5     <u>shall provide a record of the transfer within 10 days of the</u>
6     <u>transfer to a federally licensed firearm dealer and shall not</u>
7     <u>be required to maintain a transfer record. The federally</u>
8     <u>licensed firearm dealer shall maintain the transfer record for</u>
9     <u>20 years from the date of receipt. A federally licensed</u>
10    <u>firearm dealer may charge a fee not to exceed $25 to retain the</u>
11    <u>record. The record shall be provided and maintained in either</u>
12    <u>an electronic or paper format. The federally licensed firearm</u>
13    <u>dealer shall not be liable for the accuracy of any information</u>
14    <u>in the transfer record submitted pursuant to this Section.</u>
15    Such <u>records</u> <s>record</s> shall contain the date of the transfer;
16    the description, serial number or other information
17    identifying the firearm, stun gun, or taser if no serial
18    number is available; and, if the transfer was completed within
19    this State, the transferee's Firearm Owner's Identification
20    Card number and any approval number or documentation provided
21    by the Illinois State Police pursuant to subsection (a-10) of
22    this Section; if the transfer was not completed within this

23  State, the record shall contain the name and address of the
24  transferee. On or after January 1, 2006, the record shall
25  contain the date of application for transfer of the firearm.
26  On demand of a peace officer such transferor shall produce for

HB5471 Enrolled         - 38 -        LRB102 24372 BMS 33606 b

1   inspection such record of transfer. <u>For any transfer pursuant</u>
2   <u>to subsection (a-10) of this Section, on the demand of a peace</u>
3   <u>officer, such transferee shall identify the federally licensed</u>
4   <u>firearm dealer maintaining the transfer record.</u> If the
5   transfer or sale took place at a gun show, the record shall
6   include the unique identification number. Failure to record
7   the unique identification number or approval number is a petty
8   offense. For transfers of a firearm, stun gun, or taser made on
9   or after January 18, 2019 (the effective date of Public Act
10  100-1178), failure by the private seller to maintain the
11  transfer records in accordance with this Section<u>, or failure</u>
12  <u>by a transferee pursuant to subsection a-10 of this Section to</u>
13  <u>identify the federally licensed firearm dealer maintaining the</u>
14  <u>transfer record,</u> is a Class A misdemeanor for the first
15  offense and a Class 4 felony for a second or subsequent offense
16  <u>occurring within 10 years of the first offense and the second</u>
17  <u>offense was committed after conviction of the first offense.</u>
18  <u>Whenever any person who has not previously been convicted of</u>
19  <u>any violation of subsection (a-5), the court may grant</u>
20  <u>supervision pursuant to and consistent with the limitations of</u>
21  <u>Section 5-6-1 of the Unified Code of Corrections.</u> A transferee
22  <u>or transferor</u> shall not be criminally liable under this
23  Section provided that he or she provides the Illinois State
24  Police with the transfer records in accordance with procedures
25  established by the Illinois State Police. The Illinois State
26  Police shall establish, by rule, a standard form on its

HB5471 Enrolled         - 39 -        LRB102 24372 BMS 33606 b

1   website.
2       (b-5) Any resident may purchase ammunition from a person
3   within or outside of Illinois if shipment is by United States

4    mail or by a private express carrier authorized by federal law

5    to ship ammunition. Any resident purchasing ammunition within

6    or outside the State of Illinois must provide the seller with a

7    copy of his or her valid Firearm Owner's Identification Card

8    or valid concealed carry license and either his or her

9    Illinois driver's license or Illinois State Identification

10   Card prior to the shipment of the ammunition. The ammunition

11   may be shipped only to an address on either of those 2

12   documents.

13     (c) The provisions of this Section regarding the transfer

14   of firearm ammunition shall not apply to those persons

15   specified in paragraph (b) of Section 2 of this Act.

16   (Source: P.A. 102-538, eff. 8-20-21; 102-813, eff. 5-13-22.)

17    (Text of Section after amendment by P.A. 102-237)

18     Sec. 3. (a) Except as provided in Section 3a, no person may

19   knowingly transfer, or cause to be transferred, any firearm,

20   firearm ammunition, stun gun, or taser to any person within

21   this State unless the transferee with whom he deals displays

22   either: (1) a currently valid Firearm Owner's Identification

23   Card which has previously been issued in his or her name by the

24   Illinois State Police under the provisions of this Act; or (2)

25   a currently valid license to carry a concealed firearm which

HB5471 Enrolled     - 40 -     LRB102 24372 BMS 33606 b

1    has previously been issued in his or her name by the Illinois

2    State Police under the Firearm Concealed Carry Act. In

3    addition, all firearm, stun gun, and taser transfers by

4    federally licensed firearm dealers are subject to Section 3.1.

5     (a-5) Any person who is not a federally licensed firearm

6    dealer and who desires to transfer or sell a firearm while that

7    person is on the grounds of a gun show must, before selling or

8    transferring the firearm, request the Illinois State Police to

9    conduct a background check on the prospective recipient of the

10   firearm in accordance with Section 3.1.

11     (a-10) Notwithstanding item (2) of subsection (a) of this

12   Section, any person who is not a federally licensed firearm

13   dealer and who desires to transfer or sell a firearm or

14   firearms to any person who is not a federally licensed firearm

15   dealer shall, before selling or transferring the firearms,

16    contact a federal firearm license dealer under paragraph (1)
17    of subsection (a-15) of this Section to conduct the transfer
18    or the Illinois State Police with the transferee's or
19    purchaser's Firearm Owner's Identification Card number to
20    determine the validity of the transferee's or purchaser's
21    Firearm Owner's Identification Card under State and federal
22    law, including the National Instant Criminal Background Check
23    System. This subsection shall not be effective until July 1,
24    2023 January 1, 2024. Until that date the transferor shall
25    contact the Illinois State Police with the transferee's or
26    purchaser's Firearm Owner's Identification Card number to

HB5471 Enrolled              - 41 -          LRB102 24372 BMS 33606 b

1     determine the validity of the card. The Illinois State Police
2     may adopt rules concerning the implementation of this
3     subsection. The Illinois State Police shall provide the seller
4     or transferor an approval number if the purchaser's Firearm
5     Owner's Identification Card is valid. Approvals issued by the
6     Illinois State Police for the purchase of a firearm pursuant
7     to this subsection are valid for 30 days from the date of
8     issue.
9          (a-15) The provisions of subsection (a-10) of this Section
10    do not apply to:
11         (1) transfers that occur at the place of business of a
12         federally licensed firearm dealer, if the federally
13         licensed firearm dealer conducts a background check on the
14         prospective recipient of the firearm in accordance with
15         Section 3.1 of this Act and follows all other applicable
16         federal, State, and local laws as if he or she were the
17         seller or transferor of the firearm, although the dealer
18         is not required to accept the firearm into his or her
19         inventory. The purchaser or transferee may be required by
20         the federally licensed firearm dealer to pay a fee not to
21         exceed $25 per firearm, which the dealer may retain as
22         compensation for performing the functions required under
23         this paragraph, plus the applicable fees authorized by
24         Section 3.1;
25         (2) transfers as a bona fide gift to the transferor's
26         husband, wife, son, daughter, stepson, stepdaughter,

HB5471 Enrolled          - 42 -          LRB102 24372 BMS 33606 b

1    father, mother, stepfather, stepmother, brother, sister,
2    nephew, niece, uncle, aunt, grandfather, grandmother,
3    grandson, granddaughter, father-in-law, mother-in-law,
4    son-in-law, or daughter-in-law;
5        (3) transfers by persons acting pursuant to operation
6    of law or a court order;
7        (4) transfers on the grounds of a gun show under
8    subsection (a-5) of this Section;
9        (5) the delivery of a firearm by its owner to a
10   gunsmith for service or repair, the return of the firearm
11   to its owner by the gunsmith, or the delivery of a firearm
12   by a gunsmith to a federally licensed firearms dealer for
13   service or repair and the return of the firearm to the
14   gunsmith;
15       (6) temporary transfers that occur while in the home
16   of the unlicensed transferee, if the unlicensed transferee
17   is not otherwise prohibited from possessing firearms and
18   the unlicensed transferee reasonably believes that
19   possession of the firearm is necessary to prevent imminent
20   death or great bodily harm to the unlicensed transferee;
21       (7) transfers to a law enforcement or corrections
22   agency or a law enforcement or corrections officer acting
23   within the course and scope of his or her official duties;
24       (8) transfers of firearms that have been rendered
25   permanently inoperable to a nonprofit historical society,
26   museum, or institutional collection; and

HB5471 Enrolled          - 43 -          LRB102 24372 BMS 33606 b

1        (9) transfers to a person who is exempt from the
2    requirement of possessing a Firearm Owner's Identification
3    Card under Section 2 of this Act.
4    (a-20) The Illinois State Police shall develop an
5    Internet-based system for individuals to determine the
6    validity of a Firearm Owner's Identification Card prior to the
7    sale or transfer of a firearm. The Illinois State Police shall

8   have the Internet-based system updated and available for use
9   by January 1, 2024. The Illinois State Police shall adopt
10  rules not inconsistent with this Section to implement this
11  system; but no rule shall allow the Illinois State Police to
12  retain records in contravention of State and federal law.
13      (a-25) On or before January 1, 2022, the Illinois State
14  Police shall develop an Internet-based system upon which the
15  serial numbers of firearms that have been reported stolen are
16  available for public access for individuals to ensure any
17  firearms are not reported stolen prior to the sale or transfer
18  of a firearm under this Section. The Illinois State Police
19  shall have the Internet-based system completed and available
20  for use by July 1, 2022. The Illinois State Police shall adopt
21  rules not inconsistent with this Section to implement this
22  system.
23      (b) Any person within this State who transfers or causes
24  to be transferred any firearm, stun gun, or taser shall keep a
25  record of such transfer for a period of 10 years from the date
26  of transfer. Any person within this State who receives any

HB5471 Enrolled          - 44 -          LRB102 24372 BMS 33606 b

1   firearm, stun gun, or taser pursuant to subsection (a-10)
2   shall provide a record of the transfer within 10 days of the
3   transfer to a federally licensed firearm dealer and shall not
4   be required to maintain a transfer record. The federally
5   licensed firearm dealer shall maintain the transfer record for
6   20 years from the date of receipt. A federally licensed
7   firearm dealer may charge a fee not to exceed $25 to retain the
8   record. The record shall be provided and maintained in either
9   an electronic or paper format. The federally licensed firearm
10  dealer shall not be liable for the accuracy of any information
11  in the transfer record submitted pursuant to this Section.
12  Such records shall contain the date of the transfer; the
13  description, serial number or other information identifying
14  the firearm, stun gun, or taser if no serial number is
15  available; and, if the transfer was completed within this
16  State, the transferee's Firearm Owner's Identification Card
17  number and any approval number or documentation provided by
18  the Illinois State Police pursuant to subsection (a-10) of
19  this Section; if the transfer was not completed within this

20  State, the record shall contain the name and address of the
21  transferee. On or after January 1, 2006, the record shall
22  contain the date of application for transfer of the firearm.
23  On demand of a peace officer such transferor shall produce for
24  inspection such record of transfer. For any transfer pursuant
25  to subsection (a-10) of this Section, on the demand of a peace
26  officer, such transferee shall identify the federally licensed

HB5471 Enrolled          - 45 -          LRB102 24372 BMS 33606 b

1   firearm dealer maintaining the transfer record. If the
2   transfer or sale took place at a gun show, the record shall
3   include the unique identification number. Failure to record
4   the unique identification number or approval number is a petty
5   offense. For transfers of a firearm, stun gun, or taser made on
6   or after January 18, 2019 (the effective date of Public Act
7   100-1178), failure by the private seller to maintain the
8   transfer records in accordance with this Section, or failure
9   by a transferee pursuant to subsection a-10 of this Section to
10  identify the federally licensed firearm dealer maintaining the
11  transfer record, is a Class A misdemeanor for the first
12  offense and a Class 4 felony for a second or subsequent offense
13  occurring within 10 years of the first offense and the second
14  offense was committed after conviction of the first offense.
15  Whenever any person who has not previously been convicted of
16  any violation of subsection (a-5), the court may grant
17  supervision pursuant to and consistent with the limitations of
18  Section 5-6-1 of the Unified Code of Corrections. A transferee
19  or transferor shall not be criminally liable under this
20  Section provided that he or she provides the Illinois State
21  Police with the transfer records in accordance with procedures
22  established by the Illinois State Police. The Illinois State
23  Police shall establish, by rule, a standard form on its
24  website.
25      (b-5) Any resident may purchase ammunition from a person
26  within or outside of Illinois if shipment is by United States

HB5471 Enrolled          - 46 -          LRB102 24372 BMS 33606 b

mail or by a private express carrier authorized by federal law
to ship ammunition. Any resident purchasing ammunition within
or outside the State of Illinois must provide the seller with a
copy of his or her valid Firearm Owner's Identification Card
or valid concealed carry license and either his or her
Illinois driver's license or Illinois State Identification
Card prior to the shipment of the ammunition. The ammunition
may be shipped only to an address on either of those 2
documents.

    (c) The provisions of this Section regarding the transfer
of firearm ammunition shall not apply to those persons
specified in paragraph (b) of Section 2 of this Act.
(Source: P.A. 102-237, eff. 1-1-24; 102-538, eff. 8-20-21;
102-813, eff. 5-13-22.)

    (430 ILCS 65/4)  (from Ch. 38, par. 83-4)
    Sec. 4. Application for Firearm Owner's Identification
Cards.
    (a) Each applicant for a Firearm Owner's Identification
Card must:
        (1) Submit an application as made available by the
    Illinois State Police; and
        (2) Submit evidence to the Illinois State Police that:
            (i) This subparagraph (i) applies through the
        180th day following July 12, 2019 (the effective date
        of Public Act 101-80). He or she is 21 years of age or

HB5471 Enrolled         - 47 -        LRB102 24372 BMS 33606 b

        over, or if he or she is under 21 years of age that he
        or she has the written consent of his or her parent or
        legal guardian to possess and acquire firearms and
        firearm ammunition and that he or she has never been
        convicted of a misdemeanor other than a traffic
        offense or adjudged delinquent, provided, however,
        that such parent or legal guardian is not an
        individual prohibited from having a Firearm Owner's
        Identification Card and files an affidavit with the
        Department as prescribed by the Department stating
        that he or she is not an individual prohibited from

12      having a Card;
13          (i-5) This subparagraph (i-5) applies on and after
14      the 181st day following July 12, 2019 (the effective
15      date of Public Act 101-80). He or she is 21 years of
16      age or over, or if he or she is under 21 years of age
17      that he or she has never been convicted of a
18      misdemeanor other than a traffic offense or adjudged
19      delinquent and is an active duty member of the United
20      States Armed Forces or the Illinois National Guard or
21      has the written consent of his or her parent or legal
22      guardian to possess and acquire firearms and firearm
23      ammunition, provided, however, that such parent or
24      legal guardian is not an individual prohibited from
25      having a Firearm Owner's Identification Card and files
26      an affidavit with the Illinois State Police as


        HB5471 Enrolled           - 48 -          LRB102 24372 BMS 33606 b


1       prescribed by the Illinois State Police stating that
2       he or she is not an individual prohibited from having a
3       Card or the active duty member of the United States
4       Armed Forces or the Illinois National Guard under 21
5       years of age annually submits proof to the Illinois
6       State Police, in a manner prescribed by the Illinois
7       State Police;
8           (ii) He or she has not been convicted of a felony
9       under the laws of this or any other jurisdiction;
10          (iii) He or she is not addicted to narcotics;
11          (iv) He or she has not been a patient in a mental
12      health facility within the past 5 years or, if he or
13      she has been a patient in a mental health facility more
14      than 5 years ago submit the certification required
15      under subsection (u) of Section 8 of this Act;
16          (v) He or she is not a person with an intellectual
17      disability;
18          (vi) He or she is not a noncitizen who is
19      unlawfully present in the United States under the laws
20      of the United States;
21          (vii) He or she is not subject to an existing order

22      of protection prohibiting him or her from possessing a

23      firearm;

24          (viii) He or she has not been convicted within the

25      past 5 years of battery, assault, aggravated assault,

26      violation of an order of protection, or a


HB5471 Enrolled          - 49 -          LRB102 24372 BMS 33606 b


1       substantially similar offense in another jurisdiction,

2       in which a firearm was used or possessed;

3           (ix) He or she has not been convicted of domestic

4       battery, aggravated domestic battery, or a

5       substantially similar offense in another jurisdiction

6       committed before, on or after January 1, 2012 (the

7       effective date of Public Act 97-158). If the applicant

8       knowingly and intelligently waives the right to have

9       an offense described in this clause (ix) tried by a

10      jury, and by guilty plea or otherwise, results in a

11      conviction for an offense in which a domestic

12      relationship is not a required element of the offense

13      but in which a determination of the applicability of

14      18 U.S.C. 922(g)(9) is made under Section 112A-11.1 of

15      the Code of Criminal Procedure of 1963, an entry by the

16      court of a judgment of conviction for that offense

17      shall be grounds for denying the issuance of a Firearm

18      Owner's Identification Card under this Section;

19          (x) (Blank);

20          (xi) He or she is not a noncitizen who has been

21      admitted to the United States under a non-immigrant

22      visa (as that term is defined in Section 101(a)(26) of

23      the Immigration and Nationality Act (8 U.S.C.

24      1101(a)(26))), or that he or she is a noncitizen who

25      has been lawfully admitted to the United States under

26      a non-immigrant visa if that noncitizen is:


HB5471 Enrolled          - 50 -          LRB102 24372 BMS 33606 b


1           (1) admitted to the United States for lawful

2      hunting or sporting purposes;
3          (2) an official representative of a foreign
4      government who is:
5              (A) accredited to the United States
6              Government or the Government's mission to an
7              international organization having its
8              headquarters in the United States; or
9                  (B) en route to or from another country to
10             which that noncitizen is accredited;
11         (3) an official of a foreign government or
12     distinguished foreign visitor who has been so
13     designated by the Department of State;
14         (4) a foreign law enforcement officer of a
15     friendly foreign government entering the United
16     States on official business; or
17         (5) one who has received a waiver from the
18     Attorney General of the United States pursuant to
19     18 U.S.C. 922(y)(3);
20     (xii) He or she is not a minor subject to a
21 petition filed under Section 5-520 of the Juvenile
22 Court Act of 1987 alleging that the minor is a
23 delinquent minor for the commission of an offense that
24 if committed by an adult would be a felony;
25     (xiii) He or she is not an adult who had been
26 adjudicated a delinquent minor under the Juvenile

HB5471 Enrolled        - 51 -        LRB102 24372 BMS 33606 b

1 Court Act of 1987 for the commission of an offense that
2 if committed by an adult would be a felony;
3     (xiv) He or she is a resident of the State of
4 Illinois;
5     (xv) He or she has not been adjudicated as a person
6 with a mental disability;
7     (xvi) He or she has not been involuntarily
8 admitted into a mental health facility; and
9     (xvii) He or she is not a person with a
10 developmental disability; and
11     (3) Upon request by the Illinois State Police, sign a
12 release on a form prescribed by the Illinois State Police

13      waiving any right to confidentiality and requesting the
14      disclosure to the Illinois State Police of limited mental
15      health institution admission information from another
16      state, the District of Columbia, any other territory of
17      the United States, or a foreign nation concerning the
18      applicant for the sole purpose of determining whether the
19      applicant is or was a patient in a mental health
20      institution and disqualified because of that status from
21      receiving a Firearm Owner's Identification Card. No mental
22      health care or treatment records may be requested. The
23      information received shall be destroyed within one year of
24      receipt.
25          (a-5) Each applicant for a Firearm Owner's Identification
26      Card who is over the age of 18 shall furnish to the Illinois


HB5471 Enrolled          - 52 -          LRB102 24372 BMS 33606 b


1       State Police either his or her Illinois driver's license
2       number or Illinois Identification Card number, except as
3       provided in subsection (a-10).
4           (a-10) Each applicant for a Firearm Owner's Identification
5       Card, who is employed as a law enforcement officer, an armed
6       security officer in Illinois, or by the United States Military
7       permanently assigned in Illinois and who is not an Illinois
8       resident, shall furnish to the Illinois State Police his or
9       her driver's license number or state identification card
10      number from his or her state of residence. The Illinois State
11      Police may adopt rules to enforce the provisions of this
12      subsection (a-10).
13          (a-15) If an applicant applying for a Firearm Owner's
14      Identification Card moves from the residence address named in
15      the application, he or she shall immediately notify in a form
16      and manner prescribed by the Illinois State Police of that
17      change of address.
18          (a-20) Each applicant for a Firearm Owner's Identification
19      Card shall furnish to the Illinois State Police his or her
20      photograph. An applicant who is 21 years of age or older
21      seeking a religious exemption to the photograph requirement
22      must furnish with the application an approved copy of United
23      States Department of the Treasury Internal Revenue Service

24  Form 4029. In lieu of a photograph, an applicant regardless of
25  age seeking a religious exemption to the photograph
26  requirement shall submit fingerprints on a form and manner

HB5471 Enrolled         - 53 -        LRB102 24372 BMS 33606 b

1   prescribed by the Illinois State Police with his or her
2   application.
3       (a-25) Beginning January 1, 2023, each applicant for the
4   issuance of a Firearm Owner's Identification Card may include
5   a full set of his or her fingerprints in electronic format to
6   the Illinois State Police, unless the applicant has previously
7   provided a full set of his or her fingerprints to the Illinois
8   State Police under this Act or the Firearm Concealed Carry
9   Act.
10      The fingerprints must be transmitted through a live scan
11  fingerprint vendor licensed by the Department of Financial and
12  Professional Regulation. The fingerprints shall be checked
13  against the fingerprint records now and hereafter filed in the
14  Illinois State Police and Federal Bureau of Investigation
15  criminal history records databases, including all available
16  State and local criminal history record information files.
17      The Illinois State Police shall charge applicants a
18  one-time fee for conducting the criminal history record check,
19  which shall be deposited into the State Police Services Fund
20  and shall not exceed the actual cost of the State and national
21  criminal history record check.
22      (a-26) The Illinois State Police shall research, explore,
23  and report to the General Assembly by January 1, 2022 on the
24  feasibility of permitting voluntarily submitted fingerprints
25  obtained for purposes other than Firearm Owner's
26  Identification Card enforcement that are contained in the

HB5471 Enrolled         - 54 -        LRB102 24372 BMS 33606 b

1   Illinois State Police database for purposes of this Act.
2       (b) Each application form shall include the following
3   statement printed in bold type: "Warning: Entering false
4   information on an application for a Firearm Owner's

5   Identification Card is punishable as a Class 2 felony in
6   accordance with subsection (d-5) of Section 14 of the Firearm
7   Owners Identification Card Act.".
8       (c) Upon such written consent, pursuant to Section 4,
9   paragraph (a)(2)(i), the parent or legal guardian giving the
10  consent shall be liable for any damages resulting from the
11  applicant's use of firearms or firearm ammunition.
12  (Source: P.A. 101-80, eff. 7-12-19; 102-237, eff. 1-1-22;
13  102-538, eff. 8-20-21; 102-813, eff. 5-13-22; 102-1030, eff.
14  5-27-22.)

15      (430 ILCS 65/4.1 new)
16      Sec. 4.1. Assault weapon, .50 caliber rifle, assault
17  weapon attachment, or .50 caliber cartridge endorsement.
18      (a) The endorsement affidavit form completed pursuant to
19  Section 24-1.9 of the Criminal Code of 2012 must be executed
20  electronically through the individual's Firearm Owner's
21  Identification Card account.
22      (b) The Illinois State Police shall adopt rules in
23  accordance with this Section for the electronic submission of
24  an endorsement affidavit.
25      (c) Entering false information on the endorsement


HB5471 Enrolled          - 55 -        LRB102 24372 BMS 33606 b


1   affidavit form is a violation of this Act and is also
2   punishable as perjury under Section 32-2 of the Criminal Code
3   of 2012.

4       (430 ILCS 65/8)  (from Ch. 38, par. 83-8)
5       Sec. 8. Grounds for denial and revocation. The Illinois
6   State Police has authority to deny an application for or to
7   revoke and seize a Firearm Owner's Identification Card
8   previously issued under this Act only if the Illinois State
9   Police finds that the applicant or the person to whom such card
10  was issued is or was at the time of issuance:
11      (a) A person under 21 years of age who has been
12      convicted of a misdemeanor other than a traffic offense or
13      adjudged delinquent;
14      (b) This subsection (b) applies through the 180th day
15      following July 12, 2019 (the effective date of Public Act

16 101-80). A person under 21 years of age who does not have
17 the written consent of his parent or guardian to acquire
18 and possess firearms and firearm ammunition, or whose
19 parent or guardian has revoked such written consent, or
20 where such parent or guardian does not qualify to have a
21 Firearm Owner's Identification Card;
22  (b-5) This subsection (b-5) applies on and after the
23 181st day following July 12, 2019 (the effective date of
24 Public Act 101-80). A person under 21 years of age who is
25 not an active duty member of the United States Armed

HB5471 Enrolled  - 56 -  LRB102 24372 BMS 33606 b

1  Forces or the Illinois National Guard and does not have
2 the written consent of his or her parent or guardian to
3 acquire and possess firearms and firearm ammunition, or
4 whose parent or guardian has revoked such written consent,
5 or where such parent or guardian does not qualify to have a
6 Firearm Owner's Identification Card;
7  (c) A person convicted of a felony under the laws of
8 this or any other jurisdiction;
9  (d) A person addicted to narcotics;
10  (e) A person who has been a patient of a mental health
11 facility within the past 5 years or a person who has been a
12 patient in a mental health facility more than 5 years ago
13 who has not received the certification required under
14 subsection (u) of this Section. An active law enforcement
15 officer employed by a unit of government or a Department
16 of Corrections employee authorized to possess firearms who
17 is denied, revoked, or has his or her Firearm Owner's
18 Identification Card seized under this subsection (e) may
19 obtain relief as described in subsection (c-5) of Section
20 10 of this Act if the officer or employee did not act in a
21 manner threatening to the officer or employee, another
22 person, or the public as determined by the treating
23 clinical psychologist or physician, and the officer or
24 employee seeks mental health treatment;
25  (f) A person whose mental condition is of such a
26 nature that it poses a clear and present danger to the

HB5471 Enrolled            - 57 -         LRB102 24372 BMS 33606 b

1   applicant, any other person or persons, or the community;

2        (g) A person who has an intellectual disability;

3        (h) A person who intentionally makes a false statement

4   in the Firearm Owner's Identification Card application or

5   endorsement affidavit;

6        (i) A noncitizen who is unlawfully present in the

7   United States under the laws of the United States;

8        (i-5) A noncitizen who has been admitted to the United

9   States under a non-immigrant visa (as that term is defined

10  in Section 101(a)(26) of the Immigration and Nationality

11  Act (8 U.S.C. 1101(a)(26))), except that this subsection

12  (i-5) does not apply to any noncitizen who has been

13  lawfully admitted to the United States under a

14  non-immigrant visa if that noncitizen is:

15       (1) admitted to the United States for lawful

16  hunting or sporting purposes;

17       (2) an official representative of a foreign

18  government who is:

19           (A) accredited to the United States Government

20        or the Government's mission to an international

21        organization having its headquarters in the United

22        States; or

23           (B) en route to or from another country to

24        which that noncitizen is accredited;

25       (3) an official of a foreign government or

26  distinguished foreign visitor who has been so

HB5471 Enrolled            - 58 -         LRB102 24372 BMS 33606 b

1   designated by the Department of State;

2        (4) a foreign law enforcement officer of a

3   friendly foreign government entering the United States

4   on official business; or

5        (5) one who has received a waiver from the

6   Attorney General of the United States pursuant to 18

7   U.S.C. 922(y)(3);

8      (j) (Blank);

9      (k) A person who has been convicted within the past 5

10     years of battery, assault, aggravated assault, violation

11     of an order of protection, or a substantially similar

12     offense in another jurisdiction, in which a firearm was

13     used or possessed;

14     (l) A person who has been convicted of domestic

15     battery, aggravated domestic battery, or a substantially

16     similar offense in another jurisdiction committed before,

17     on or after January 1, 2012 (the effective date of Public

18     Act 97-158). If the applicant or person who has been

19     previously issued a Firearm Owner's Identification Card

20     under this Act knowingly and intelligently waives the

21     right to have an offense described in this paragraph (l)

22     tried by a jury, and by guilty plea or otherwise, results

23     in a conviction for an offense in which a domestic

24     relationship is not a required element of the offense but

25     in which a determination of the applicability of 18 U.S.C.

26     922(g)(9) is made under Section 112A-11.1 of the Code of

HB5471 Enrolled              - 59 -          LRB102 24372 BMS 33606 b

1      Criminal Procedure of 1963, an entry by the court of a

2      judgment of conviction for that offense shall be grounds

3      for denying an application for and for revoking and

4      seizing a Firearm Owner's Identification Card previously

5      issued to the person under this Act;

6      (m) (Blank);

7      (n) A person who is prohibited from acquiring or

8      possessing firearms or firearm ammunition by any Illinois

9      State statute or by federal law;

10     (o) A minor subject to a petition filed under Section

11     5-520 of the Juvenile Court Act of 1987 alleging that the

12     minor is a delinquent minor for the commission of an

13     offense that if committed by an adult would be a felony;

14     (p) An adult who had been adjudicated a delinquent

15     minor under the Juvenile Court Act of 1987 for the

16     commission of an offense that if committed by an adult

17     would be a felony;

18     (q) A person who is not a resident of the State of

19   Illinois, except as provided in subsection (a-10) of
20   Section 4;
21       (r) A person who has been adjudicated as a person with
22   a mental disability;
23       (s) A person who has been found to have a
24   developmental disability;
25       (t) A person involuntarily admitted into a mental
26   health facility; or

HB5471 Enrolled            - 60 -        LRB102 24372 BMS 33606 b

1        (u) A person who has had his or her Firearm Owner's
2    Identification Card revoked or denied under subsection (e)
3    of this Section or item (iv) of paragraph (2) of
4    subsection (a) of Section 4 of this Act because he or she
5    was a patient in a mental health facility as provided in
6    subsection (e) of this Section, shall not be permitted to
7    obtain a Firearm Owner's Identification Card, after the
8    5-year period has lapsed, unless he or she has received a
9    mental health evaluation by a physician, clinical
10   psychologist, or qualified examiner as those terms are
11   defined in the Mental Health and Developmental
12   Disabilities Code, and has received a certification that
13   he or she is not a clear and present danger to himself,
14   herself, or others. The physician, clinical psychologist,
15   or qualified examiner making the certification and his or
16   her employer shall not be held criminally, civilly, or
17   professionally liable for making or not making the
18   certification required under this subsection, except for
19   willful or wanton misconduct. This subsection does not
20   apply to a person whose firearm possession rights have
21   been restored through administrative or judicial action
22   under Section 10 or 11 of this Act.
23       Upon revocation of a person's Firearm Owner's
24   Identification Card, the Illinois State Police shall provide
25   notice to the person and the person shall comply with Section
26   9.5 of this Act.

HB5471 Enrolled          - 61 -          LRB102 24372 BMS 33606 b

1  (Source: P.A. 101-80, eff. 7-12-19; 102-538, eff. 8-20-21;
2  102-645, eff. 1-1-22; 102-813, eff. 5-13-22; 102-1030, eff.
3  5-27-22.)

4      Section 15. The Firearms Restraining Order Act is amended
5  by changing Sections 40, 45, and 55 as follows:

6      (430 ILCS 67/40)
7      Sec. 40. Plenary ~~Six-month~~ orders.
8      (a) A petitioner may request a ~~6-month~~ firearms
9  restraining order for up to one year by filing an affidavit or
10  verified pleading alleging that the respondent poses a
11  significant danger of causing personal injury to himself,
12  herself, or another in the near future by having in his or her
13  custody or control, purchasing, possessing, or receiving a
14  firearm, ammunition, and firearm parts that could be assembled
15  to make an operable firearm. The petition shall also describe
16  the number, types, and locations of any firearms, ammunition,
17  and firearm parts that could be assembled to make an operable
18  firearm presently believed by the petitioner to be possessed
19  or controlled by the respondent. The firearms restraining
20  order may be renewed for an additional period of up to one year
21  in accordance with Section 45 of this Act.
22      (b) If the respondent is alleged to pose a significant
23  danger of causing personal injury to an intimate partner, or
24  an intimate partner is alleged to have been the target of a

HB5471 Enrolled          - 62 -          LRB102 24372 BMS 33606 b

1  threat or act of violence by the respondent, the petitioner
2  shall make a good faith effort to provide notice to any and all
3  intimate partners of the respondent. The notice must include
4  the duration of time that the petitioner intends to petition
5  the court for a ~~6-month~~ firearms restraining order, and, if
6  the petitioner is a law enforcement officer, referral to
7  relevant domestic violence or stalking advocacy or counseling
8  resources, if appropriate. The petitioner shall attest to
9  having provided the notice in the filed affidavit or verified
10  pleading. If, after making a good faith effort, the petitioner

11  is unable to provide notice to any or all intimate partners,

12  the affidavit or verified pleading should describe what

13  efforts were made.

14      (c) Every person who files a petition for a <u>plenary</u>

15  6-month firearms restraining order, knowing the information

16  provided to the court at any hearing or in the affidavit or

17  verified pleading to be false, is guilty of perjury under

18  Section 32-2 of the Criminal Code of 2012.

19      (d) Upon receipt of a petition for a <u>plenary</u> 6-month

20  firearms restraining order, the court shall order a hearing

21  within 30 days.

22      (e) In determining whether to issue a firearms restraining

23  order under this Section, the court shall consider evidence

24  including, but not limited to, the following:

25          (1) The unlawful and reckless use, display, or

26          brandishing of a firearm, ammunition, and firearm parts


HB5471 Enrolled         - 63 -         LRB102 24372 BMS 33606 b

1       that could be assembled to make an operable firearm by the

2       respondent.

3           (2) The history of use, attempted use, or threatened

4       use of physical force by the respondent against another

5       person.

6           (3) Any prior arrest of the respondent for a felony

7       offense.

8           (4) Evidence of the abuse of controlled substances or

9       alcohol by the respondent.

10          (5) A recent threat of violence or act of violence by

11      the respondent directed toward himself, herself, or

12      another.

13          (6) A violation of an emergency order of protection

14      issued under Section 217 of the Illinois Domestic Violence

15      Act of 1986 or Section 112A-17 of the Code of Criminal

16      Procedure of 1963 or of an order of protection issued

17      under Section 214 of the Illinois Domestic Violence Act of

18      1986 or Section 112A-14 of the Code of Criminal Procedure

19      of 1963.

20          (7) A pattern of violent acts or violent threats,

21      including, but not limited to, threats of violence or acts

22    of violence by the respondent directed toward himself,
23    herself, or another.
24        (f) At the hearing, the petitioner shall have the burden
25    of proving, by clear and convincing evidence, that the
26    respondent poses a significant danger of personal injury to

HB5471 Enrolled          - 64 -        LRB102 24372 BMS 33606 b

1    himself, herself, or another by having in his or her custody or
2    control, purchasing, possessing, or receiving a firearm,
3    ammunition, and firearm parts that could be assembled to make
4    an operable firearm.
5        (g) If the court finds that there is clear and convincing
6    evidence to issue a _plenary_ firearms restraining order, the
7    court shall issue a firearms restraining order that shall be
8    in effect for up to one year, but not less than 6 months, 6
9    months subject to renewal under Section 45 of this Act or
10    termination under that Section.
11        (g-5) If the court issues a _plenary_ 6-month firearms
12    restraining order, it shall, upon a finding of probable cause
13    that the respondent possesses firearms, ammunition, and
14    firearm parts that could be assembled to make an operable
15    firearm, issue a search warrant directing a law enforcement
16    agency to seize the respondent's firearms, ammunition, and
17    firearm parts that could be assembled to make an operable
18    firearm. The court may, as part of that warrant, direct the law
19    enforcement agency to search the respondent's residence and
20    other places where the court finds there is probable cause to
21    believe he or she is likely to possess the firearms,
22    ammunition, and firearm parts that could be assembled to make
23    an operable firearm. A return of the search warrant shall be
24    filed by the law enforcement agency within 4 days thereafter,
25    setting forth the time, date, and location that the search
26    warrant was executed and what items, if any, were seized.

HB5471 Enrolled          - 65 -        LRB102 24372 BMS 33606 b

1        (h) A _plenary_ 6-month firearms restraining order shall
2    require:

3        (1) the respondent to refrain from having in his or
4    her custody or control, purchasing, possessing, or
5    receiving additional firearms, ammunition, and firearm
6    parts that could be assembled to make an operable firearm
7    for the duration of the order under Section 8.2 of the
8    Firearm Owners Identification Card Act; and
9        (2) the respondent to comply with Section 9.5 of the
10    Firearm Owners Identification Card Act and subsection (g)
11    of Section 70 of the Firearm Concealed Carry Act.
12    (i) Except as otherwise provided in subsection (i-5) of
13    this Section, upon expiration of the period of safekeeping, if
14    the firearms, ammunition, and firearm parts that could be
15    assembled to make an operable firearm or Firearm Owner's
16    Identification Card cannot be returned to the respondent
17    because the respondent cannot be located, fails to respond to
18    requests to retrieve the firearms, ammunition, and firearm
19    parts that could be assembled to make an operable firearm, or
20    is not lawfully eligible to possess a firearm, ammunition, and
21    firearm parts that could be assembled to make an operable
22    firearm, upon petition from the local law enforcement agency,
23    the court may order the local law enforcement agency to
24    destroy the firearms, ammunition, and firearm parts that could
25    be assembled to make an operable firearm, use the firearms,
26    ammunition, and firearm parts that could be assembled to make

HB5471 Enrolled           - 66 -          LRB102 24372 BMS 33606 b

1    an operable firearm for training purposes, or use the
2    firearms, ammunition, and firearm parts that could be
3    assembled to make an operable firearm for any other
4    application as deemed appropriate by the local law enforcement
5    agency.
6    (i-5) A respondent whose Firearm Owner's Identification
7    Card has been revoked or suspended may petition the court, if
8    the petitioner is present in court or has notice of the
9    respondent's petition, to transfer the respondent's firearm,
10    ammunition, and firearm parts that could be assembled to make
11    an operable firearm to a person who is lawfully able to possess
12    the firearm, ammunition, and firearm parts that could be
13    assembled to make an operable firearm if the person does not

14    reside at the same address as the respondent. Notice of the
15    petition shall be served upon the person protected by the
16    emergency firearms restraining order. While the order is in
17    effect, the transferee who receives the respondent's firearms,
18    ammunition, and firearm parts that could be assembled to make
19    an operable firearm must swear or affirm by affidavit that he
20    or she shall not transfer the firearm, ammunition, and firearm
21    parts that could be assembled to make an operable firearm to
22    the respondent or to anyone residing in the same residence as
23    the respondent.
24        (i-6) If a person other than the respondent claims title
25    to any firearms, ammunition, and firearm parts that could be
26    assembled to make an operable firearm surrendered under this

HB5471 Enrolled            - 67 -         LRB102 24372 BMS 33606 b

1    Section, he or she may petition the court, if the petitioner is
2    present in court or has notice of the petition, to have the
3    firearm, ammunition, and firearm parts that could be assembled
4    to make an operable firearm returned to him or her. If the
5    court determines that person to be the lawful owner of the
6    firearm, ammunition, and firearm parts that could be assembled
7    to make an operable firearm, the firearm, ammunition, and
8    firearm parts that could be assembled to make an operable
9    firearm shall be returned to him or her, provided that:
10        (1) the firearm, ammunition, and firearm parts that
11        could be assembled to make an operable firearm are removed
12        from the respondent's custody, control, or possession and
13        the lawful owner agrees to store the firearm, ammunition,
14        and firearm parts that could be assembled to make an
15        operable firearm in a manner such that the respondent does
16        not have access to or control of the firearm, ammunition,
17        and firearm parts that could be assembled to make an
18        operable firearm; and
19        (2) the firearm, ammunition, and firearm parts that
20        could be assembled to make an operable firearm are not
21        otherwise unlawfully possessed by the owner.
22    The person petitioning for the return of his or her
23    firearm, ammunition, and firearm parts that could be assembled
24    to make an operable firearm must swear or affirm by affidavit

25  that he or she: (i) is the lawful owner of the firearm,

26  ammunition, and firearm parts that could be assembled to make

HB5471 Enrolled        - 68 -       LRB102 24372 BMS 33606 b

1  an operable firearm; (ii) shall not transfer the firearm,

2  ammunition, and firearm parts that could be assembled to make

3  an operable firearm to the respondent; and (iii) will store

4  the firearm, ammunition, and firearm parts that could be

5  assembled to make an operable firearm in a manner that the

6  respondent does not have access to or control of the firearm,

7  ammunition, and firearm parts that could be assembled to make

8  an operable firearm.

9      (j) If the court does not issue a firearms restraining

10  order at the hearing, the court shall dissolve any emergency

11  firearms restraining order then in effect.

12      (k) When the court issues a firearms restraining order

13  under this Section, the court shall inform the respondent that

14  he or she is entitled to one hearing during the period of the

15  order to request a termination of the order, under Section 45

16  of this Act, and shall provide the respondent with a form to

17  request a hearing.

18  (Source: P.A. 101-81, eff. 7-12-19; 102-237, eff. 1-1-22;

19  102-345, eff. 6-1-22; 102-538, eff. 8-20-21; 102-813, eff.

20  5-13-22.)

21      (430 ILCS 67/45)

22      Sec. 45. Termination and renewal.

23      (a) A person subject to a firearms restraining order

24  issued under this Act may submit one written request at any

25  time during the effective period of the order for a hearing to

HB5471 Enrolled        - 69 -       LRB102 24372 BMS 33606 b

1  terminate the order.

2          (1) The respondent shall have the burden of proving by

3      a preponderance of the evidence that the respondent does

4      not pose a danger of causing personal injury to himself,

5      herself, or another in the near future by having in his or

6      her custody or control, purchasing, possessing, or

7  receiving a firearm, ammunition, and firearm parts that

8  could be assembled to make an operable firearm.

9      (2) If the court finds after the hearing that the

10  respondent has met his or her burden, the court shall

11  terminate the order.

12  (b) A petitioner may request a renewal of a firearms

13  restraining order at any time within the 3 months before the

14  expiration of a firearms restraining order.

15      (1) A court shall, after notice and a hearing, renew a

16  firearms restraining order issued under this part if the

17  petitioner proves, by clear and convincing evidence, that

18  the respondent continues to pose a danger of causing

19  personal injury to himself, herself, or another in the

20  near future by having in his or her custody or control,

21  purchasing, possessing, or receiving a firearm,

22  ammunition, and firearm parts that could be assembled to

23  make an operable firearm.

24      (2) In determining whether to renew a firearms

25  restraining order issued under this Act, the court shall

26  consider evidence of the facts identified in subsection

HB5471 Enrolled          - 70 -          LRB102 24372 BMS 33606 b

1  (e) of Section 40 of this Act and any other evidence of an

2  increased risk for violence.

3      (3) At the hearing, the petitioner shall have the

4  burden of proving by clear and convincing evidence that

5  the respondent continues to pose a danger of causing

6  personal injury to himself, herself, or another in the

7  near future by having in his or her custody or control,

8  purchasing, possessing, or receiving a firearm,

9  ammunition, and firearm parts that could be assembled to

10  make an operable firearm.

11      (4) The renewal of a firearms restraining order issued

12  under this Section shall be in effect for up to one year

13  and may be renewed for an additional period of up to one

14  year 6 months, subject to termination by further order of

15  the court at a hearing held under this Section and further

16  renewal by further order of the court under this Section.

17   (Source: P.A. 101-81, eff. 7-12-19; 102-345, eff. 6-1-22.)

18      (430 ILCS 67/55)
19      Sec. 55. Data maintenance by law enforcement agencies.
20      (a) All sheriffs shall furnish to the Illinois State
21   Police, daily, in the form and detail the Illinois State
22   Police ~~Department~~ requires, copies of any recorded firearms
23   restraining orders issued by the court, and any foreign orders
24   of protection filed by the clerk of the court, and transmitted
25   to the sheriff by the clerk of the court under Section 50. Each

HB5471 Enrolled            - 71 -            LRB102 24372 BMS 33606 b

1    firearms restraining order shall be entered in the Law
2    Enforcement Agencies Data System (LEADS) on the same day it is
3    issued by the court. If an emergency firearms restraining
4    order was issued in accordance with Section 35 of this Act, the
5    order shall be entered in the Law Enforcement Agencies Data
6    System (LEADS) as soon as possible after receipt from the
7    clerk.
8       (b) The Illinois State Police shall maintain a complete
9    and systematic record and index of all valid and recorded
10   firearms restraining orders issued or filed under this Act.
11   The data shall be used to inform all dispatchers and law
12   enforcement officers at the scene of a violation of a firearms
13   restraining order of the effective dates and terms of any
14   recorded order of protection.
15      (c) The data, records, and transmittals required under
16   this Section shall pertain to any valid emergency or plenary
17   ~~6-month~~ firearms restraining order, whether issued in a civil
18   or criminal proceeding or authorized under the laws of another
19   state, tribe, or United States territory.
20   (Source: P.A. 101-81, eff. 7-12-19; 102-538, eff. 8-20-21.)

21      Section 25. The Criminal Code of 2012 is amended by
22   changing Section 24-1 and by adding Sections 24-1.9 and
23   24-1.10 as follows:

24      (720 ILCS 5/24-1)  (from Ch. 38, par. 24-1)

HB5471 Enrolled            - 72 -            LRB102 24372 BMS 33606 b

1       Sec. 24-1. Unlawful use of weapons.
2       (a) A person commits the offense of unlawful use of
3   weapons when he knowingly:
4           (1) Sells, manufactures, purchases, possesses or
5       carries any bludgeon, black-jack, slung-shot, sand-club,
6       sand-bag, metal knuckles or other knuckle weapon
7       regardless of its composition, throwing star, or any
8       knife, commonly referred to as a switchblade knife, which
9       has a blade that opens automatically by hand pressure
10      applied to a button, spring or other device in the handle
11      of the knife, or a ballistic knife, which is a device that
12      propels a knifelike blade as a projectile by means of a
13      coil spring, elastic material or compressed gas; or
14          (2) Carries or possesses with intent to use the same
15      unlawfully against another, a dagger, dirk, billy,
16      dangerous knife, razor, stiletto, broken bottle or other
17      piece of glass, stun gun or taser or any other dangerous or
18      deadly weapon or instrument of like character; or
19          (2.5) Carries or possesses with intent to use the same
20      unlawfully against another, any firearm in a church,
21      synagogue, mosque, or other building, structure, or place
22      used for religious worship; or
23          (3) Carries on or about his person or in any vehicle, a
24      tear gas gun projector or bomb or any object containing
25      noxious liquid gas or substance, other than an object
26      containing a non-lethal noxious liquid gas or substance

HB5471 Enrolled          - 73 -         LRB102 24372 BMS 33606 b

1       designed solely for personal defense carried by a person
2       18 years of age or older; or
3           (4) Carries or possesses in any vehicle or concealed
4       on or about his person except when on his land or in his
5       own abode, legal dwelling, or fixed place of business, or
6       on the land or in the legal dwelling of another person as
7       an invitee with that person's permission, any pistol,
8       revolver, stun gun or taser or other firearm, except that
9       this subsection (a) (4) does not apply to or affect
10      transportation of weapons that meet one of the following

11    conditions:
12         (i) are broken down in a non-functioning state; or
13         (ii) are not immediately accessible; or
14         (iii) are unloaded and enclosed in a case, firearm
15    carrying box, shipping box, or other container by a
16    person who has been issued a currently valid Firearm
17    Owner's Identification Card; or
18         (iv) are carried or possessed in accordance with
19    the Firearm Concealed Carry Act by a person who has
20    been issued a currently valid license under the
21    Firearm Concealed Carry Act; or
22    (5) Sets a spring gun; or
23    (6) Possesses any device or attachment of any kind
24    designed, used or intended for use in silencing the report
25    of any firearm; or
26         (7) Sells, manufactures, purchases, possesses or

HB5471 Enrolled        - 74 -        LRB102 24372 BMS 33606 b

1    carries:
2         (i) a machine gun, which shall be defined for the
3    purposes of this subsection as any weapon, which
4    shoots, is designed to shoot, or can be readily
5    restored to shoot, automatically more than one shot
6    without manually reloading by a single function of the
7    trigger, including the frame or receiver of any such
8    weapon, or sells, manufactures, purchases, possesses,
9    or carries any combination of parts designed or
10    intended for use in converting any weapon into a
11    machine gun, or any combination or parts from which a
12    machine gun can be assembled if such parts are in the
13    possession or under the control of a person;
14         (ii) any rifle having one or more barrels less
15    than 16 inches in length or a shotgun having one or
16    more barrels less than 18 inches in length or any
17    weapon made from a rifle or shotgun, whether by
18    alteration, modification, or otherwise, if such a
19    weapon as modified has an overall length of less than
20    26 inches; or
21         (iii) any bomb, bomb-shell, grenade, bottle or

22          other container containing an explosive substance of
23          over one-quarter ounce for like purposes, such as, but
24          not limited to, black powder bombs and Molotov
25          cocktails or artillery projectiles; or
26          (8) Carries or possesses any firearm, stun gun or

HB5471 Enrolled            - 75 -          LRB102 24372 BMS 33606 b

1       taser or other deadly weapon in any place which is
2       licensed to sell intoxicating beverages, or at any public
3       gathering held pursuant to a license issued by any
4       governmental body or any public gathering at which an
5       admission is charged, excluding a place where a showing,
6       demonstration or lecture involving the exhibition of
7       unloaded firearms is conducted.
8          This subsection (a)(8) does not apply to any auction
9       or raffle of a firearm held pursuant to a license or permit
10      issued by a governmental body, nor does it apply to
11      persons engaged in firearm safety training courses; or
12          (9) Carries or possesses in a vehicle or on or about
13      his or her person any pistol, revolver, stun gun or taser
14      or firearm or ballistic knife, when he or she is hooded,
15      robed or masked in such manner as to conceal his or her
16      identity; or
17          (10) Carries or possesses on or about his or her
18      person, upon any public street, alley, or other public
19      lands within the corporate limits of a city, village, or
20      incorporated town, except when an invitee thereon or
21      therein, for the purpose of the display of such weapon or
22      the lawful commerce in weapons, or except when on his land
23      or in his or her own abode, legal dwelling, or fixed place
24      of business, or on the land or in the legal dwelling of
25      another person as an invitee with that person's
26      permission, any pistol, revolver, stun gun, or taser or

HB5471 Enrolled            - 76 -          LRB102 24372 BMS 33606 b

1       other firearm, except that this subsection (a) (10) does

2    not apply to or affect transportation of weapons that meet
3    one of the following conditions:
4        (i) are broken down in a non-functioning state; or
5        (ii) are not immediately accessible; or
6        (iii) are unloaded and enclosed in a case, firearm
7        carrying box, shipping box, or other container by a
8        person who has been issued a currently valid Firearm
9        Owner's Identification Card; or
10       (iv) are carried or possessed in accordance with
11       the Firearm Concealed Carry Act by a person who has
12       been issued a currently valid license under the
13       Firearm Concealed Carry Act.
14     A "stun gun or taser", as used in this paragraph (a)
15    means (i) any device which is powered by electrical
16    charging units, such as, batteries, and which fires one or
17    several barbs attached to a length of wire and which, upon
18    hitting a human, can send out a current capable of
19    disrupting the person's nervous system in such a manner as
20    to render him incapable of normal functioning or (ii) any
21    device which is powered by electrical charging units, such
22    as batteries, and which, upon contact with a human or
23    clothing worn by a human, can send out current capable of
24    disrupting the person's nervous system in such a manner as
25    to render him incapable of normal functioning; or
26     (11) Sells, manufactures, <u>delivers, imports,</u>

HB5471 Enrolled       - 77 -      LRB102 24372 BMS 33606 b

1    <u>possesses,</u> or purchases any <u>assault weapon attachment or</u>
2    <u>.50 caliber cartridge in violation of Section 24-1.9 or</u>
3    <u>any</u> explosive bullet. For purposes of this paragraph (a)
4    "explosive bullet" means the projectile portion of an
5    ammunition cartridge which contains or carries an
6    explosive charge which will explode upon contact with the
7    flesh of a human or an animal. "Cartridge" means a tubular
8    metal case having a projectile affixed at the front
9    thereof and a cap or primer at the rear end thereof, with
10   the propellant contained in such tube between the
11   projectile and the cap; or

12      (12) (Blank); or

13      (13) Carries or possesses on or about his or her

14  person while in a building occupied by a unit of

15  government, a billy club, other weapon of like character,

16  or other instrument of like character intended for use as

17  a weapon. For the purposes of this Section, "billy club"

18  means a short stick or club commonly carried by police

19  officers which is either telescopic or constructed of a

20  solid piece of wood or other man-made material; or

21      (14) Manufactures, possesses, sells, or offers to

22  sell, purchase, manufacture, import, transfer, or use any

23  device, part, kit, tool, accessory, or combination of

24  parts that is designed to and functions to increase the

25  rate of fire of a semiautomatic firearm above the standard

26  rate of fire for semiautomatic firearms that is not


HB5471 Enrolled        - 78 -        LRB102 24372 BMS 33606 b


1   equipped with that device, part, or combination of parts;

2   or

3       (15) Carries or possesses any assault weapon or .50

4   caliber rifle in violation of Section 24-1.9; or

5       (16) Manufactures, sells, delivers, imports, or

6   purchases any assault weapon or .50 caliber rifle in

7   violation of Section 24-1.9.

8       (b) Sentence. A person convicted of a violation of

9   subsection 24-1(a)(1) through (5), subsection 24-1(a)(10),

10  subsection 24-1(a)(11), or subsection 24-1(a)(13), or

11  24-1(a)(15) commits a Class A misdemeanor. A person convicted

12  of a violation of subsection 24-1(a)(8) or 24-1(a)(9) commits

13  a Class 4 felony; a person convicted of a violation of

14  subsection 24-1(a)(6), or 24-1(a)(7)(ii), 24-1(a)(7)(iii), or

15  24-1(a)(16) or (iii) commits a Class 3 felony. A person

16  convicted of a violation of subsection 24-1(a)(7)(i) commits a

17  Class 2 felony and shall be sentenced to a term of imprisonment

18  of not less than 3 years and not more than 7 years, unless the

19  weapon is possessed in the passenger compartment of a motor

20  vehicle as defined in Section 1-146 of the Illinois Vehicle

21  Code, or on the person, while the weapon is loaded, in which

22  case it shall be a Class X felony. A person convicted of a

23    second or subsequent violation of subsection 24-1(a)(4),
24    24-1(a)(8), 24-1(a)(9), or 24-1(a)(10), or 24-1(a)(15)
25    commits a Class 3 felony. A person convicted of a violation of
26    subsection 24-1(a)(2.5) or 24-1(a)(14) commits a Class 2

HB5471 Enrolled          - 79 -          LRB102 24372 BMS 33606 b

1    felony. The possession of each weapon or device in violation
2    of this Section constitutes a single and separate violation.
3        (c) Violations in specific places.
4            (1) A person who violates subsection 24-1(a)(6) or
5        24-1(a)(7) in any school, regardless of the time of day or
6        the time of year, in residential property owned, operated
7        or managed by a public housing agency or leased by a public
8        housing agency as part of a scattered site or mixed-income
9        development, in a public park, in a courthouse, on the
10       real property comprising any school, regardless of the
11       time of day or the time of year, on residential property
12       owned, operated or managed by a public housing agency or
13       leased by a public housing agency as part of a scattered
14       site or mixed-income development, on the real property
15       comprising any public park, on the real property
16       comprising any courthouse, in any conveyance owned, leased
17       or contracted by a school to transport students to or from
18       school or a school related activity, in any conveyance
19       owned, leased, or contracted by a public transportation
20       agency, or on any public way within 1,000 feet of the real
21       property comprising any school, public park, courthouse,
22       public transportation facility, or residential property
23       owned, operated, or managed by a public housing agency or
24       leased by a public housing agency as part of a scattered
25       site or mixed-income development commits a Class 2 felony
26       and shall be sentenced to a term of imprisonment of not

HB5471 Enrolled          - 80 -          LRB102 24372 BMS 33606 b

1    less than 3 years and not more than 7 years.
2        (1.5) A person who violates subsection 24-1(a)(4),

3    24-1(a)(9), or 24-1(a)(10) in any school, regardless of
4    the time of day or the time of year, in residential
5    property owned, operated, or managed by a public housing
6    agency or leased by a public housing agency as part of a
7    scattered site or mixed-income development, in a public
8    park, in a courthouse, on the real property comprising any
9    school, regardless of the time of day or the time of year,
10   on residential property owned, operated, or managed by a
11   public housing agency or leased by a public housing agency
12   as part of a scattered site or mixed-income development,
13   on the real property comprising any public park, on the
14   real property comprising any courthouse, in any conveyance
15   owned, leased, or contracted by a school to transport
16   students to or from school or a school related activity,
17   in any conveyance owned, leased, or contracted by a public
18   transportation agency, or on any public way within 1,000
19   feet of the real property comprising any school, public
20   park, courthouse, public transportation facility, or
21   residential property owned, operated, or managed by a
22   public housing agency or leased by a public housing agency
23   as part of a scattered site or mixed-income development
24   commits a Class 3 felony.
25       (2) A person who violates subsection 24-1(a)(1),
26   24-1(a)(2), or 24-1(a)(3) in any school, regardless of the

HB5471 Enrolled          - 81 -          LRB102 24372 BMS 33606 b

1    time of day or the time of year, in residential property
2    owned, operated or managed by a public housing agency or
3    leased by a public housing agency as part of a scattered
4    site or mixed-income development, in a public park, in a
5    courthouse, on the real property comprising any school,
6    regardless of the time of day or the time of year, on
7    residential property owned, operated or managed by a
8    public housing agency or leased by a public housing agency
9    as part of a scattered site or mixed-income development,
10   on the real property comprising any public park, on the
11   real property comprising any courthouse, in any conveyance
12   owned, leased or contracted by a school to transport

13    students to or from school or a school related activity,
14    in any conveyance owned, leased, or contracted by a public
15    transportation agency, or on any public way within 1,000
16    feet of the real property comprising any school, public
17    park, courthouse, public transportation facility, or
18    residential property owned, operated, or managed by a
19    public housing agency or leased by a public housing agency
20    as part of a scattered site or mixed-income development
21    commits a Class 4 felony. "Courthouse" means any building
22    that is used by the Circuit, Appellate, or Supreme Court
23    of this State for the conduct of official business.
24        (3) Paragraphs (1), (1.5), and (2) of this subsection
25    (c) shall not apply to law enforcement officers or
26    security officers of such school, college, or university

HB5471 Enrolled            - 82 -        LRB102 24372 BMS 33606 b

1    or to students carrying or possessing firearms for use in
2    training courses, parades, hunting, target shooting on
3    school ranges, or otherwise with the consent of school
4    authorities and which firearms are transported unloaded
5    enclosed in a suitable case, box, or transportation
6    package.
7        (4) For the purposes of this subsection (c), "school"
8    means any public or private elementary or secondary
9    school, community college, college, or university.
10       (5) For the purposes of this subsection (c), "public
11   transportation agency" means a public or private agency
12   that provides for the transportation or conveyance of
13   persons by means available to the general public, except
14   for transportation by automobiles not used for conveyance
15   of the general public as passengers; and "public
16   transportation facility" means a terminal or other place
17   where one may obtain public transportation.
18       (d) The presence in an automobile other than a public
19   omnibus of any weapon, instrument or substance referred to in
20   subsection (a)(7) is prima facie evidence that it is in the
21   possession of, and is being carried by, all persons occupying
22   such automobile at the time such weapon, instrument or
23   substance is found, except under the following circumstances:

24  (i) if such weapon, instrument or instrumentality is found

25  upon the person of one of the occupants therein; or (ii) if

26  such weapon, instrument or substance is found in an automobile

HB5471 Enrolled          - 83 -          LRB102 24372 BMS 33606 b

1   operated for hire by a duly licensed driver in the due, lawful

2   and proper pursuit of his or her trade, then such presumption

3   shall not apply to the driver.

4       (e) Exemptions.

5           (1) Crossbows, Common or Compound bows and Underwater

6       Spearguns are exempted from the definition of ballistic

7       knife as defined in paragraph (1) of subsection (a) of

8       this Section.

9           (2) The provision of paragraph (1) of subsection (a)

10      of this Section prohibiting the sale, manufacture,

11      purchase, possession, or carrying of any knife, commonly

12      referred to as a switchblade knife, which has a blade that

13      opens automatically by hand pressure applied to a button,

14      spring or other device in the handle of the knife, does not

15      apply to a person who possesses a currently valid Firearm

16      Owner's Identification Card previously issued in his or

17      her name by the Illinois State Police or to a person or an

18      entity engaged in the business of selling or manufacturing

19      switchblade knives.

20  (Source: P.A. 101-223, eff. 1-1-20; 102-538, eff. 8-20-21.)

21      (720 ILCS 5/24-1.9 new)

22      Sec. 24-1.9. Manufacture, possession, delivery, sale, and

23  purchase of assault weapons, .50 caliber rifles, and .50

24  caliber cartridges.

25      (a) Definitions. In this Section:

HB5471 Enrolled          - 84 -          LRB102 24372 BMS 33606 b

1       (1) "Assault weapon" means any of the following, except as

2   provided in subdivision (2) of this subsection:

3           (A) A semiautomatic rifle that has the capacity to

4       accept a detachable magazine or that may be readily

5      modified to accept a detachable magazine, if the firearm
6      has one or more of the following:
7              (i) a pistol grip or thumbhole stock;
8              (ii) any feature capable of functioning as a
9      protruding grip that can be held by the non-trigger
10     hand;
11             (iii) a folding, telescoping, thumbhole, or
12     detachable stock, or a stock that is otherwise
13     foldable or adjustable in a manner that operates to
14     reduce the length, size, or any other dimension, or
15     otherwise enhances the concealability of, the weapon;
16             (iv) a flash suppressor;
17             (v) a grenade launcher;
18             (vi) a shroud attached to the barrel or that
19     partially or completely encircles the barrel, allowing
20     the bearer to hold the firearm with the non-trigger
21     hand without being burned, but excluding a slide that
22     encloses the barrel.
23         (B) A semiautomatic rifle that has a fixed magazine
24     with the capacity to accept more than 10 rounds, except
25     for an attached tubular device designed to accept, and
26     capable of operating only with, .22 caliber rimfire

HB5471 Enrolled          - 85 -          LRB102 24372 BMS 33606 b

1      ammunition.
2          (C) A semiautomatic pistol that has the capacity to
3      accept a detachable magazine or that may be readily
4      modified to accept a detachable magazine, if the firearm
5      has one or more of the following:
6              (i) a threaded barrel;
7              (ii) a second pistol grip or another feature
8      capable of functioning as a protruding grip that can
9      be held by the non-trigger hand;
10             (iii) a shroud attached to the barrel or that
11     partially or completely encircles the barrel, allowing
12     the bearer to hold the firearm with the non-trigger
13     hand without being burned, but excluding a slide that
14     encloses the barrel;
15             (iv) a flash suppressor;

16      (v) the capacity to accept a detachable magazine
17    at some location outside of the pistol grip; or
18      (vi) a buffer tube, arm brace, or other part that
19    protrudes horizontally behind the pistol grip and is
20    designed or redesigned to allow or facilitate a
21    firearm to be fired from the shoulder.
22     (D) A semiautomatic pistol that has a fixed magazine
23 with the capacity to accept more than 15 rounds.
24     (E) Any shotgun with a revolving cylinder.
25     (F) A semiautomatic shotgun that has one or more of
26 the following:

HB5471 Enrolled     - 86 -     LRB102 24372 BMS 33606 b

1      (i) a pistol grip or thumbhole stock;
2      (ii) any feature capable of functioning as a
3    protruding grip that can be held by the non-trigger
4    hand;
5      (iii) a folding or thumbhole stock;
6      (iv) a grenade launcher;
7      (v) a fixed magazine with the capacity of more
8    than 5 rounds; or
9      (vi) the capacity to accept a detachable magazine.
10     (G) Any semiautomatic firearm that has the capacity to
11 accept a belt ammunition feeding device.
12     (H) Any firearm that has been modified to be operable
13 as an assault weapon as defined in this Section.
14     (I) Any part or combination of parts designed or
15 intended to convert a firearm into an assault weapon,
16 including any combination of parts from which an assault
17 weapon may be readily assembled if those parts are in the
18 possession or under the control of the same person.
19     (J) All of the following rifles, copies, duplicates,
20 variants, or altered facsimiles with the capability of any
21 such weapon:
22      (i) All AK types, including the following:
23        (I) AK, AK47, AK47S, AK-74, AKM, AKS, ARM,
24       MAK90, MISR, NHM90, NHM91, SA85, SA93, Vector Arms
25       AK-47, VEPR, WASR-10, and WUM.
26        (II) IZHMASH Saiga AK.

HB5471 Enrolled           - 87 -        LRB102 24372 BMS 33606 b

1              (III) MAADI AK47 and ARM.

2              (IV) Norinco 56S, 56S2, 84S, and 86S.

3              (V) Poly Technologies AK47 and AKS.

4              (VI) SKS with a detachable magazine.

5         (ii) all AR types, including the following:

6              (I) AR-10.

7              (II) AR-15.

8              (III) Alexander Arms Overmatch Plus 16.

9              (IV) Armalite M15 22LR Carbine.

10             (V) Armalite M15-T.

11             (VI) Barrett REC7.

12             (VII) Beretta AR-70.

13             (VIII) Black Rain Ordnance Recon Scout.

14             (IX) Bushmaster ACR.

15             (X) Bushmaster Carbon 15.

16             (XI) Bushmaster MOE series.

17             (XII) Bushmaster XM15.

18             (XIII) Chiappa Firearms MFour rifles.

19             (XIV) Colt Match Target rifles.

20             (XV) CORE Rifle Systems CORE15 rifles.

21             (XVI) Daniel Defense M4A1 rifles.

22             (XVII) Devil Dog Arms 15 Series rifles.

23             (XVIII) Diamondback DB15 rifles.

24             (XIX) DoubleStar AR rifles.

25             (XX) DPMS Tactical rifles.

26             (XXI) DSA Inc. ZM-4 Carbine.


HB5471 Enrolled           - 88 -        LRB102 24372 BMS 33606 b

1              (XXII) Heckler & Koch MR556.

2              (XXIII) High Standard HSA-15 rifles.

3              (XXIV) Jesse James Nomad AR-15 rifle.

4              (XXV) Knight's Armament SR-15.

5              (XXVI) Lancer L15 rifles.

6              (XXVII) MGI Hydra Series rifles.

7              (XXVIII) Mossberg MMR Tactical rifles.

8       (XXIX) Noreen Firearms BN 36 rifle.

9       (XXX) Olympic Arms.

10       (XXXI) POF USA P415.

11       (XXXII) Precision Firearms AR rifles.

12       (XXXIII) Remington R-15 rifles.

13       (XXXIV) Rhino Arms AR rifles.

14       (XXXV) Rock River Arms LAR-15 or Rock River

15 Arms LAR-47.

16       (XXXVI) Sig Sauer SIG516 rifles and MCX

17 rifles.

18       (XXXVII) Smith & Wesson M&P15 rifles.

19       (XXXVIII) Stag Arms AR rifles.

20       (XXXIX) Sturm, Ruger & Co. SR556 and AR-556

21 rifles.

22       (XL) Uselton Arms Air-Lite M-4 rifles.

23       (XLI) Windham Weaponry AR rifles.

24       (XLII) WMD Guns Big Beast.

25       (XLIII) Yankee Hill Machine Company, Inc.

26 YHM-15 rifles.

HB5471 Enrolled     - 89 -     LRB102 24372 BMS 33606 b

1       (iii) Barrett M107A1.

2       (iv) Barrett M82A1.

3       (v) Beretta CX4 Storm.

4       (vi) Calico Liberty Series.

5       (vii) CETME Sporter.

6       (viii) Daewoo K-1, K-2, Max 1, Max 2, AR 100, and

7 AR 110C.

8       (ix) Fabrique Nationale/FN Herstal FAL, LAR, 22

9 FNC, 308 Match, L1A1 Sporter, PS90, SCAR, and FS2000.

10       (x) Feather Industries AT-9.

11       (xi) Galil Model AR and Model ARM.

12       (xii) Hi-Point Carbine.

13       (xiii) HK-91, HK-93, HK-94, HK-PSG-1, and HK USC.

14       (xiv) IWI TAVOR, Galil ACE rifle.

15       (xv) Kel-Tec Sub-2000, SU-16, and RFB.

16       (xvi) SIG AMT, SIG PE-57, Sig Sauer SG 550, Sig

17 Sauer SG 551, and SIG MCX.

18       (xvii) Springfield Armory SAR-48.

19    (xviii) Steyr AUG.

20    (xix) Sturm, Ruger & Co. Mini-14 Tactical Rifle

21   M-14/20CF.

22    (xx) All Thompson rifles, including the following:

23     (I) Thompson M1SB.

24     (II) Thompson T1100D.

25     (III) Thompson T150D.

26     (IV) Thompson T1B.

HB5471 Enrolled    - 90 -     LRB102 24372 BMS 33606 b

1     (V) Thompson T1B100D.

2     (VI) Thompson T1B50D.

3     (VII) Thompson T1BSB.

4     (VIII) Thompson T1-C.

5     (IX) Thompson T1D.

6     (X) Thompson T1SB.

7     (XI) Thompson T5.

8     (XII) Thompson T5100D.

9     (XIII) Thompson TM1.

10     (XIV) Thompson TM1C.

11    (xxi) UMAREX UZI rifle.

12    (xxii) UZI Mini Carbine, UZI Model A Carbine, and

13   UZI Model B Carbine.

14    (xxiii) Valmet M62S, M71S, and M78.

15    (xxiv) Vector Arms UZI Type.

16    (xxv) Weaver Arms Nighthawk.

17    (xxvi) Wilkinson Arms Linda Carbine.

18   (K) All of the following pistols, copies, duplicates,

19  variants, or altered facsimiles with the capability of any

20  such weapon thereof:

21    (i) All AK types, including the following:

22     (I) Centurion 39 AK pistol.

23     (II) CZ Scorpion pistol.

24     (III) Draco AK-47 pistol.

25     (IV) HCR AK-47 pistol.

26     (V) IO Inc. Hellpup AK-47 pistol.

HB5471 Enrolled    - 91 -     LRB102 24372 BMS 33606 b

1          (VI) Krinkov pistol.

2          (VII) Mini Draco AK-47 pistol.

3          (VIII) PAP M92 pistol.

4          (IX) Yugo Krebs Krink pistol.

5      (ii) All AR types, including the following:

6          (I) American Spirit AR-15 pistol.

7          (II) Bushmaster Carbon 15 pistol.

8          (III) Chiappa Firearms M4 Pistol GEN II.

9          (IV) CORE Rifle Systems CORE15 Roscoe pistol.

10         (V) Daniel Defense MK18 pistol.

11         (VI) DoubleStar Corporation AR pistol.

12         (VII) DPMS AR-15 pistol.

13         (VIII) Jesse James Nomad AR-15 pistol.

14         (IX) Olympic Arms AR-15 pistol.

15         (X) Osprey Armament MK-18 pistol.

16         (XI) POF USA AR pistols.

17         (XII) Rock River Arms LAR 15 pistol.

18         (XIII) Uselton Arms Air-Lite M-4 pistol.

19     (iii) Calico pistols.

20     (iv) DSA SA58 PKP FAL pistol.

21     (v) Encom MP-9 and MP-45.

22     (vi) Heckler & Koch model SP-89 pistol.

23     (vii) Intratec AB-10, TEC-22 Scorpion, TEC-9, and

24 TEC-DC9.

25     (viii) IWI Galil Ace pistol, UZI PRO pistol.

26     (ix) Kel-Tec PLR 16 pistol.


HB5471 Enrolled          - 92 -          LRB102 24372 BMS 33606 b


1      (x) All MAC types, including the following:

2          (I) MAC-10.

3          (II) MAC-11.

4          (III) Masterpiece Arms MPA A930 Mini Pistol,

5      MPA460 Pistol, MPA Tactical Pistol, and MPA Mini

6      Tactical Pistol.

7          (IV) Military Armament Corp. Ingram M-11.

8          (V) Velocity Arms VMAC.

9      (xi) Sig Sauer P556 pistol.

10     (xii) Sites Spectre.

11     (xiii) All Thompson types, including the

| 12 | following: |
| 13 | (I) Thompson TA510D. |
| 14 | (II) Thompson TA5. |
| 15 | (xiv) All UZI types, including Micro-UZI. |
| 16 | (L) All of the following shotguns, copies, duplicates, |
| 17 | variants, or altered facsimiles with the capability of any |
| 18 | such weapon thereof: |
| 19 | (i) DERYA Anakon MC-1980, Anakon SD12. |
| 20 | (ii) Doruk Lethal shotguns. |
| 21 | (iii) Franchi LAW-12 and SPAS 12. |
| 22 | (iv) All IZHMASH Saiga 12 types, including the |
| 23 | following: |
| 24 | (I) IZHMASH Saiga 12. |
| 25 | (II) IZHMASH Saiga 12S. |
| 26 | (III) IZHMASH Saiga 12S EXP-01. |

HB5471 Enrolled          - 93 -          LRB102 24372 BMS 33606 b

| 1 | (IV) IZHMASH Saiga 12K. |
| 2 | (V) IZHMASH Saiga 12K-030. |
| 3 | (VI) IZHMASH Saiga 12K-040 Taktika. |
| 4 | (v) Streetsweeper. |
| 5 | (vi) Striker 12. |
| 6 | (2) "Assault weapon" does not include: |
| 7 | (A) Any firearm that is an unserviceable firearm or |
| 8 | has been made permanently inoperable. |
| 9 | (B) An antique firearm or a replica of an antique |
| 10 | firearm. |
| 11 | (C) A firearm that is manually operated by bolt, pump, |
| 12 | lever or slide action, unless the firearm is a shotgun |
| 13 | with a revolving cylinder. |
| 14 | (D) Any air rifle as defined in Section 24.8-0.1 of |
| 15 | this Code. |
| 16 | (E) Any handgun, as defined under the Firearm |
| 17 | Concealed Carry Act, unless otherwise listed in this |
| 18 | Section. |
| 19 | (3) "Assault weapon attachment" means any device capable |
| 20 | of being attached to a firearm that is specifically designed |
| 21 | for making or converting a firearm into any of the firearms |
| 22 | listed in paragraph (1) of this subsection (a). |

23      (4) "Antique firearm" has the meaning ascribed to it in 18

24  U.S.C. 921(a)(16).

25      (5) ".50 caliber rifle" means a centerfire rifle capable

26  of firing a .50 caliber cartridge. The term does not include


HB5471 Enrolled          - 94 -          LRB102 24372 BMS 33606 b


1  any antique firearm, any shotgun including a shotgun that has

2  a rifle barrel, or any muzzle-loader which uses black powder

3  for hunting or historical reenactments.

4      (6) ".50 caliber cartridge" means a cartridge in .50 BMG

5  caliber, either by designation or actual measurement, that is

6  capable of being fired from a centerfire rifle. The term ".50

7  caliber cartridge" does not include any memorabilia or display

8  item that is filled with a permanent inert substance or that is

9  otherwise permanently altered in a manner that prevents ready

10  modification for use as live ammunition or shotgun ammunition

11  with a caliber measurement that is equal to or greater than .50

12  caliber.

13      (7) "Detachable magazine" means an ammunition feeding

14  device that may be removed from a firearm without disassembly

15  of the firearm action, including an ammunition feeding device

16  that may be readily removed from a firearm with the use of a

17  bullet, cartridge, accessory, or other tool, or any other

18  object that functions as a tool, including a bullet or

19  cartridge.

20      (8) "Fixed magazine" means an ammunition feeding device

21  that is permanently attached to a firearm, or contained in and

22  not removable from a firearm, or that is otherwise not a

23  detachable magazine, but does not include an attached tubular

24  device designed to accept, and capable of operating only with,

25  .22 caliber rimfire ammunition.

26      (b) Except as provided in subsections (c), (d), and (e),


HB5471 Enrolled          - 95 -          LRB102 24372 BMS 33606 b


1  on or after the effective date of this amendatory Act of the

2  102nd General Assembly, it is unlawful for any person within

3  this State to knowingly manufacture, deliver, sell, import, or

4    purchase or cause to be manufactured, delivered, sold,

5    imported, or purchased by another, an assault weapon, assault

6    weapon attachment, .50 caliber rifle, or .50 caliber

7    cartridge.

8        (c) Except as otherwise provided in subsection (d),

9    beginning January 1, 2024, it is unlawful for any person

10   within this State to knowingly possess an assault weapon,

11   assault weapon attachment, .50 caliber rifle, or .50 caliber

12   cartridge.

13       (d) This Section does not apply to a person's possession

14   of an assault weapon, assault weapon attachment, .50 caliber

15   rifle, or .50 caliber cartridge device if the person lawfully

16   possessed that assault weapon, assault weapon attachment, .50

17   caliber rifle, or .50 caliber cartridge prohibited by

18   subsection (c) of this Section, if the person has provided in

19   an endorsement affidavit, prior to January 1, 2024, under oath

20   or affirmation and in the form and manner prescribed by the

21   Illinois State Police, no later than October 1, 2023:

22           (1) the affiant's Firearm Owner's Identification Card

23       number;

24           (2) an affirmation that the affiant: (i) possessed an

25       assault weapon, assault weapon attachment, .50 caliber

26       rifle, or .50 caliber cartridge before the effective date


HB5471 Enrolled         - 96 -        LRB102 24372 BMS 33606 b


1        of this amendatory Act of the 102nd General Assembly; or

2        (ii) inherited the assault weapon, assault weapon

3        attachment, .50 caliber rifle, or .50 caliber cartridge

4        from a person with an endorsement under this Section or

5        from a person authorized under subdivisions (1) through

6        (5) of subsection (e) to possess the assault weapon,

7        assault weapon attachment, .50 caliber rifle, or .50

8        caliber cartridge; and

9            (3) the make, model, caliber, and serial number of the

10       .50 caliber rifle or assault weapon or assault weapons

11       listed in paragraphs (J), (K), and (L) of subdivision (1)

12       of subsection (a) of this Section possessed by the affiant

13       prior to the effective date of this amendatory Act of the

14       102nd General Assembly and any assault weapons identified

15    and published by the Illinois State Police pursuant to
16    this subdivision (3). No later than October 1, 2023, and
17    every October 1 thereafter, the Illinois State Police
18    shall, via rulemaking, identify, publish, and make
19    available on its website, the list of assault weapons
20    subject to an endorsement affidavit under this subsection
21    (d). The list shall identify, but is not limited to, the
22    copies, duplicates, variants, and altered facsimiles of
23    the assault weapons identified in paragraphs (J), (K), and
24    (L) of subdivision (1) of subsection (a) of this Section
25    and shall be consistent with the definition of "assault
26    weapon" identified in this Section. The Illinois State

HB5471 Enrolled            - 97 -            LRB102 24372 BMS 33606 b

1    Police may adopt emergency rulemaking in accordance with
2    Section 5-45 of the Illinois Administrative Procedure Act.
3    The adoption of emergency rules authorized by Section 5-45
4    of the Illinois Administrative Procedure Act and this
5    paragraph is deemed to be necessary for the public
6    interest, safety, and welfare.
7        The affidavit form shall include the following statement
8    printed in bold type: "Warning: Entering false information on
9    this form is punishable as perjury under Section 32-2 of the
10    Criminal Code of 2012. Entering false information on this form
11    is a violation of the Firearm Owners Identification Card Act."
12        In any administrative, civil, or criminal proceeding in
13    this State, a completed endorsement affidavit submitted to the
14    Illinois State Police by a person under this Section creates a
15    rebuttable presumption that the person is entitled to possess
16    and transport the assault weapon, assault weapon attachment,
17    .50 caliber rifle, or .50 caliber cartridge.
18        Beginning 90 days after the effective date of this
19    amendatory Act of the 102nd General Assembly, a person
20    authorized under this Section to possess an assault weapon,
21    assault weapon attachment, .50 caliber rifle, or .50 caliber
22    cartridge shall possess such items only:
23            (1) on private property owned or immediately
24        controlled by the person;
25            (2) on private property that is not open to the public

26      with the express permission of the person who owns or

HB5471 Enrolled          - 98 -          LRB102 24372 BMS 33606 b

1      immediately controls such property;
2          (3) while on the premises of a licensed firearms
3      dealer or gunsmith for the purpose of lawful repair;
4          (4) while engaged in the legal use of the assault
5      weapon, assault weapon attachment, .50 caliber rifle, or
6      .50 caliber cartridge at a properly licensed firing range
7      or sport shooting competition venue; or
8          (5) while traveling to or from these locations,
9      provided that the assault weapon, assault weapon
10     attachment, or .50 caliber rifle is unloaded and the
11     assault weapon, assault weapon attachment, .50 caliber
12     rifle, or .50 caliber cartridge is enclosed in a case,
13     firearm carrying box, shipping box, or other container.
14         Beginning on January 1, 2024, the person with the
15     endorsement for an assault weapon, assault weapon attachment,
16     .50 caliber rifle, or .50 caliber cartridge or a person
17     authorized under subdivisions (1) through (5) of subsection
18     (e) to possess an assault weapon, assault weapon attachment,
19     .50 caliber rifle, or .50 caliber cartridge may transfer the
20     assault weapon, assault weapon attachment, .50 caliber rifle,
21     or .50 caliber cartridge only to an heir, an individual
22     residing in another state maintaining it in another state, or
23     a dealer licensed as a federal firearms dealer under Section
24     923 of the federal Gun Control Act of 1968. Within 10 days
25     after transfer of the weapon except to an heir, the person
26     shall notify the Illinois State Police of the name and address

HB5471 Enrolled          - 99 -          LRB102 24372 BMS 33606 b

1      of the transferee and comply with the requirements of
2      subsection (b) of Section 3 of the Firearm Owners
3      Identification Card Act. The person to whom the weapon or
4      ammunition is transferred shall, within 60 days of the
5      transfer, complete an affidavit required under this Section. A
6      person to whom the weapon is transferred may transfer it only

7    as provided in this subsection.

8        Except as provided in subsection (e) and beginning on

9    January 1, 2024, any person who moves into this State in

10    possession of an assault weapon, assault weapon attachment,

11    .50 caliber rifle, or .50 caliber cartridge shall, within 60

12    days, apply for a Firearm Owners Identification Card and

13    complete an endorsement application as outlined in subsection

14    (d).

15        Notwithstanding any other law, information contained in

16    the endorsement affidavit shall be confidential, is exempt

17    from disclosure under the Freedom of Information Act, and

18    shall not be disclosed, except to law enforcement agencies

19    acting in the performance of their duties.

20        (e) The provisions of this Section regarding the purchase

21    or possession of assault weapons, assault weapon attachments,

22    .50 caliber rifles, and .50 cartridges, as well as the

23    provisions of this Section that prohibit causing those items

24    to be purchased or possessed, do not apply to:

25        (1) Peace officers, as defined in Section 2-13 of this

26    Code.


HB5471 Enrolled            - 100 -            LRB102 24372 BMS 33606 b


1        (2) Qualified law enforcement officers and qualified

2    retired law enforcement officers as defined in the Law

3    Enforcement Officers Safety Act of 2004 (18 U.S.C. 926B

4    and 926C) and as recognized under Illinois law.

5        (3) Acquisition and possession by a federal, State, or

6    local law enforcement agency for the purpose of equipping

7    the agency's peace officers as defined in paragraph (1) or

8    (2) of this subsection (e).

9        (4) Wardens, superintendents, and keepers of prisons,

10    penitentiaries, jails, and other institutions for the

11    detention of persons accused or convicted of an offense.

12        (5) Members of the Armed Services or Reserve Forces of

13    the United States or the Illinois National Guard, while

14    performing their official duties or while traveling to or

15    from their places of duty.

16        (6) Any company that employs armed security officers

17    in this State at a nuclear energy, storage, weapons, or

18    development site or facility regulated by the federal
19    Nuclear Regulatory Commission and any person employed as
20    an armed security force member at a nuclear energy,
21    storage, weapons, or development site or facility
22    regulated by the federal Nuclear Regulatory Commission who
23    has completed the background screening and training
24    mandated by the rules and regulations of the federal
25    Nuclear Regulatory Commission and while performing
26    official duties.

HB5471 Enrolled          - 101 -         LRB102 24372 BMS 33606 b

1         (7) Any private security contractor agency licensed
2    under the Private Detective, Private Alarm, Private
3    Security, Fingerprint Vendor, and Locksmith Act of 2004
4    that employs private security contractors and any private
5    security contractor who is licensed and has been issued a
6    firearm control card under the Private Detective, Private
7    Alarm, Private Security, Fingerprint Vendor, and Locksmith
8    Act of 2004 while performing official duties.
9         The provisions of this Section do not apply to the
10   manufacture, delivery, sale, import, purchase, or possession
11   of an assault weapon, assault weapon attachment, .50 caliber
12   rifle, or .50 caliber cartridge or causing the manufacture,
13   delivery, sale, importation, purchase, or possession of those
14   items:
15         (A) for sale or transfer to persons authorized under
16   subdivisions (1) through (7) of this subsection (e) to
17   possess those items;
18         (B) for sale or transfer to the United States or any
19   department or agency thereof; or
20         (C) for sale or transfer in another state or for
21   export.
22         This Section does not apply to or affect any of the
23   following:
24         (i) Possession of any firearm if that firearm is
25   sanctioned by the International Olympic Committee and by
26   USA Shooting, the national governing body for

1    international shooting competition in the United States,
2    but only when the firearm is in the actual possession of an
3    Olympic target shooting competitor or target shooting
4    coach for the purpose of storage, transporting to and from
5    Olympic target shooting practice or events if the firearm
6    is broken down in a nonfunctioning state, is not
7    immediately accessible, or is unloaded and enclosed in a
8    firearm case, carrying box, shipping box, or other similar
9    portable container designed for the safe transportation of
10   firearms, and when the Olympic target shooting competitor
11   or target shooting coach is engaging in those practices or
12   events. For the purposes of this paragraph (8), "firearm"
13   has the meaning provided in Section 1.1 of the Firearm
14   Owners Identification Card Act.
15       (ii) Any nonresident who transports, within 24 hours,
16   a weapon for any lawful purpose from any place where the
17   nonresident may lawfully possess and carry that weapon to
18   any other place where the nonresident may lawfully possess
19   and carry that weapon if, during the transportation, the
20   weapon is unloaded, and neither the weapon nor any
21   ammunition being transported is readily accessible or is
22   directly accessible from the passenger compartment of the
23   transporting vehicle. In the case of a vehicle without a
24   compartment separate from the driver's compartment, the
25   weapon or ammunition shall be contained in a locked
26   container other than the glove compartment or console.

1        (iii) Possession of a weapon at an event taking place
2    at the World Shooting and Recreational Complex at Sparta,
3    only while engaged in the legal use of the weapon, or while
4    traveling to or from that location if the weapon is broken
5    down in a nonfunctioning state, is not immediately
6    accessible, or is unloaded and enclosed in a firearm case,
7    carrying box, shipping box, or other similar portable
8    container designed for the safe transportation of

9     firearms.

10        (iv) Possession of a weapon only for hunting use

11    expressly permitted under the Wildlife Code, or while

12    traveling to or from a location authorized for this

13    hunting use under the Wildlife Code if the weapon is

14    broken down in a nonfunctioning state, is not immediately

15    accessible, or is unloaded and enclosed in a firearm case,

16    carrying box, shipping box, or other similar portable

17    container designed for the safe transportation of

18    firearms. By October 1, 2023, the Illinois State Police,

19    in consultation with the Department of Natural Resources,

20    shall adopt rules concerning the list of applicable

21    weapons approved under this subparagraph (iv). The

22    Illinois State Police may adopt emergency rules in

23    accordance with Section 5-45 of the Illinois

24    Administrative Procedure Act. The adoption of emergency

25    rules authorized by Section 5-45 of the Illinois

26    Administrative Procedure Act and this paragraph is deemed


HB5471 Enrolled         - 104 -         LRB102 24372 BMS 33606 b


1     to be necessary for the public interest, safety, and

2     welfare.

3         (v) The manufacture, transportation, possession, sale,

4     or rental of blank-firing assault weapons and .50 caliber

5     rifles, or the weapon's respective attachments, to persons

6     authorized or permitted, or both authorized and permitted,

7     to acquire and possess these weapons or attachments for

8     the purpose of rental for use solely as props for a motion

9     picture, television, or video production or entertainment

10    event.

11        Any person not subject to this Section may submit an

12    endorsement affidavit if the person chooses.

13        (f) Any sale or transfer with a background check initiated

14    to the Illinois State Police on or before the effective date of

15    this amendatory Act of the 102nd General Assembly is allowed

16    to be completed after the effective date of this amendatory

17    Act once an approval is issued by the Illinois State Police and

18    any applicable waiting period under Section 24-3 has expired.

19        (g) The Illinois State Police shall take all steps

20  necessary to carry out the requirements of this Section within
21  by October 1, 2023.
22      (h) The Department of the State Police shall also develop
23  and implement a public notice and public outreach campaign to
24  promote awareness about the provisions of this amendatory Act
25  of the 102nd General Assembly and to increase compliance with
26  this Section.

HB5471 Enrolled          - 105 -          LRB102 24372 BMS 33606 b

1       (720 ILCS 5/24-1.10 new)
2       Sec. 24-1.10. Manufacture, delivery, sale, and possession
3   of large capacity ammunition feeding devices.
4       (a) In this Section:
5       "Handgun" has the meaning ascribed to it in the Firearm
6   Concealed Carry Act.
7       "Long gun" means a rifle or shotgun.
8       "Large capacity ammunition feeding device" means:
9           (1) a magazine, belt, drum, feed strip, or similar
10  device that has a capacity of, or that can be readily
11  restored or converted to accept, more than 10 rounds of
12  ammunition for long guns and more than 15 rounds of
13  ammunition for handguns; or
14          (2) any combination of parts from which a device
15  described in paragraph (1) can be assembled.
16      "Large capacity ammunition feeding device" does not
17  include an attached tubular device designed to accept, and
18  capable of operating only with, .22 caliber rimfire
19  ammunition. "Large capacity ammunition feeding device" does
20  not include a tubular magazine that is contained in a
21  lever-action firearm or any device that has been made
22  permanently inoperable.
23      (b) Except as provided in subsections (e) and (f), it is
24  unlawful for any person within this State to knowingly
25  manufacture, deliver, sell, purchase, or cause to be

HB5471 Enrolled          - 106 -          LRB102 24372 BMS 33606 b

1   manufactured, delivered, sold, or purchased a large capacity

2    ammunition feeding device.

3        (c) Except as provided in subsections (d), (e), and (f),

4    and beginning 90 days after the effective date of this

5    amendatory Act of the 102nd General Assembly, it is unlawful

6    to knowingly possess a large capacity ammunition feeding

7    device.

8        (d) Subsection (c) does not apply to a person's possession

9    of a large capacity ammunition feeding device if the person

10   lawfully possessed that large capacity ammunition feeding

11   device before the effective date of this amendatory Act of the

12   102nd General Assembly, provided that the person shall possess

13   such device only:

14           (1) on private property owned or immediately

15       controlled by the person;

16           (2) on private property that is not open to the public

17       with the express permission of the person who owns or

18       immediately controls such property;

19           (3) while on the premises of a licensed firearms

20       dealer or gunsmith for the purpose of lawful repair;

21           (4) while engaged in the legal use of the large

22       capacity ammunition feeding device at a properly licensed

23       firing range or sport shooting competition venue; or

24           (5) while traveling to or from these locations,

25       provided that the large capacity ammunition feeding device

26       is stored unloaded and enclosed in a case, firearm


HB5471 Enrolled           - 107 -         LRB102 24372 BMS 33606 b


1        carrying box, shipping box, or other container.

2        A person authorized under this Section to possess a large

3    capacity ammunition feeding device may transfer the large

4    capacity ammunition feeding device only to an heir, an

5    individual residing in another state maintaining it in another

6    state, or a dealer licensed as a federal firearms dealer under

7    Section 923 of the federal Gun Control Act of 1968. Within 10

8    days after transfer of the large capacity ammunition feeding

9    device except to an heir, the person shall notify the Illinois

10   State Police of the name and address of the transferee and

11   comply with the requirements of subsection (b) of Section 3 of

12   the Firearm Owners Identification Card Act. The person to whom

13   the large capacity ammunition feeding device is transferred

14   shall, within 60 days of the transfer, notify the Illinois

15   State Police of the person's acquisition and comply with the

16   requirements of subsection (b) of Section 3 of the Firearm

17   Owners Identification Card Act. A person to whom the large

18   capacity ammunition feeding device is transferred may transfer

19   it only as provided in this subsection.

20      Except as provided in subsections (e) and (f) and

21   beginning 90 days after the effective date of this amendatory

22   Act of the 102nd General Assembly, any person who moves into

23   this State in possession of a large capacity ammunition

24   feeding device shall, within 60 days, apply for a Firearm

25   Owners Identification Card.

26      (e) The provisions of this Section regarding the purchase

HB5471 Enrolled      - 108 -      LRB102 24372 BMS 33606 b

1   or possession of large capacity ammunition feeding devices, as

2   well as the provisions of this Section that prohibit causing

3   those items to be purchased or possessed, do not apply to:

4      (1) Peace officers as defined in Section 2-13 of this

5   Code.

6      (2) Qualified law enforcement officers and qualified

7   retired law enforcement officers as defined in the Law

8   Enforcement Officers Safety Act of 2004 (18 U.S.C. 926B

9   and 926C) and as recognized under Illinois law.

10      (3) A federal, State, or local law enforcement agency

11   for the purpose of equipping the agency's peace officers

12   as defined in paragraph (1) or (2) of this subsection (e).

13      (4) Wardens, superintendents, and keepers of prisons,

14   penitentiaries, jails, and other institutions for the

15   detention of persons accused or convicted of an offense.

16      (5) Members of the Armed Services or Reserve Forces of

17   the United States or the Illinois National Guard, while

18   their official duties or while traveling to or from their

19   places of duty.

20      (6) Any company that employs armed security officers

21   in this State at a nuclear energy, storage, weapons, or

22   development site or facility regulated by the federal

23   Nuclear Regulatory Commission and any person employed as

24    an armed security force member at a nuclear energy,

25    storage, weapons, or development site or facility

26    regulated by the federal Nuclear Regulatory Commission who

HB5471 Enrolled      - 109 -      LRB102 24372 BMS 33606 b

1    has completed the background screening and training

2    mandated by the rules and regulations of the federal

3    Nuclear Regulatory Commission and while performing

4    official duties.

5    (7) Any private security contractor agency licensed

6    under the Private Detective, Private Alarm, Private

7    Security, Fingerprint Vendor, and Locksmith Act of 2004

8    that employs private security contractors and any private

9    security contractor who is licensed and has been issued a

10    firearm control card under the Private Detective, Private

11    Alarm, Private Security, Fingerprint Vendor, and Locksmith

12    Act of 2004 while performing official duties.

13    (f) This Section does not apply to or affect any of the

14    following:

15    (1) Manufacture, delivery, sale, importation,

16    purchase, or possession or causing to be manufactured,

17    delivered, sold, imported, purchased, or possessed a large

18    capacity ammunition feeding device:

19    (A) for sale or transfer to persons authorized

20    under subdivisions (1) through (7) of subsection (e)

21    to possess those items;

22    (B) for sale or transfer to the United States or

23    any department or agency thereof; or

24    (C) for sale or transfer in another state or for

25    export.

26    (2) Sale or rental of large capacity ammunition

HB5471 Enrolled      - 110 -      LRB102 24372 BMS 33606 b

1    feeding devices for blank-firing assault weapons and .50

2    caliber rifles, to persons authorized or permitted, or

3    both authorized and permitted, to acquire these devices

4  for the purpose of rental for use solely as props for a

5  motion picture, television, or video production or

6  entertainment event.

7   (g) Sentence. A person who knowingly manufactures,

8 delivers, sells, purchases, possesses, or causes to be

9 manufactured, delivered, sold, possessed, or purchased in

10 violation of this Section a large capacity ammunition feeding

11 device capable of holding more than 10 rounds of ammunition

12 for long guns or more than 15 rounds of ammunition for handguns

13 commits a petty offense with a fine of $1,000 for each

14 violation.

15   (h) The Department of the State Police shall also develop

16 and implement a public notice and public outreach campaign to

17 promote awareness about the provisions of this amendatory Act

18 of the 102nd General Assembly and to increase compliance with

19 this Section.


20   Section 95. No acceleration or delay. Where this Act makes

21 changes in a statute that is represented in this Act by text

22 that is not yet or no longer in effect (for example, a Section

23 represented by multiple versions), the use of that text does

24 not accelerate or delay the taking effect of (i) the changes

25 made by this Act or (ii) provisions derived from any other


HB5471 Enrolled   - 111 -   LRB102 24372 BMS 33606 b


1 Public Act.

2   Section 97. Severability. The provisions of this Act are

3 severable under Section 1.31 of the Statute on Statutes.

4   Section 99. Effective date. This Act takes effect upon

5 becoming law.